UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK (MANHATTAN)

------------------------------------------------------------------X

In Re:

      PASTA BAR BY SCOTTO II, LLC,
      d/b/a VA PRESTO,

                       Debtor.

------------------------------------------------------------------X

Motion Date:
November 19, 2015
Time: 2:00 p.m.
Hon. Martin Glenn

Chapter – 11

Case No. 15-12766 (MG)

NOTICE OF MOTION FOR AN ORDER, *INTER ALIA*, PURSUANT TO 11 U.S.C. SECTION 362 TO VACATE AUTOMATIC STAY AND FOR PAYMENT OF USE AND OCCUPANCY

PLEASE TAKE NOTICE, that upon the annexed application of 750 8th Avenue LLC, dated the 4th day of November 2015, the undersigned will move before the Honorable Martin Glenn, United States Bankruptcy Judge, located at the United States Bankruptcy Court, Southern District of New York, One Bowling Green, Courtroom 501, New York, New York 10004, on the 19th day of November 2015, at 2:00 o'clock in the afternoon of that day, or as soon thereafter as counsel may be heard, for an Order as follows:

(1) Pursuant to 11 U.S.C. Section 362(d)(1)&(2), vacating and terminating the automatic stay for cause, thereby permitting the subject landlord to enforce its rights in, and remedies in and to, the subject premises;

(2) Pursuant to 11 U.S.C. Section 362(e), consolidating the preliminary and final hearing;

(3) Pursuant to 11 U.S.C. Section 363(e), directing debtor to pay immediately to the landlord all post-petition use and occupancy charges that have accrued since October 12, 2015, and to pay landlord use and occupancy on a monthly basis on the first day of

BORAH,
GOLDSTEIN,
ALTSCHULER,
NAHINS &
GOIDEL, P.C.
377 BROADWAY
NY, NY 10013-3993
(212) 431-1300

each month, pending a final determination of the relief requested herein;

(4) In the event, *arguendo*, that the Court determines that there remains any leasehold interest in the subject premises, then pursuant to 11 U.S.C. 365(d), directing the debtor either to assume or reject the lease for the subject premises, and, if rejected, compelling debtor to vacate the premises, or, if assumed, compelling the debtor promptly to pay all past due pre-petition rent and additional charges and post-petition use and occupancy;

(5) In the event that the Court grants the relief requested herein by modifying the automatic stay, then pursuant to FRBP 4001(a)(3), waiving the fourteen (14) day stay of an Order granting a motion for relief from an automatic stay made in accordance with FRBP 4001(a)(1);

(6) Awarding landlord its reasonable attorneys' fees together with the costs and disbursements of this motion; and

(7) Granting landlord such other and further relief as this Court may deem just, proper and equitable under the circumstances.

PLEASE TAKE FURTHER NOTICE, that answering papers, if any, must be served upon the undersigned at least seven (7) days prior to the return date of this motion and must be filed with the Bankruptcy Court one (1) day after said service.

Dated: New York, NY
        November 4, 2015

Yours, etc.,

BORAH, GOLDSTEIN, ALTSCHULER
NAHINS & GOIDEL, P.C.
Attorneys for Movant 750 8th Avenue LLC

By: _____
    JEFFREY C. CHANCAS
    377 Broadway
    New York, New York 10013
    (212) 431-1300

BORAH,
GOLDSTEIN,
ALTSCHULER,
NAHINS &
GOIDEL, P.C.
377 BROADWAY
NY, NY 10013-3993
(212) 431-1300

2

Y:\NOTICES\motion\Pasta Bar by Scotto II.notice of motion.doc

TO:    PASTA BAR BY SCOTTO II, LLC d/b/a VA PRESTO
       *Debtor*
       750 8th Avenue
       New York, New York 10036

       SICHENZIA ROSS FRIEDMAN FERENCE LLC
       *Attorneys for Debtor*
       61 Broadway, 32nd Floor
       New York, New York 10006
       Attn: Ralph E. Preite, Esq.
       (646) 885-6531

       UNITED STATES TRUSTEE
       U.S. Federal Office Building
       201 Varick Street, Room 1006
       New York, New York 10004
       (212) 510-0500

BORAH,
GOLDSTEIN,
ALTSCHULER,
NAHINS &
GOIDEL, P.C.
377 BROADWAY
NY, NY 10013-3993
(212) 431-1300

3

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK (MANHATTAN)
------------------------------------------------------------X     Chapter - 11

In Re:                                                                           Case No. 15-12766 (MG)

    PASTA BAR BY SCOTTO II, LLC,
    d/b/a VA PRESTO,                                         APPLICATION IN SUPPORT
                                                                       OF MOTION TO VACATE
                                                                       AUTOMATIC STAY_____

                       Debtor.
------------------------------------------------------------X

TO: HONORABLE MARTIN GLENN
    UNITED STATES BANKRUPTCY JUDGE

        The application of 750 8th Avenue LLC, the owner and landlord ("Landlord") of real property known as and by 750 Eighth Avenue a/k/a 247 West 46th Street (a portion of the ground floor and a portion of the mezzanine space plus right to use sidewalk area immediately in front of the premises) New York, New York 10036 (the "Premises"), respectfully alleges, by its attorneys, Borah, Goldstein, Altschuler, Nahins & Goidel, P.C., as follows:

        1.    On October 12, 2015, Debtor filed a Petition under Chapter 11, Title 11 of the United States Bankruptcy Code.

        2.    Debtor is the tenant of the Premises, pursuant to a written lease dated March 25, 2014, (the "Lease"), for a term of ten (10) years, which commenced on April 1, 2014, and expires on March 31, 2024.  (A copy of the Lease is annexed hereto as **Exhibit A**.)

        3.    The current monthly base rent charge for the Premises is

BORAH,
GOLDSTEIN,
ALTSCHULER,
NAHINS &
GOIDEL, P.C.
377 BROADWAY
NY, NY 10013-3993
(212) 431-1300

1

Y:\NOTICES\motion\Pasta Bar by Scotto II.application.doc

$75,000.00.

        4.     Debtor has defaulted in a substantial obligation of its Lease for the Premises in that it has failed to pay rent, additional rent, and/or use and occupancy charges for same.

        5.     Debtor has failed to pay pre-petition rent and additional rent and/or use and occupancy charges (exclusive of legal fees) through October 11, 2015 in the amount of $382,903.88.

        6.     In addition, Debtor has failed to pay post-petition use and occupancy charges for the period October 12-31, 2015, and for the month of November 2015 (exclusive of legal fees), in the amount of $124,469.42.  (A copy of the Landlord's Managing Agent's account ledger is annexed hereto as **Exhibit B**.)

        7.     Debtor will owe post-petition use and occupancy charges for the Premises until Debtor vacates same.

        8.     There is now due and owing a total amount of pre-petition rent and additional rent, and post-petition use and occupancy charges (exclusive of legal fees) for the Premises in the amount of $507,373.30. (See **Exhibit B**.)

        9.     As a result of the tenant's failure to pay rent, on or about December 23, 2014, the Landlord commenced a summary nonpayment proceeding (the "Summary Proceeding") in the Civil Court of the City of New York, County of New York (Commercial Part), captioned *750 8th Avenue LLC, Petitioner/Landlord v. Pasta Bar by Scotto II, LLC d/b/a Via Presto by Scotto* (Index No. L&T 088221/2014).

BORAH,
GOLDSTEIN,
ALTSCHULER,
NAHINS &
GOIDEL, P.C.
377 BROADWAY
NY, NY 10013-3993
(212) 431-1300

2

Y:\NOTICES\motion\Pasta Bar by Scotto II.application.doc

10. In a Stipulation of Settlement of the Summary Proceeding, dated the 28th day of January 2015 and "So Ordered" on February 11, 2015 ("Original Stipulation"), attached hereto as **Exhibit C**, the parties agreed as follows: . . .

1. Respondent-Tenant agrees that it shall voluntarily vacate from the Demised Premises on or before the Lease Expiration Date or any extension thereof, as applicable, **time being of the essence**, and provide vacant possession free of all other occupants.

2.(a) To effectuate such mutual interest, Respondent-Tenant hereby consents to the jurisdiction of the Civil Court, Commercial Part 52, and Respondent-Tenant further consents to the entry of a final judgment of possession in favor of Petitioner-Landlord with the warrant of eviction to issue only upon one of the following conditions, either: (a) default in payment of any rental arrears or base rents and escalations, after uncured notice of default, as set forth hereinafter; or (b) upon default in Tenant voluntarily vacating on or before the Lease Expiration Date, unless further extended by the parties.

4.(d) On or before June 15, 2015 and monthly thereafter through November 15, 2015 (six (6) payments), Respondent-Tenant shall pay the further sum of Thirty Seven Thousand Five Hundred and no/100 ($37,500.00) dollars monthly against the Rental Arrears by hand delivery of bank money order or certified check to Petitioner-Landlord in accordance with the address specified in paragraph 5(d) hereinafter.

5.(a) On or before February 21, 2015, Respondent-Tenant shall pay the sum of Seventy Five Thousand Five Hundred Eighty Eight and 04/100 ($75,588.04) dollars as and for February base rent and additional rent by hand delivery of bank money order or certified

BORAH,
GOLDSTEIN,
ALTSCHULER,
NAHINS &
GOIDEL, P.C.
377 BROADWAY
NY, NY 10013-3993
(212) 431-1300

3

check to Petitioner-Landlord in accordance with the address specified in paragraph 5(d) hereinafter.

(b)    Additionally, and monthly commencing March 1, 2015 through and including December 1, 2015 (ten (10) payments), Respondent-Tenant shall pay, on or before the first (1st) day of each month, the monthly base rental and additional rental obligations then due to Landlord ($75,588.04 plus legal and any other items of additional rent).  <u>Thus, if all the payments specified in paragraph four (4) and paragraph five (5) are timely made, and if the monthly base rent and additional rent obligations referred to in this paragraph are timely made, Respondent-Tenant shall have paid by December 31, 2015 the entire amount of the Rental Arrears, as well as all of its base and additional rents due and owing through December 31, 2015</u>.

(c)    Payments to Petitioner-Landlord referred to hereinabove are to be hand delivered to Annie Xiao c/o Torkian Group located at 1650 Broadway, Suite 910, New York, New York 10019.

(d)    Notwithstanding anything contained above to the contrary, Respondent-Tenant may prepay the payment of rental arrears, without penalty.

(e)    In the event any of the above referenced payments in paragraph 4 or 5 above are not made on a timely basis and in full, counsel for Petitioner-Landlord shall by overnight courier forward a Notice of Default to Respondent-Tenant's counsel at the address specified in paragraph 11(b) below giving Respondent-Tenant five (5) business days within which to cure said default.  In the further event  that Respondent-Tenant fails to cure the default by paying the amount due and owing so that it is received by Petitioner-Landlord within said five (5) business day period, Petitioner-Landlord may proceed to restore this proceeding on three (3) days notice to counsel for

BORAH,
GOLDSTEIN,
ALTSCHULER,
NAHINS &
GOIDEL, P.C.
377 BROADWAY
NY, NY 10013-3993
(212) 431-1300

4

Y:\NOTICES\motion\Pasta Bar by Scotto II.application.doc

Tenant for issuance of the warrant of eviction, which issuance, Tenant hereby consents to.

6.     Furthermore, notwithstanding anything in this Agreement to the contrary, in the event of a default, after Notice to Cure and failure to pay, any monies previously received by Petitioner-Landlord from Respondent-Tenant referred to in paragraphs 4 and/or 5 of this Stipulation may, at Petitioner's option and notwithstanding how they may have been initially applied when received, be applied first to current rent/use and occupancy and then to the Rental Arrears referred to above.

8.     Respondent-Tenant acknowledges that it has had the advice of its attorney, Walter Edelstein, Esq., of Lefkowitz and Edelstein, has had time to review this Agreement with its attorney and has executed this Agreement voluntarily.     Respondent-Tenant furthermore agrees to execute any and all other documents that may be reasonably necessary to effectuate the purposes expressed herein and shall cooperate to that end in a reasonable fashion", and

11.     Thereafter, a Notice of Default, dated April 7, 2015, was served on the Tenant and its counsel for unpaid rentals in the sum of $151,176.08.

12.     Tenant did not cure the default.

13.     The proceeding was restored to the Court calendar for May 12, 2015, and settled with a further Stipulation dated May 12, 2015, providing for entry of a judgment and warrant and a further opportunity for the Tenant to cure its default ("Supplemental Stipulation"), attached hereto as **Exhibit D**.

BORAH,
GOLDSTEIN,
ALTSCHULER,
NAHINS &
GOIDEL, P.C.
377 BROADWAY
NY, NY 10013-3993
(212) 431-1300

5

Y:\NOTICES\motion\Pasta Bar by Scotto II.application.doc

14.   Per the Supplemental Stipulation, the Warrant of Eviction was issued on June 18, 2015.  (A copy of the Warrant of Eviction is annexed hereto as **Exhibit E**.)

15.   Tenant defaulted on the Original and Supplemental Stipulation to the extent that it failed to pay the sum of $190,527.28, consisting of the payments required by paragraphs 4(d) and 5(b) of the Original Stipulation.

16.   Landlord then caused to be served a Five (5) Business Days Notice of Default, dated September 10, 2015, and annexed hereto, without exhibits, as **Exhibit F.**

17.   When the Tenant failed to cure the default, Landlord proceeded with the judgment of possession entered by the Civil Court to be restored to possession by directing the City Marshal to schedule an eviction date.

18.   The eviction, scheduled for October 13, 2015, was stayed by this bankruptcy filing on October 12th.

19.   Landlord is being severely prejudiced by its inability to recover possession of the Premises and the past due rent.

20.   Even if, *arguendo,* the Court finds that there remains a leasehold interest to be assumed, without payment of pre-petition rent and additional rent and post-petition use and occupancy charges (exclusive of legal fees) in the combined amount to date of $507,373.30, there is no basis for the Debtor to assume the Lease for the Premises.

BORAH,
GOLDSTEIN,
ALTSCHULER,
NAHINS &
GOIDEL, P.C.
377 BROADWAY
NY, NY 10013-3993
(212) 431-1300

6

Y:\NOTICES\motion\Pasta Bar by Scotto II.application.doc

21.    For the foregoing reasons, the automatic stay should be vacated. (A copy of the proposed Order is annexed hereto as **Exhibit G**.)

22.    If the stay is not vacated, then pursuant to 11 U.S.C. Section 365, Debtor should be ordered either to assume or reject the Lease and, if rejected, vacate the Premises, or, if assumed, to cure immediately all defaults in payment of rent and/or use and occupancy charges.

23.    Furthermore, pending the final determination of this proceeding, this Court should order Debtor to continue to pay all use and occupancy charges as same become due on the first day of each month.

24.    Since any appeal of an order vacating the stay herein would be frivolous, pursuant to FRBP 4001(a)(3), the Court should waive the fourteen (14) day stay of an Order granting a motion for relief from an automatic stay made in accordance with FRBP 4001(a)(1).

25.    Since there are no novel or unique issues of law presented by this motion, it is respectfully requested that the Court waive the filing of a memorandum of law.

WHEREFORE, Movant requests that the Court enter an Order:

(1)    Pursuant to 11 U.S.C. Section 362(d)(1)&(2), vacating and terminating the automatic stay for cause, thereby permitting the Landlord to enforce its rights in, and remedies in and to, the Premises;

(2)    Pursuant to 11 U.S.C. Section 362(e), consolidating the preliminary and final hearing;

BORAH,
GOLDSTEIN,
ALTSCHULER,
NAHINS &
GOIDEL, P.C.
377 BROADWAY
NY, NY 10013-3993
(212) 431-1300

7

Y:\NOTICES\motion\Pasta Bar by Scotto II.application.doc

(3)    Pursuant to 11 U.S.C. Section 363(e), directing Debtor to pay immediately to the Landlord all post-petition use and occupancy charges that have accrued since October 12, 2015, and to pay Landlord use and occupancy on a monthly basis on the first day of each month, pending a final determination of the relief requested herein;

(4)    In the event, *arguendo*, that the Court determines that the Debtor has any leasehold interest in the Premises, then pursuant to 11 U.S.C. 365(d), directing the Debtor either to assume or reject the Lease for the Premises, and, if rejected, compelling Debtor to vacate the Premises, or, if assumed, compelling Debtor promptly to pay all past due pre-petition rent and additional charges and post-petition use and occupancy;

(5)    In the event that the Court grants the relief requested herein by modifying the automatic stay, then pursuant to FRBP 4001(a)(3), waiving the fourteen (14) day stay of an Order granting a motion for relief from an automatic stay made in accordance with FRBP 4001 (a)(1);

(6)    Awarding Landlord its reasonable attorneys' fees together with the costs and disbursements; and

(7)    Granting Landlord such other and further relief as this Court may deem just, proper and equitable under the circumstances.

Dated:  New York, New York
        November 4, 2015

BORAH,
GOLDSTEIN,
ALTSCHULER,
NAHINS &
GOIDEL, P.C.
377 BROADWAY
NY, NY 10013-3993
(212) 431-1300

8

Y:\NOTICES\motion\Pasta Bar by Scotto II.application.doc

Yours, etc.,


BORAH, GOLDSTEIN, ALTSCHULER
NAHINS & GOIDEL, P.C.
Attorneys for Movant/Landlord

By: _____
JEFFREY C. CHANCAS
377 Broadway
New York, New York 10013
(212) 431-1300

BORAH,
GOLDSTEIN,
ALTSCHULER,
NAHINS &
GOIDEL, P.C.
377 BROADWAY
NY, NY 10013-3993
(212) 431-1300

Y:\NOTICES\motion\Pasta Bar by Scotto II.application.doc

9



# LEASE

## 750 8TH AVENUE LLC,

### Landlord

### TO

## PASTA BAR BY SCOTTO II, LLC

### Tenant

**Premises:**
**Portion of Ground Floor and Mezzanine**
**at**
**750 Eighth Avenue**
**New York, New York**

## INDEX TO LEASE

| **CAPTION** | **PAGE** |
|---|---|
| ARTICLE 1. | Demise, Premises, Term, Rents ...........................................................4 |
| ARTICLE 2. | Use and Operation ...........................................................................8 |
| ARTICLE 3. | Preparation of the Demised Premises ...............................................15 |
| ARTICLE 4. | Intentionally Deleted........................................................................15 |
| ARTICLE 5. | Adjustments Of Rent ........................................................................16 |
| ARTICLE 6. | Security Deposit...............................................................................18 |
| ARTICLE 7. | Subordination, Notice To Lessors And Mortgagees...........................20 |
| ARTICLE 8. | Quiet Enjoyment..............................................................................21 |
| ARTICLE 9. | Assignment and Subletting................................................................22 |
| ARTICLE 10. | Compliance With Laws And Requirements of Public Authorities.................26 |
| ARTICLE 11. | Insurance.........................................................................................28 |
| ARTICLE 12. | Rules And Regulations .....................................................................31 |
| ARTICLE 13. | Tenant's Changes .............................................................................32 |
| ARTICLE 14. | Tenant's Property .............................................................................37 |
| ARTICLE 15. | Repairs And Maintenance.................................................................38 |
| ARTICLE 16. | Electricity........................................................................................39 |
| ARTICLE 17. | Heat, Ventilating And Air-Conditioning, Gas, Steam and Water ...................40 |
| ARTICLE 18. | Other Services..................................................................................42 |
| ARTICLE 19. | Access, Changes In Building Facilities, Name...................................45 |
| ARTICLE 20. | Notice of Accidents ..........................................................................46 |
| ARTICLE 21. | Non-Liability And Indemnification ...................................................46 |
| ARTICLE 22. | Destruction Or Damage ....................................................................47 |
| ARTICLE 23. | Eminent Domain...............................................................................49 |
| ARTICLE 24. | Surrender; Holdover .........................................................................51 |
| ARTICLE 25. | Conditions Of Limitation..................................................................52 |
| ARTICLE 26. | Re-Entry By Landlord.......................................................................53 |
| ARTICLE 27. | Damages ..........................................................................................54 |

*F  ASM TORKIAN Scottu LSE  V7 doc*

2

ARTICLE 28.   Waiver ...................................................................................................56

ARTICLE 29.   No Other Waivers Or Modifications ...................................................57

ARTICLE 30.   Curing Tenant's Defaults, Additional Rent..........................................58

ARTICLE 31.   Broker ....................................................................................................59

ARTICLE 32.   Notices....................................................................................................59

ARTICLE 33.   Estoppel Certificate, Memorandum......................................................60

ARTICLE 34.   Arbitration .............................................................................................60

ARTICLE 35.   No Other Representations, Construction, Governing Law, Consents ..........61

ARTICLE 36.   Parties Bound.........................................................................................62

ARTICLE 37.   Certain Definitions And Construction ..................................................63

ARTICLE 38.   Adjacent Excavation And Construction; Shoring; Vaults....................63

ARTICLE 39.   Sprinklers...............................................................................................64

ARTICLE 40.   Signs ......................................................................................................64

ARTICLE 41.   Covenant Against Liens.........................................................................65

ARTICLE 42.   Condominium .........................................................................................66

ARTICLE 43.   Restaurant Transaction ..........................................................................67


EXHIBIT A-1   Floor Plans............................................................................................69

EXHIBIT A-2   Outdoor Sidewalk Seating Area ..........................................................70

EXHIBIT B     Description of Retail Unit.......................................................................71

EXHIBIT C     Rules and Regulations ............................................................................72

EXHIBIT D     Definitions ...............................................................................................77

EXHIBIT E     Signage Band ..........................................................................................80

EXHIBIT F     Menu........................................................................................................81

## LEASE

**LEASE** dated as of March 25, 2014 between **750 8TH AVENUE LLC**, a New York limited liability company having an office at % The Torkian Group, 1650 Broadway, Suite 910, New York, New York 10019 (hereinafter referred to as **"Landlord"**) and **PASTA BAR BY SCOTTO II, LLC**, having an office at 750 Eighth Avenue, New York, New York (hereinafter referred to as **"Tenant"**).

## W I T N E S S E T H:

### ARTICLE I
### Demise, Premises, Term, Rents

**1.01**    Landlord hereby leases to Tenant the premises hereinafter described, in the building located at 750 Eighth Avenue, in the Borough of Manhattan, City, County and State of New York (hereinafter sometimes referred to as the **"Building"**) which Building and the land (the **"Land"**) upon which the Building is located have been subjected to a condominium of ownership known as the PLATINUM CONDOMINIUM (the **"Condominium"**), for the term hereinafter stated, for the rents hereinafter reserved and upon and subject to the conditions (including limitations, restrictions and reservations) and covenants hereinafter provided. Each party hereby expressly covenants and agrees to observe and perform all of the conditions and covenants herein contained on its part to be observed an performed.

**1.02**    The premises hereby leased to Tenant are a portion of the ground floor of the Building and a portion of the mezzanine space of the Building all as shown on the Floor Plans annexed hereto as Exhibit "A-1" which premises constitute a portion of the condominium unit within the Condominium known as the Retail Unit, a legal description of said Retail Unit being shown on Exhibit "B" annexed hereto. Said premises together with all fixtures and equipment which at the commencement, or during the term of this lease are thereto attached (except items not deemed to be included therein and removable by Tenant as provided in Article 14) constitute and are hereinafter referred to as the "Demised Premises". Subject to the terms and provisions of the Condominium Documents and Tenant complying with all applicable governmental laws, rules and regulations, Tenant shall have the right to use the sidewalk area immediately in front of the Retail Unit on West 46th Street as more particularly shown by hatchmarks on Exhibit "A-2" attached (the **"Sidewalk Area"**) as an outdoor seating area ancillary to Tenant's use of the Demised Premises it being understood that Tenant shall only be permitted to place non-permanent tables and chairs in the Sidewalk Area. Further, Tenant at its sole cost and expense shall be responsible for the securing and

maintaining of all permits required in connection with the Sidewalk Area. Tenant at its sole cost and expense shall be responsible for the maintenance and repair of the Sidewalk Area.

**1.03** (a) The term of this lease, for which the Demised Premises are hereby leased, shall commence on April 1, 2014 (herein referred to as the **"Commencement Date"**) and shall end at midnight on March 31, 2024, which ending date is hereinafter referred to as the "Expiration Date", or shall end on such earlier date upon which said term may expire or be cancelled or terminated pursuant to any of the conditions or covenants of this lease or pursuant to law.

(b) Provided that, at the time of delivery of the Extension Notice (as hereinafter defined) and on the original Expiration Date, this Lease shall be in full force and effect and without default by Tenant of any of the obligations required to be observed or performed by Tenant hereunder (beyond any applicable notice or cure period), Tenant shall have the option (hereinafter referred to as the **"Extension Option"**) to extend the term of this Lease for one additional period of two years and two months (the "Option Period") commencing April 1, 2024 and ending midnight on May 31, 2026. Tenant shall exercise the Extension Option by sending a written notice thereof (herein referred to as the **"Extension Notice"**) to Landlord by certified mail, return receipt requested, or by nationally recognized overnight courier providing for receipted delivery on or before the day that shall be no earlier than 18 months prior to the Expiration Date and no later than 12 months before the Expiration Date. If Tenant shall send the Extension Notice within the time and in the manner hereinbefore provided, this Lease shall be deemed extended for the Option Period upon the terms, covenants and conditions set forth in the Lease as modified by this Amendment except that the fixed rent for the Option Period shall be as set forth in Section 1.04(a)(2) hereafter. Time is of the essence as to the Tenant with respect to the notice and other provisions set forth in this Section 1.03(b). Tenant's notice to Landlord shall be irrevocable, and, in the event of such notice, Tenant shall be liable for the fixed rent and additional rent during the Option Period under the same terms and conditions as the fixed rent and additional rent during the original term. Notwithstanding anything to the contrary contained herein, if at any time this Lease is terminated prior to the expiration of the initial term hereof, then, without the requirement of any notice, Tenant's option to extend the Term as set forth herein is likewise terminated.

**1.04** The "rents" reserved under this lease, for the term thereof and the option Term, if applicable, shall be and consist of:

**(a)** (1) "fixed rent" as follows:

(i) $900,000.00 per annum ($75,000.00 per month) for the period from the Commencement Date to the date next preceding the second (2nd) anniversary of the Commencement Date, both dates inclusive; and

(ii)     $927,000.00 per annum ($77,250.00 per month) for the period from the second (2nd) anniversary the Commencement Date to the date next preceding the third (3rd) anniversary of the Commencement Date, both dates inclusive; and

(iii)    $954,810.00 per annum ($79,567.50 per month) for the period from the third (3rd) anniversary of the Commencement Date to the date next preceding the fourth (4th) anniversary of the Commencement Date, both dates inclusive; and

(iv)    $983,454.30 per annum ($81,954.53 per month) for the period from the fourth (4th) anniversary of the Commencement Date to the date next preceding the fifth (5th) anniversary of the Commencement Date, both dates inclusive; and

(v)     $1,012,957.93 per annum ($84,413.16 per month) for the period from the fifth (5th) anniversary of the Commencement Date to the date next preceding the sixth (6th) anniversary of the Commencement Date, both dates inclusive; and

(vi)    $1,043,346.67 per annum ($86,945.56 per month) for the period from the sixth (6th) anniversary of the Commencement Date to the date next preceding the seventh (7th) anniversary of the Commencement Date, both dates inclusive; and

(vii)   $1,074,647.07 per annum ($89,553.92 per month) for the period from the seventh (7th) anniversary of the Commencement Date to the date next preceding the eighth (8th) anniversary of the Commencement Date, both dates inclusive; and

(viii)  $1,106.886.48 per annum ($92,240.54 per month) for the period from the eighth (8th) anniversary of the Commencement Date to the date next preceding the ninth (9th) anniversary of the Commencement Date, both dates inclusive; and

(ix)    $1,140,093.07 per annum ($95,007.76 per month) for the period from the ninth (9th) anniversary of the Commencement Date through the Expiration Date of the Lease.

(a)   (2) If Tenant should properly exercise its option to extend the term of this Lease for the Option Period, then the fixed rent shall be:

(i) $1,174,295.87 per annum ($97,857.99 per month) for the first year of the Option Period; and

(ii) $1,209,524.74 per annum ($100,793.73 per month) for the balance of the Option Period.

all of which shall be payable in equal monthly installments in advance on the first day of each and every calendar month during the term of this lease (except that Tenant shall pay, upon the execution and delivery of this lease by Tenant, the sum of $75,000.00 to be applied against the first rents becoming due under this lease); and

a.    "additional rent" consisting of all such other sums of money as shall become due from and payable by Tenant to Landlord hereunder (for default in payment of which Landlord shall have the same remedies as for a default in payment of fixed rent),

all to be paid to Landlord at its office, or such other place, or to such agent and at such place, as Landlord may designate by notice to Tenant, in lawful money of the United States of America.

b.    Notwithstanding anything to the contrary, but provided that Tenant is not in default under this lease under any of the terms, covenants and conditions in this lease on Tenant's part to observe, perform or comply with (after applicable notice and cure periods), Tenant shall not be obligated to pay fixed rent (i) for the period from the Commencement Date until May 31, 2014, (ii) for the first fifteen (15) days of the twenty-fourth month of the Lease term and (iii) for the first fifteen (15) days of the thirty-sixth month of the Lease term (the "**Free Rent**" and/or "**Free Rent Period**") it being understood that Tenant shall pay all additional rent due and owing during the Free Rent Period.

**1.05**    Tenant shall pay the fixed rent and additional rent herein reserved promptly as and when the same shall become due and payable, without demand therefor and without any abatement, deduction or setoff whatsoever except as expressly provided in this lease.

**1.06**    If the Commencement Date occurs on a day other than the first day of a calendar month, the fixed rent for such calendar month shall be prorated and the balance of the first month's fixed rent theretofore paid shall be credited against the next monthly installment of fixed rent.

**1.07**    If the Demised Premises or any additional space to be included within the Demised Premises shall not be available for occupancy by Tenant on the specific date hereinbefore designated for the commencement of the term of this lease or for the inclusion of such space for any reason whatsoever, then this lease shall not be affected thereby but, in such case, said specific date shall be deemed to be postponed until the date when Landlord notifies Tenant that vacant possession of the Demised Premises or the additional space, as the case may be, shall be available for occupancy by Tenant, and Tenant shall not be entitled to possession of the Demised Premises or the additional space until vacant possession is available for occupancy by Tenant; provided, however, Tenant shall have no

F:\ASM\TORKIAN Scotto LSE 17.doc

7

claim against Landlord, and Landlord shall have no liability to Tenant by reason of any such postponement of said specific date, and the parties hereto further agree that any failure to have the Demised Premises or such additional space available for occupancy by Tenant on said specific date or on the Commencement Date shall in no way affect the obligations of Tenant hereunder nor shall the same be construed in any way to extend the term of this lease. This Section 1.07 shall be deemed to be an express provision to the contrary of Section 223-a of the Real Property Law of the State of New York and any other law of like import now or hereafter in force. The foregoing provisions shall not be construed to shorten the term of this lease upon the commencement thereof.

1.08   Tenant acknowledges that it has no rights to any development rights, "air rights" or comparable rights appurtenant to the Land and Building, and consents, without further consideration, to any utilization of such rights by Landlord and agrees to promptly execute and deliver any instruments which may be requested by Landlord, including instruments merging zoning lots, evidencing such acknowledgment and consent. The provisions of this Section 1.08 shall be deemed to be and shall be construed as an express waiver by Tenant of any interest Tenant may have as a "party in interest" (as such quoted term is defined in Section 12-10 Zoning Lot of the Zoning Resolution of the City of New York) in the Land and Building.

1.09   Any vaults, vault space or other space outside the boundaries of the Building, notwithstanding anything contained in this lease or indicated on any sketch, blueprint or plan are not included in the Demised Premises. Landlord makes no representation as to the location of the boundaries of the Building.

1.10   Tenant acknowledges that there are located within the Demised Premises building systems, equipment and facilities (collectively, the **"Facilities"**) which service other portions of the Retail Unit and the Building. Notwithstanding anything to the contrary, without incurring any liability to Tenant therefor Landlord and/or designees of the Condominium shall have the right at all reasonable times to enter on and/or pass through the Demised Premises, or any part thereof, to perform any installation, maintenance and/or repairs to such facilities and to otherwise exercise Landlord's rights hereunder and the rights of the Condominium under the Condominium Documents. Landlord shall have the right at all reasonable times to have uninterrupted access to use the Demised Premises as set forth herein.

## ARTICLE 2
### Use and Operation

**2.01**    Subject to and in accordance with all rules, regulations, laws, ordinances, statutes and requirements of all governmental authorities and the Fire Insurance Rating Organization and Board of Fire Insurance Underwriters, and any similar bodies having jurisdiction thereof as well as the terms and provisions of the Condominium Documents, as such term is hereinafter defined, Tenant covenants and agrees that it shall use the Demised Premises solely for the operation of a high quality gourmet fast casual restaurant substantially similar to the restaurant operation operated by Tenant's affiliate under the name Fresco On The Go at 40 East 52 Street and that Tenant will sell the items shown on and utilize the menu annexed hereto as Exhibit "F", said use to be in accordance with the standards set forth hereafter and for no other purpose.

**2.02**    Tenant agrees that, subject to all of the terms, covenants and conditions of this lease (including the balance of this Article 2):

**(a)**    Tenant will not operate a Chinese, Indian, Thai, Japanese, Vietnamese or other Asian restaurant in the Demised Premises whether "white tablecloth" or otherwise provided that Tenant may include, in its menu, the items set forth in Exhibit "F";

**(b)**    Tenant will not operate a "fast food" establishment such as McDonald's, Burger King, Kentucky Fried Chicken, Ranch One, Nathan's, Pizza Hut, or Blimpies. In addition, Tenant shall not operate any open front operation permitting the sale of food through an open window directly to the street;

**(c)**    Intentionally Deleted.

**(d)**    No live music or other entertainment shall be permitted in the Demised Premises; notwithstanding the foregoing, Tenant shall have the right to have a so called "disc jockey" (a "DJ") play recorded music (the "DJ Music") in the Demised Premises subject to the following terms and conditions:

(i)    the playing of said DJ Music and the manner thereof shall not be in violation of applicable governmental laws, rules and regulations and/or in violation of any of the provisions of the Condominium Documents and/or any rules regulations, requirements or prohibitions of the Condominium. Landlord makes no representations as to the foregoing matters.

(ii)    no music shall be allowed in a volume which would interfere with the comfort and enjoyments of tenants of the Building or be audible outside of the Demised Premises.

(iii)    if any legal action or proceeding shall be commenced again Landlord or Landlord shall receive a notice or violation of any applicable governmental law, rule or regulation, or

F:\ASM TORKIAN Scotto LSE 17 doc

9

Landlord shall receive a notice from the Condominium as to objectionable activities or use any or all of the aforesaid relating to the DJ or the DJ Music, then Tenant shall immediately cease and desist or cause to cease and desist the actions and/or activities which gave rise to the foregoing.

       (iv)      no unsafe electrical condition shall be created as a result of the use of the equipment with respect to the DJ Music.

       (v)      if Tenant receives insurance coverage from the DJ with respect to its activities, then Landlord shall also be added as an additional insured thereunder; Tenant agrees to promptly notify Landlord as to the aforesaid insurance coverage.

(e)      No noise shall be allowed in a volume which would interfere with the comfort and enjoyment of tenants of the Building or be audible outside of the Demised Premises;

(f)      No lewd or indecent exhibitions shall be permitted (Landlord to be the sole judge thereof);

(g)      Dancing shall not be permitted in the Demised Premises;

(h)      No pinball or similar games or machines shall be permitted;

(i)      Reasonably sufficient area shall be maintained in the interior of the Demised Premises to accommodate patrons awaiting service and in no event shall patrons be allowed to congregate or wait in lines on the street, sidewalks or outside the Demised Premises;

(j)      Tenant also shall not permit the sale of alcoholic beverages for off-premises consumption, except as an ancillary part of its restaurant operation.

       2.03    Tenant agrees that, notwithstanding anything to the contrary contained in this lease:

(a)      Landlord shall have the right to prohibit the continued use by Tenant of any method of business operation, advertising, or interior display if the continued use thereof would impair the reputation of the Condominium or is otherwise out of harmony with the general character thereof, and, upon notice from Landlord, Tenant shall forthwith refrain from or discontinue such activities;

(b)      Tenant will comply, and cause its employees to comply, with the provisions of this lease, the Landlord's rules and regulations relating to the Demised Premises and the Condominium Documents; Tenant's permitted use of the Demised Premises set forth in Section 2.01 is not in violation of the Declaration and By-Laws of the Condominium.

(c)      Intentionally Deleted.

F: ASM TORKIAN Scotto LSE 17.doc

(d)    Tenant shall at all times keep the interior of the Demised Premises neat, clean, sanitary and orderly. Tenant at its sole expense, shall install, maintain and keep in good order and condition, the duct work, ventilating and ozonating systems and equipment in or servicing the Demised Premises, including all additions and replacements thereto, in good and efficient condition and in proper state of repair.

(e)    Tenant, at its sole expense, shall furnish, install, and subsequently maintain, keep in good order and condition and replace, as necessary, flues (as may be required by code and, notwithstanding anything to the contrary contained in this lease, it is understood and agreed that Landlord shall have no responsibility for such code compliance), ducts, filters (including charcoal filters) exhaust fans, ventilating systems, or other similar exhaust devices in a design, manner and location required and/or approved by Landlord as part of Tenant's Work, and Tenant shall cause all such flues, filters, ducts and exhaust fans which service the Demised Premises to be repaired, maintained, and cleaned by a licensed maintenance contractor, and kept reasonably clear of all dirt, dust and grease at least once every calendar quarter, and more frequently if necessary. In furtherance of the foregoing, Tenant shall maintain a maintenance contract with a contractor reasonably approved by Landlord in full force and effect during the term (a copy of which shall be delivered to Landlord within thirty (30) days following the date Tenant opens for business in the Demised Premises). Tenant shall, at its sole cost and expense, install and make all necessary repairs, changes and replacements in and to the said flues, filters, ducts, exhaust fans and ventilating systems and/or such modifications and/or replacements thereof as required by Landlord, and keep and maintain the same in good order and condition and in compliance with (i) all laws, rules and regulations of New York City and State, (ii) all directions of any public officer or officers pursuant to law, (iii) all laws, rules and regulations of any government department having jurisdiction over the same, and (iv) all rules and regulations of the New York Board of Fire Underwriters and any other similar body.

(f)    Tenant, at its sole expense, shall furnish, install, maintain and keep in good order and condition, an "ansul system" or equal fire protection system in the Demised Premises. In furtherance of the foregoing, Tenant shall maintain a maintenance contract with a contractor reasonably approved by Landlord in full force and effect during the Term (a copy of which shall be delivered to Landlord within thirty (30) days following the date Tenant opens for business in the Demised Premises). Tenant shall, at its sole cost and expense, install and make all necessary repairs, changes and replacements in and to the said ansul system and keep and maintain the same in good order and condition and in compliance with (i) all laws, rules and regulations of New York City and State, (ii) all directions of any public officer or officers pursuant to law, (iii) all laws, rules and regulations of any government department having jurisdiction over the same, and (iv) all rules and regulations of the New York Board of Fire Underwriters and any other similar body.

(g)    Tenant, at its sole cost and expense, covenants and agrees to keep the drains, waste and sewer pipes and mains which are used by Tenant free from obstruction caused by Tenant, its agents, contractors, employees and invitees. Tenant will be responsible for all expenses, losses and damages incurred by Landlord and/or the Condominium by reason of Tenant's misuse of, or negligent or

F: ASM TORKIAN Scotto LSE 17 din.

11

careless operations or otherwise which result in the obstruction of drains, waste and sewer pipes and mains in or servicing the Building, or any part thereof. Tenant further covenants and agrees that it shall maintain at its own cost and expense grease traps (to be installed by Tenant, at Tenant's expense, and to be cleaned by Tenant, at Tenant's expense, at least once a month) in the waste lines of the Demised Premises and in the drains and sinks in the kitchen areas of the Demised Premises, all of the aforesaid, as required by Landlord.

(h)    Tenant shall not, without the prior written consent of Landlord in each instance, place or install or suffer to be placed or installed or maintained on the exterior of the Demised Premises or within the Demised Premises if same is visible to the outside of the Demised Premises any awning, sign, decoration, lettering, advertising matter, shade or blind or other thing of any kind (collectively "Signage"). Landlord shall have the right, without any liability to Tenant, and upon Tenant's failure to remove any such item within three (3) business days following written notice from Landlord, to remove any Signage described above which is installed in violation of this provision and to charge Tenant for the cost of such removal and any repairs necessitated thereby. Tenant shall not place any free standing signs or structures in the entryway to or on the sidewalk in front of the Demised Premises or the Building or any antenna, canopy, banner, flag or pennant on the Demised Premises or the Building. Notwithstanding anything to the contrary, Tenant may install a sign on the sign band set forth on Exhibit "E" provided same is in accordance with the Condominium Documents and is approved by Landlord acting reasonably.

(i)    In the event Landlord or Landlord's representatives shall deem it necessary to remove any such sign or signs in order to paint or to make any other repairs, alterations or improvements in or upon said premises, or the building wherein same is situated, or any part thereof, Landlord shall have the right to do so, provided the same be removed and replaced at Landlord's expense, whenever the said repairs, alterations or improvements shall have been completed.

(j)    Tenant acknowledges that Landlord's damages resulting from any breach of the provisions of this Article are difficult, if not impossible, to ascertain and concedes that among any other remedies for any such breach permitted by law or the provisions of this lease, Landlord shall be entitled to enjoin Tenant from any violation of said provisions. In addition, should Tenant fail to correct any default under this Section 2.03 after written notice from Landlord to Tenant of such condition, Landlord shall have the right upon notice to Tenant to enter the Demised Premises to make correction and Tenant agrees to reimburse Landlord, as additional rent and within ten days following demand, for all costs incurred by Landlord.

(k)    Tenant agrees to indemnify and hold Landlord harmless from and against any and all claims, demands or judgments and from all losses, damages, costs, and expenses whatsoever, including attorney's fees and disbursements, which arise in whole or in part from Tenant's failure to conduct operations in the Demised Premises in accordance with this Section 2.03.

Without intention to limit the generality of the foregoing in any respect, in no event shall pornographic or "X-rated" books, newspapers, magazines, literature, or other merchandise, or books, newspapers, magazines, literature, or other merchandise of an obscene or sexually-oriented nature, be displayed and/or sold in the Demised Premises.

    2.04   Tenant agrees to:

(a)    at Tenant's sole cost and expense, keep the Demised Premises (including the exterior and interior portions of all windows, doors and all other glass) in a neat and clean condition and, if the Demised Premises become infested with vermin, cause the same to be exterminated from time to time to the satisfaction of Landlord;

(b)    store, and/or stock in the Demised Premises only such merchandise as Tenant intends to offer for retail sale in or on the Demised Premises;

(c)    use for office, clerical or other non-selling purposes only such space as is reasonably required for Tenant's business therein, and not perform in the Demised Premises any functions for any other location of Tenant or for any other person or entity;

(d)    maintain, at Tenant's sole cost and expense, the Demised Premises and all of Tenant's personal property therein in accordance with the general reputation and character of the Condominium;

(e)    require all employees and attendants in the Demised Premises to be properly attired at all times and otherwise to have an appearance consistent with the general reputation and character of the Condominium;

(f)    obey and observe (and compel its officers, employees, contractors, licensees, invitees, subtenants, concessionaires and all others doing business with it, to obey and observe), at Tenant's sole cost and expense, all rules and regulations established by Landlord from time to time for the retail/commercial space in the Condominium, so long as the same be not discriminatory with respect to Tenant; but Landlord shall, except in case of emergency, give Tenant at least five (5) days' notice of the establishment thereof;

(g)    operate its business in the Demised Premises with adequate equipment and trade fixtures that shall, when initially installed, be new, functional, sufficient and of first class workmanship;

(h)    handle and dispose of all rubbish, garbage and waste from Tenant's operations in areas designated by Landlord from time to time in accordance with regulations established by Landlord and not permit the accumulation of any rubbish or garbage in, on, or about any part of the Building;

*F:\ASA\TORKIAN\Scotto LSE 17.doc*

13

(i)     comply with all of the terms and provisions of the Declaration and By-Laws of the Condominium; subject to the foregoing and Tenant complying with the applicable governmental requirements, Tenant may conduct its operations in the Demised Premises from 6 a.m. to 2 a.m.; seven days a week and

(j)     keep the windows in the Demised Premises lighted, at Tenant's sole cost and expense, in a manner that is in keeping with the lighting system installed in the Retail Unit and/or the Condominium. Tenant hereby agrees that the agreements, terms, covenants and conditions contained in this Section 2.05 shall, in no event or respect, be taken, deemed, interpreted, or construed to limit the generality of Section 2.04 in any respect or to define or otherwise affect the scope or breadth of the said Section 2.04.

2.05    Tenant agrees that it shall not, at any time, without first obtaining Landlord's prior written consent:

(a)     utilize any unethical method of business operation;

(b)     change (whether by alteration, replacement, rebuilding, or otherwise) the exterior color and/or architectural treatment of the Demised Premises or of the Building or any part thereof;

(c)     use, or permit to be used or obstructed, any corridor, or any other space outside the Demised Premises, for display, sale, storage, or any other similar undertaking;

(d)     use, or permit to be used, any advertising medium that may be heard outside the Demised Premises or that does not comply with the general policies or rules and regulations then in effect;

(e)     use the plumbing facilities for any purpose other than that for which they were constructed, or dispose of any garbage or other foreign substance therein, whether through the utilization of so-called "disposal" or similar units, or otherwise;

(f)     perform any act, or carry on any practice, that  damages, mars, or defaces the Demised Premises or any other part of the Building;

(g)     except with Landlord's prior written consent in each instance, operate on the Demised Premises or in any part of the Building any coin or token operated vending machine or similar device for the sale of any merchandise, pay lockers, pay toilets, amusement devices, and machines for the sale of beverages, foods, candy, cigarettes or other commodities but excluding pay telephones;

(h)     except with Landlord's prior written consent in each instance, install any awnings in, on or outside the Demised Premises;

(i)      permit window cleaning or other maintenance and janitorial services in and for the Demised Premises to be performed except in accordance with all laws and by such person(s) or entities as shall be approved by Landlord (which approval Landlord shall not unreasonably withhold or delay) and except during reasonable hours designated for such purposes by Landlord provided, however, that subject to the provisions of Section 13.04 and the other provisions of this lease, any cleaning, maintenance and janitorial services may be performed by Tenant's employees;

(j)      place a load on any floor in the Demised Premises exceeding the floor load per square foot that such floor was designed to carry and that is allowed by law, or install, operate or maintain therein any heavy item of equipment;

(k)      take any action that would (i) violate Landlord's or the Condominium's union contracts, if any, affecting the Building, (ii) create any work stoppage, picketing, labor disruption, or labor dispute, (iii) interfere with the business of Landlord or any customer or other person(s) lawfully in and upon the Building or (iv) cause any impairment or reduction of the good will or reputation of the Building or the Condominium;

(l)      subject any fixtures, furnishings, equipment or any Tenant's Property in or on the Demised Premises and affixed to the realty, to any mortgages, liens, conditional sales agreements, security interests, chattel mortgages, financing statements, pledges or encumbrances of any kind whatsoever which in any manner affect or encumber the Demised Premises. In furtherance thereof, Tenant shall pay for all fixtures, furnishings, equipment and any Tenant's Property in cash or its equivalent; however, notwithstanding the foregoing, Tenant may finance the acquisition of trade fixtures and trade equipment provided same do not result in an lien or encumbrance upon the Demised Premises or the Building; or

(m)      suffer, allow or permit any offensive or obnoxious vibration, noise or odor or other undesirable effect to emanate from the Demised Premises; upon notice by Landlord to Tenant that any of the aforesaid is occurring, Tenant shall forthwith (but in all events within three (3) days) remove or control the same, and if any such condition is not so remedied, then Landlord may, at its discretion, treat such failure as a default hereunder.

Tenant hereby agrees that the agreements, terms, covenants and conditions contained in this Section 2.05 shall, in no event or respect, be taken, deemed, interpreted, or construed to limit the generality of Section 2.05 in any respect or to define or otherwise affect the scope or breadth of the said Section 2.05.

2.06    If any governmental license or permit shall be required for the proper and lawful conduct of Tenant's business in the Demised Premises, or any part thereof, and if failure to secure such license or permit would in any way affect Landlord or the Condominium, Tenant, at its expense, shall duly procure and thereafter maintain such license or permit and submit the same for inspection

F:\ASAF\TORKIAN Scotia LSE_17.doc

15

by Landlord. Tenant shall at all times comply with the terms and conditions of each such license or permit.

2.07    Tenant shall not at any time use or occupy, or suffer or permit anyone to use or occupy, the Demised Premises, or do or permit anything to be done in the Demised Premises, in violation of the Certificate of Occupancy for the Demised Premises or for the Building.

2.08    Tenant acknowledges that the provisions of this Article 2 are a material inducement to the Landlord for the execution of this lease.

**ARTICLE 3**
**Preparation of the Demised Premises**

3.01    Tenant acknowledges that neither Landlord, nor Landlord's agent, has made any representations or promises in regard to the Demised Premises and neither Landlord nor Landlord's agent shall be required to perform any work to prepare, alter or improve the Demised Premises for Tenant's use. All installations, alterations, materials and work which may be required to be undertaken by or for the account of Tenant to equip, decorate, furnish, operate and use the Demised Premises for Tenant's occupancy, (hereinafter referred to as **"Tenant's Work"**) shall be performed by Tenant at Tenant's sole cost and expense subject to the terms and provisions of Article 13 thereof. Without limiting the foregoing, Tenant agrees at its expense to repair the Precipitator in the Demised Premises so that same is in compliance with applicable building codes, rules and regulations and to the satisfaction of the Condominium, Tenant is familiar with the condition of the Demised Premises and agrees to accept possession of the Demised Premises on the Commencement Date in its then "as is" condition.

**ARITLCLE 4**
Intentionally Deleted

## ARTICLE 5
### Adjustments Of Rent

**5.01**   Tax Escalation. For the purpose of Sections 5.01-5.06:

**(a)**   "Taxes" shall mean the real estate taxes and assessments, (special or otherwise), levies, charges, special assessments and business improvement district charges and fees (whether voluntary or mandatory) imposed upon the Retail Unit and designated as Block 1018, Lot 1011 on the Tax Map of the City of New York of which the Demised Premises are a part. If at any time during the term of this lease the methods of taxation prevailing at the commencement of the term hereof shall be altered so that in lieu of or as an addition to or as a substitute for the whole or any part of the taxes, assessments, levies, impositions or charges now levied, assessed or imposed on real estate and the improvements thereon, there shall be levied, assessed or imposed (i) a tax, assessment, levy, imposition or charge wholly or partially as capital levy or otherwise on the rents received therefrom, or (ii) a tax, assessment, levy, imposition or charge measured by or based in whole or in part upon the Building and/or the Land and imposed upon Landlord, or (iii) a license fee measured by the rents payable by Tenant to Landlord, then all such taxes, assessments, levies, impositions or charges, or the part thereof so measured or based, shall be deemed to be included within the term "Taxes" for the purposes hereof;

**(b)**   "Base Tax Year" shall mean fiscal year 2014/2015;

**(c)**   "Base Tax Rate" shall mean the higher of (i) the Taxes, as finally determined, for the Base Tax Year and (ii) the sum of $75,000.00;

**(d)**   "Tax Year" shall mean the fiscal year for which Taxes are levied by the governmental authority;

**(e)**   "Tenant's Proportionate Share" shall mean 50% for purposes of this Lease and all calculations in connection herewith.

**5.02**   f If the Taxes for any Tax Year shall be more than the Base Tax Rate, Tenant shall pay, as additional rent for such Tax Year, an amount equal to Tenant's Proportionate Share of the amount by which the Taxes for such Tax Year are greater than the Base Tax Rate. (The amount payable by Tenant is hereinafter referred to as the **"Tax Payment"**) The Tax Payment and the Base Tax Rate shall be appropriately prorated, if necessary, to correspond with that portion of a Tax Year occurring within the term of this lease. The Tax Payment shall be payable by Tenant within twenty (20) days after receipt of a demand from Landlord therefor, which demand shall be accompanied by a copy of the tax bill together with Landlord's computation of the Tax Payment. If the Taxes for any Tax Year are payable to the taxing authority on an installment basis, Landlord may serve such demands upon, and the Tax Payment for such Tax Year shall be payable by Tenant, on a corresponding installment basis.

F /ASM TORKIAN Scotto LSE 17 doc

**5.03**    The increase in Taxes shall be paid by Tenant as provided herein regardless of the fact that Tenant may be exempt, in whole or in part, from the payment of any taxes by reason of Tenant's diplomatic or other tax exempt status or for any other reason whatsoever.

**5.04**    Only Landlord shall be eligible to institute tax reduction or other proceedings to reduce the assessed valuation of the Retail Unit.  Should Landlord be successful in any such reduction proceedings and obtain a rebate or a reduction in assessment for periods during which Tenant has paid or is obligated to pay Tenant's Proportionate Share of increases in Taxes then either (a) Landlord shall, in the event a rebate is obtained, return Tenant's Proportionate Share of such rebate to Tenant after deducting Landlord's expenses, including without limitation, attorneys' fees and disbursements in connection with such rebate (such expenses incurred with respect to a rebate or reduction in assessment being hereinafter referred to as **"Tax Expenses"**), or, (b) if a reduction in assessment is obtained prior to the date Tenant would be required to pay Tenant's Proportionate Share of such increase in Taxes, Tenant shall pay to Landlord, upon written request, Tenant's Proportionate Share of such Tax Expenses.

**5.05    (a)**    Anything in this Article 5 to the contrary notwithstanding, in the event that the holder of any superior mortgage or the lessor of any superior lease (as such terms are defined in Section 7.01 hereof) shall require advance payments from the Landlord on account of Taxes, including without limitation, estimated monthly payments on account of Taxes, then Tenant will pay Tenant's Proportionate Share of any amounts required to be paid in advance by Landlord with the holder of the superior mortgage or the lessor of the superior lease.  Any payments to be made by Tenant under this Section 5.05(a) shall be made ten (10) days prior to the date Landlord is required to make such payments to the holder of the superior mortgage or the lessor of the superior lease;

**(b)**    Anything in Sections 5.01 through 5.05 to the contrary notwithstanding, in no event whatsoever shall the fixed rent be reduced below the fixed rent initially set forth in Section 1.04(a) hereof as same may be increased by provisions of this lease other than Sections 5.01 through 5.05.

**5.06**    Landlord's failure during the lease term to prepare and deliver any of the tax bills or notices set forth in this Article 5, or Landlord's failure to make a demand, shall not in any way cause Landlord to forfeit or surrender its rights to collect any of the foregoing items of additional rent which may have become due during the term of this lease.  Tenant's liability for the amounts due under this Article 5 shall survive the expiration of the Term.

## ARTICLE 6
### Security Deposit

**6.01**   Tenant shall deposit with Landlord the sum of $425,000.00 as security for the faithful performance and observance by Tenant of the terms, provisions and conditions of this lease. Notwithstanding anything to the contrary, the security deposit shall be increased from time to time so that same shall at all times after the first year of the Lease Term be equal to six (6) times the then monthly fixed rent payable under this lease. It is agreed that in the event Tenant defaults in respect of any of the terms, provisions and conditions of this lease, including, but not limited to, the payment of rent and additional rent, Landlord may draw upon the security deposit and/or use, apply or retain the whole or any part of the security so deposited to the extent required for the payment of any rent or any additional rent or any other sums as to which Tenant is in default or for any sum which Landlord may expend or may be required to expend by reason of Tenant's default in respect of any of the terms, covenants and conditions of this lease, including but not limited to, any damages or deficiency accrued before or after summary proceedings or other re-entry by Landlord.  Notwithstanding anything to the contrary, provided Tenant is not in default under this Lease beyond applicable notice and cure periods, the security deposit shall be reduced by one (1) month upon the second anniversary of the Commencement Date of the lease and shall be further reduced by one (1) month upon the third anniversary of the Commencement Date of the lease.  In the event that Tenant shall fully and faithfully comply with all of the terms, covenants and conditions of this lease, the security shall be returned to Tenant within thirty (30) days after the date fixed as the end of the lease and after delivery of entire possession of the Demised Premises to Landlord. In the event Landlord applies or retains any portion or all of the security deposited, Tenant shall forthwith restore the amount so applied or retained so that at all times the amount deposited shall be equal to the amount required under the second sentence of Section 6.01.   The security deposit may be commingled with other funds of the Landlord.

**6.02**   In the event of a sale or leasing of the Retail Unit, Landlord shall transfer the security deposit to the vendee or lessee and Landlord shall thereupon be deemed released by Tenant from all liability for the return of the security deposit.  Upon delivery of the security deposit to the vendee or lessee, Tenant shall look solely to the new landlord for the return of the security deposit.  The provisions hereof shall apply to every transfer or assignment of the security deposit to a new landlord.  Tenant shall not assign or encumber or attempt to assign or encumber the monies deposited herein as security and neither Landlord nor its successors and assigns shall be bound by any such assignment, encumbrance, attempted assignment or attempted encumbrance.

**6.03**   Tenant covenants that it will not assign or encumber or attempt to assign or encumber, the monies deposited hereunder as security and that neither Landlord nor its successors or assigns shall be bound by any such assignment, encumbrance, attempted assignment, or attempted encumbrance.

F:\ASAPTORKIAN\Scanin LSE_37.doc

19

## ARTICLE 7
### Subordination, Notice To Lessors And Mortgagees

7.01     This lease, and all rights of Tenant hereunder, are and shall be subject and subordinate in all respects to all ground leases, overriding leases and underlying leases of the Retail Unit now or hereafter existing and to all mortgages which may now or hereafter affect the Retail Unit and/or any of such leases, whether or not such mortgages shall also cover other lands and/or buildings, to each and every advance made or hereafter to be made under such mortgages, and to all renewals, modifications, replacements and extensions of such leases and such mortgages and spreaders and consolidations of such mortgages. This Section shall be self-operative and no further instrument of subordination shall be required.  In confirmation of such subordination, Tenant shall promptly execute and deliver any instrument that Landlord, the lessor of any such lease or the holder of any such mortgage or any of their respective successors in interest may reasonably request to evidence such subordination. The leases to which this lease is, at the time referred to, subject and subordinate pursuant to this Article are hereinafter sometimes referred to as "superior leases" and the mortgages to which this lease is, at the time referred to, subject and subordinate are hereinafter sometimes referred to as "superior mortgages" and the lessor of a superior lease or its successor in interest at the time referred to is sometimes hereinafter referred to as a "lessor".

7.02     In the event of any act or omission of Landlord which would give Tenant the right, immediately or after lapse of a period of time, to cancel or terminate this lease, or to claim a partial or total eviction, Tenant shall not exercise such right (i) until it has given written notice of such act or omission to the holder of each superior mortgage and the lessor of each superior lease whose name and address shall previously have been furnished to Tenant in writing, and (ii) unless such act or omission shall be one which is not capable of being remedied by Landlord or such mortgage holder or lessor within a reasonable period of time, until a reasonable period for remedying such act or omission shall have elapsed following the giving of such notice and following the time when such holder or lessor shall have become entitled under such superior mortgage or superior lease, as the case may be, to remedy the same (which reasonable period shall in no event be less than the period to which Landlord would be entitled under this lease or otherwise, after similar notice, to effect such remedy), provided such holder or lessor shall with due diligence give Tenant written notice of intention to, and commence and continue to remedy such act or omission.

7.03    If, in connection with obtaining financing or refinancing for the Retail Unit of which the Demised Premises form a part, or Landlord's estate and interest therein, a lender shall request reasonable modifications to this lease as a condition to such financing or refinancing, Tenant will not withhold, delay or defer its consent thereto, provided that such modifications do not increase the obligations or liabilities of Tenant hereunder (except, perhaps, to the extent that Tenant may be required to give notices of any defaults by Landlord to such lender and/or permit the curing of such defaults by such lender together with the granting of such additional time for such curing as may be required for such lender to get possession of the Building or Landlord's interest therein) or materially adversely affect the leasehold interest hereby created or the rights and privileges of Tenant under this lease. In no event shall a requirement that the consent of any such lender be given for any modification of this lease or, subject to the provisions of this lease, for any assignment or sublease, be deemed to materially adversely affect the leasehold interest hereby created. In the event Tenant fails to execute and deliver to Landlord a duly executed modification or amendment of this lease incorporating such modification within fifteen (15) days of request therefor, Landlord may execute such amendment or modification for and on behalf of Tenant as its attorney-in-fact coupled with an interest solely to execute and deliver any instruments required to carry out the intent of this Section 7.03 on behalf of Tenant.

## ARTICLE 8
### Quiet Enjoyment

8.01    So long as Tenant has performed all of its obligations hereunder, Tenant shall peaceably and quietly have, hold and enjoy the Demised Premises subject, nevertheless, to the obligations of this lease and, as provided in Article 7, to the superior leases and the superior mortgages.

*F:\ASAF TORKIAN\Senito LSE 17.doc*

21

# ARTICLE 9
## Assignment and Subletting

9.01    Tenant, for itself and its successors and assigns, expressly covenants that, except as expressly otherwise set forth in this lease, it shall not assign, mortgage or encumber this agreement, nor underlet, nor suffer, nor permit the Demised Premises or any part thereof to be used or occupied by others, without the prior written consent of Landlord in each instance. If this lease be assigned, or if the Demised Premises or any part thereof be underlet or occupied by anybody other than Tenant, Landlord may, after default by Tenant, collect rent from the assignee, undertenant or occupant, and apply the net amount collected to the rent herein reserved, but no assignment, underletting, occupancy or collection shall be deemed a waiver of the provisions hereof, the acceptance of the assignee, undertenant or occupant as tenant, or a release of Tenant from the further performance by Tenant of covenants on the part of Tenant herein contained. The consent by Landlord to an assignment or underletting shall not in any wise be construed to relieve Tenant from obtaining the express consent in writing of Landlord to any further assignment or underletting. In no event shall any permitted sublessee assign or encumber its sublease or further sublet all or any portion of its sublet space, or otherwise suffer or permit the sublet space or any part thereof to be used or occupied by others, without Landlord's prior written consent in each instance. In no event shall the Demised Premises be sublet in part or for less than the entire remaining term of this lease, less one (1) day.

9.02    If Tenant shall at any time or times after the second (2nd) anniversary of the Commencement Date of the Lease and not before desire to assign this lease or sublet the Demised Premises, Tenant shall give notice thereof to Landlord, which notice shall be accompanied by (a) a conformed or photostatic copy of the proposed assignment or sublease, the effective or commencement date of which shall be not less than thirty (30) nor more than one hundred eighty (180) days after the giving of such notice, (b) a statement setting forth in reasonable detail the identity of the proposed assignee or subtenant and its principals, the nature of its business and its proposed use of the Demised Premises, and (c) current financial information with respect to the proposed assignee or subtenant and its principals, including, without limitation, its and theirs most recent financial report.

9.03 Providing that Tenant is not in default of any of Tenant's obligations under this lease after notice and the expiration of any applicable grace period, Landlord's consent (which must be in writing and in form reasonably satisfactory to Landlord) to the proposed assignment or sublease shall not be unreasonably withheld or delayed, provided and upon condition that:

(a)    Tenant shall have complied with the provisions of Section 9.02;

(b)    In Landlord's reasonable judgment the proposed assignee or subtenant is engaged in a business and the Demised Premises will be used in a manner which (i) is in keeping with the then standards of the Retail Unit and the Condominium, (ii) is limited to the use expressly permitted

under this lease, and (iii) will not violate any negative covenant as to use contained in any other lease of space in the Retail Unit;

(c)     The proposed assignee or subtenant is a reputable person of good character and with sufficient financial worth considering the responsibility involved, and Landlord has been furnished with reasonable proof thereof and if the proposed assignee or subtenant is other than a natural person, all of the principals thereof execute a guarantee prepared by Landlord's attorney;

(d)     The proposed assignee or sublessee is not a person with whom Landlord is then negotiating to lease space in the Building;

(e)     In the case of a proposed subletting, the form of the proposed sublease shall comply with the applicable provisions of this Article;

(f)     There shall not be more than one (1) occupant (including Landlord or its designee) of the Demised Premises;

(g)     The rental and other terms and conditions of the sublease or assignment are the same as those contained in the proposed sublease or assignment furnished to Landlord pursuant to Section 9.02;

(h)     Tenant shall reimburse Landlord on demand for any reasonable costs that may be incurred by Landlord in connection with said assignment or sublease, including, without limitation, the reasonable costs of making investigations as to the acceptability of the proposed assignee or subtenant, and reasonable legal costs incurred in connection with the review of any term sheet, proposed assignment or sublease or any documentation in connection therewith and in the preparation of any documentation in connection with any request for consent whether or not granted;

(i)     The security deposit shall be increased by an additional 2 months of the then fixed rent.

Landlord agrees to notify Tenant of its consent to or denial of a proposed assignment or subletting within thirty (30) days of Tenant's compliance with the terms and provisions of Section 9.02 hereof. Except for any subletting by Tenant to Landlord or its designee pursuant to the provisions of this Article, each subletting pursuant to this Article shall be subject to all of the covenants, agreements, terms, provisions and conditions contained in this lease. Notwithstanding any such subletting to Landlord or any such subletting to any other subtenant and/or acceptance of rent or additional rent by Landlord from any subtenant, Tenant shall and will remain fully liable for the payment of the fixed rent and additional rent due and to become due hereunder and for the performance of all the covenants, agreements, terms, provisions and conditions contained in this lease on the part of Tenant to be performed and all acts and omissions of any licensee or subtenant or anyone claiming under or through any subtenant which shall be in violation of any of the obligations of this lease, and any such violation shall be deemed to be a violation by Tenant. Tenant further agrees that notwithstanding any such subletting, no other and further subletting of the Premises by Tenant or any person claiming

F. ASM TORKIAN Santa LSE 1'7 doc

23

through or under Tenant (except as provided in Section 9.03) shall or will be made except upon compliance with and subject to the provisions of this Article. If Landlord shall decline to give its consent to any proposed assignment or sublease, Tenant shall indemnify, defend and hold harmless Landlord against and from any and all loss, liability, damages, costs and expenses (including reasonable counsel fees) resulting from any claims that may be made against Landlord by the proposed assignee or sublessee or by any brokers or other persons claiming a commission or similar compensation in connection with the proposed assignment or sublease.

9.04    In the event that Tenant fails to execute and deliver the assignment or sublease to which Landlord consented within 90 days after the giving of such consent, then, Tenant shall again comply with all of the provisions and conditions of Section 9.02 and Section 9.03 before assigning this lease or subletting the Demised Premises.

9.05    With respect to each and every sublease or subletting authorized by Landlord under the provisions of this lease, it is further agreed:

(a)    no subletting shall be for a term ending later than one day prior to the expiration date of this lease;

(b)    no sublease shall be valid, and no subtenant shall take possession of the Demised Premises or any part thereof, until an executed counterpart of such sublease has been delivered to Landlord; and

(c)    each sublease shall provide that it is subject and subordinate to this lease and to the matters to which this lease is or shall be subordinate, and that in the event of termination, re-entry or dispossess by Landlord under this lease Landlord may, at its option, take over all of the right, title and interest of Tenant, as sublessor, under such sublease, and such subtenant shall, at Landlord's option, attorn to Landlord pursuant to the then executory provisions of such sublease, except that Landlord shall not (i) be liable for any previous act or omission of Tenant under such sublease, (ii) be subject to any offset, not expressly provided in such sublease, which theretofore accrued to such subtenant against Tenant, or (iii) be bound by any previous modification of such sublease or by any previous prepayment of more than one month's rent.

9.06    If Tenant is a corporation other than a corporation whose stock is listed and traded on a nationally recognized stock exchange, the provisions of Section 9.01 shall apply to a transfer (however accomplished, whether in a single transaction or in a series of related or unrelated transactions) of stock (or any other mechanism such as, by way of example, the issuance of additional stock, a stock voting agreement or change in class(es) of stock) which results in a change of legal or beneficial interest, whether directly or indirectly, of Tenant as if such transfer of stock (or other mechanism) which results in a change of legal or beneficial interest of Tenant were an assignment of this lease, and if Tenant is a partnership, joint venture or limited liability company, said provisions shall apply with respect to a transfer (by one or more transfers) whether legal or beneficial, directly or indirectly of an interest in the entity or in the distributions of profits and losses

F. ASM TORIJAN Scotto LSE 1-7 doc

24

of such partnership, joint venture or limited liability company (or other mechanism, such as, by way of example, the creation of additional general partnership, limited partnership or membership interests) which results in a change of the legal or beneficial interest of such partnership, joint venture and limited liability company, as if such transfer of an interest in the distributions of profits and losses of such partnership, joint venture or limited liability company which results in a change of legal or beneficial interest of such partnership, joint venture or limited liability company were an assignment of this lease.

9.07    Any assignment or transfer, consented to hereunder, shall be made only if, and shall not be effective until, the assignee shall execute, acknowledge and deliver to Landlord an agreement in form and substance satisfactory to Landlord whereby the assignee shall assume the obligations of this lease on the part of Tenant to be performed or observed and whereby the assignee shall agree that the provisions in Section 9.01 shall, notwithstanding such assignment or transfer, continue to be binding upon it in respect of all future assignments and transfers. The original named Tenant covenants that, notwithstanding any assignment or transfer, whether or not in violation of the provisions of this lease, and notwithstanding the acceptance of fixed rent and/or additional rent by Landlord from an assignee, transferee, or any other party, the original named Tenant shall remain fully liable for the payment of the fixed rent and additional rent and for the other obligations of this lease on the part of Tenant to be performed or observed.

9.08    The joint and several liability of Tenant and any immediate or remote successor in interest of Tenant and the due performance of the obligations of this lease on Tenant's part to be performed or observed shall not be discharged, released or impaired in any respect by any agreement or stipulation made by Landlord extending the time of, or modifying any of the obligations of, this Lease, or by any waiver or failure of Landlord to enforce any of the obligations of this Lease.

9.09    The listing of any name other than that of Tenant, whether on the doors of the Demised Premises or elsewhere in the Building, or otherwise, shall not operate to vest any right, interest in this lease or in the Demised Premises, nor shall it be deemed to be the consent of Landlord to any assignment or transfer of this lease or to any sublease of the Demised Premises or to the use or occupancy thereof by others.

## ARTICLE 10
### Compliance With Laws And Requirements
### of Public Authorities

10.01   Tenant shall give prompt notice to Landlord of any notice it receives of the violation of any law or requirement of public authority with respect to the Demised Premises, and Tenant, at its expense, shall comply with all laws and requirements of public authorities which shall, with respect to the Demised Premises or the use and occupation thereof, or the abatement of any nuisance, impose any violation, order or duty on Landlord or Tenant, arising from (i) Tenant's use of the Demised Premises, (ii) the manner of conduct of Tenant's business or operation of its installations, equipment or other property therein, (iii) any cause or condition created by or at the instance of Tenant, other than by Landlord's performance of any work for or on behalf of Tenant, or (iv) breach of any of Tenant's obligations hereunder. Tenant need not comply with any such law or requirement of public authority so long as Tenant shall be contesting the validity thereof, or the applicability thereof to the Demised Premises, in accordance with Section 10.02.

10.02   Tenant may, at its expense (and if necessary, in the name of but without expense to Landlord) contest, by appropriate proceedings prosecuted diligently and in good faith, the validity, or applicability to the Demised Premises, of any law or requirement of public authority, and Landlord shall cooperate with Tenant in such proceedings, provided that:

(a)   Landlord shall not be subject to criminal penalty or to prosecution for a crime nor shall the Demised Premises or any part thereof be subject to being condemned or vacated, by reason of non-compliance or otherwise by reason of such contest;

(b)   Tenant shall defend, indemnify and hold harmless Landlord against all liability, loss or damage which Landlord shall suffer by reason of such non-compliance or contest, including reasonable attorney's fees and other expenses reasonably incurred by Landlord;

(c)   such non-compliance or contest shall not constitute or result in any violation of any superior lease or superior mortgage, or if such superior lease and/or superior mortgage shall permit such non-compliance or contest on condition of the taking of action or furnishing of security by Landlord, such action shall be taken and such security shall be furnished at the expense of Tenant; and

(d)   Tenant shall keep Landlord advised as to the status of such proceedings.

Without limiting the application of Subsection (a) above thereto, Landlord shall be deemed subject to prosecution for a crime within the meaning of said Subsection, if Landlord, or any officer of Landlord individually, is charged with a crime of any kind or degree whatever, whether by service of a summons or otherwise, unless such charge is withdrawn before Landlord or such officer (as the case may be) is required to plead or answer thereto.

F ASM TORKIAN Scotto LSE 17 doc

26

**10.03**   Tenant shall not cause or permit "Hazardous Materials" (as defined below) to be used, transported, stored, released, handled, produced or installed in, on or from, the Demised Premises or the Building. The term "Hazardous Materials" shall, for the purposes hereof, mean any flammable explosives, radioactive materials, hazardous wastes, hazardous and toxic substances, or related materials, asbestos or any material containing asbestos, or any other substance or material, as defined by any federal, state or local environmental law, ordinance, rule or regulation including, without limitation, the Comprehensive Environmental Response Compensation and Liability Act of 1980, as amended, the Hazardous Materials Transportation Act, as amended, the Resource Conservation and Recovery Act, as amended, and in the regulations adopted and publications promulgated pursuant to each of the foregoing. In the event of a breach of the provisions of this Section 10.03, Landlord shall, in addition to all of its rights and remedies under this lease and pursuant to law, require Tenant to remove any such Hazardous Materials from the Demised Premises in the manner prescribed for such removal by the applicable law, ordinance, rule or regulation. The provisions of this Section 10.03 shall survive the termination of this lease. Landlord agrees to deliver an ACP-5 Form with respect to the Demised Premises if required prior to Tenant performing Tenant's Work.

**10.04**   Tenant covenants that Tenant will not use or suffer or permit the Demised Premises to be used for any unlawful purpose and to obtain and maintain at Tenant's sole cost and expense all licenses and permits from any and all governmental authorities having jurisdiction over the Demised Premises which may be necessary for Tenant's occupancy in the Demised Premises or for the conduct of Tenant's business therein. Tenant further covenants to comply with all applicable laws, resolutions, codes, rules and regulations of any department, bureau, agency or any governmental authority having jurisdiction over the operation, occupancy, maintenance and use of the Demised Premises for the purposes set forth herein including, without limitation, the maintenance of a liquor license. Tenant shall indemnify and save Landlord harmless from and against any and all claims, penalties, loss, damage or expense imposed by reason of a violation of any applicable law or the rules and regulations of governmental authorities having jurisdiction thereof and such violation or loss of licenses, including, without limitation, the liquor license, shall be a material default under this lease. Tenant covenants that it will not serve liquor at the Demised Premises unless and until it has obtained a liquor license.

## ARTICLE 11
### Insurance

    **11.01**  Tenant shall not violate, or permit the violation of, any condition imposed by the fire insurance policy in effect for the Building from time to time, and shall not do, or permit anything to be done, or keep or permit anything to be kept in the Demised Premises which would subject landlord to any liability or responsibility for personal injury or death or property damage or which would increase the fire or other casualty insurance rate on the Retail Unit or the Building or the property therein over the rate which would otherwise then be in effect (unless Tenant pays the resulting premium as provided in Section 11.04) or which would result in insurance companies of good standing refusing to insure the Retail Unit or the Building or any of such property in amounts reasonably satisfactory to Landlord or customary for similar buildings in similar areas.

    **11.02**  Tenant covenants to provide on or before the earlier to occur of (i) the Commencement Date and (ii) ten (10) days from the date of this Lease and to keep in force during the term hereof the following insurance coverage which coverage shall be effective on the Commencement Date:

**(a)**    A comprehensive policy of liability insurance containing an omnibus named insured provision naming Landlord as an additional insured protecting Landlord, any person and entity designated by Landlord and Tenant against any liability whatsoever occasioned by accident on or about the Demised Premises or any appurtenances thereto. Such policy shall have limits of liability of not less than Five Million ($5,000,000.00) Dollars combined single limit coverage on a per occurrence basis, including property damage. Such policy shall contain a contractual liability coverage endorsement with respect to Tenant's indemnification obligations under this lease. Such insurance may be carried under a blanket policy covering the Demised Premises and other locations of Tenant, if any, provided such policy contains an endorsement (i) naming Landlord and any person and entity designated by Landlord as additional insureds, (ii) specifically referencing the Demised Premises; and (iii) guaranteeing a minimum limit available for the Demised Premises equal to the limits of liability required under this lease.

**(b)**    Fire and Extended coverage in an amount adequate to cover the cost of replacement of all personal property, fixtures, furnishing and equipment, including Tenant's Work, Tenant's Changes and Tenant's Property located in the Demised Premises.

**(c)**    Business interruption insurance using insurance office standard (or equivalent) on all "all risk" basis to reimburse Tenant for its loss of profits and expenses as a result of an interruption of business, which such coverage shall be purchased and maintained at a limit adequate to protect not less than twelve months of profits and expenses.

**(d)**    Liquor liability insurance in an amount not less than Five Million and 00/100 ($5,000,000.00) Dollars of combined single limit.

F /ASA/TORRIAN Scotia LSE 17 doc

28

(e)     Plate glass insurance in an amount reasonably required by Landlord.

(f)     Such other insurance in such amounts as Landlord may reasonably require from time to time and/or as may be required by the Condominium Documents.

All such policies shall be issued by companies of recognized responsibility licensed to do business in New York State and rated by Best's Insurance Reports or any successor publication of comparable standing and carrying a rating of A-IX or better or the then equivalent of such rating, and all such policies shall contain a provision whereby the same cannot be cancelled or modified unless Landlord, the Condominium and any additional insureds are given at least thirty (30) days prior written notice of such cancellation or modification.

Prior to the time such insurance is first required to be carried by Tenant and thereafter, at least fifteen (15) days prior to the expiration of any such policies, Tenant shall deliver to Landlord either duplicate originals of the aforesaid policies evidencing such insurance together with a certified copy of the endorsement naming Landlord and any entity and person designated by Landlord as an additional insured, or a certificate of insurance evidencing such insurance naming Landlord and any entity and person designated by the Landlord as an additional insured, and in either event together with evidence of payment for the policy. If Tenant delivers certificates as aforesaid, Tenant upon reasonable prior notice from Landlord, shall make available to Landlord, at the Demised Premises, duplicate originals of such policies from which Landlord may make copies thereof, at Landlord's cost. Tenant's failure to provide and keep in force the aforementioned insurance shall be regarded as a material default hereunder, entitling Landlord to exercise any or all of the remedies as provided in this lease in the event of Tenant's default. In addition in the event Tenant fails to provide and keep in force the insurance required by this lease, at the times and for the durations specified in this lease, Landlord shall have the right, but not the obligation, at any time and from time to time, and without notice, to procure such insurance and or pay the premiums for such insurance in which event Tenant shall repay Landlord within five (5) days after demand by Landlord, as additional rent, all sums so paid by Landlord and any costs or expenses incurred by Landlord in connection therewith without prejudice to any other rights and remedies of Landlord under this lease.

    11.03   Landlord and Tenant shall each endeavor to secure an appropriate clause in, or an endorsement upon, each fire or extended coverage policy obtained by it and covering the Retail Unit, the Demised Premises or the personal property, fixtures and equipment located therein or thereon, pursuant to which the respective insurance companies waive subrogation or permit the insured, prior to any loss, to agree with a third party to waive any claim it might have against said third party. The waiver of subrogation or permission for waiver of any claim hereinbefore referred to shall extend to the agents of each party and its employees and, in the case of Tenant, shall also extend to all other persons and entities occupying or using the Demised Premises in accordance with the terms of this lease. If and to the extent that such waiver or permission can be obtained only upon payment of an additional charge then, except as provided in the following two paragraphs, the party benefitting

from the waiver or permission shall pay such charge upon demand, or shall be deemed to have agreed that the party obtaining the insurance coverage in question shall be free of any further obligations under the provisions hereof relating to such waiver or permission.

In the event that Landlord shall be unable at any time to obtain one of the provisions referred to above in any of its insurance policies, at Tenant's option Landlord shall cause Tenant to be named in such policy or policies as one of the assureds, but if any additional premium shall be imposed for the inclusion of Tenant as such as assured, Tenant shall pay such additional premium upon demand. In the event that Tenant shall have been named as one of the assureds in any of Landlord's policies in accordance with the foregoing, Tenant shall endorse promptly to the order of Landlord, without recourse, any check, draft or order for the payment of money representing the proceeds of any such policy or any other payment growing out of or connected with said policy and Tenant hereby irrevocably waives any and all rights in and to such proceeds and payments.

In the event that Tenant shall be unable at any time to obtain one of the provisions referred to above in any of its insurance policies, Tenant shall cause Landlord and any other entity and individual designated by Landlord to be named in such policy or policies as one of the assureds, but if any additional premium shall be imposed for the inclusion of Landlord as such an assured, Landlord shall pay such additional premium upon demand or Tenant shall be excused from its obligations under this paragraph with respect to the insurance policy or policies for which such additional premiums would be imposed. In the event that Landlord and any other entity and individual designated by Landlord shall have been named as one of the assureds in any of Tenant's policies in accordance with the foregoing, Landlord shall endorse promptly to the order of Tenant, without recourse, any check, draft or order for the payment of money representing the proceeds of any such policy or any other payment growing out of or connected with said policy and Landlord hereby irrevocably waives any and all rights in and to such proceeds and payments.

Subject to the foregoing provisions of this Section 11.03, and insofar as may be permitted by the terms of the insurance policies carried by it, each party hereby releases the other with respect to any claim (including a claim for negligence) which it might otherwise have against the other party for loss, damages or destruction with respect to its property by fire or other casualty (including rental value or business interruption, as the case may be) occurring during the term of this lease.

**11.04**  If, by reason of a failure of Tenant to comply with the provisions of Section 10.01 or Section 11.01, the rate of fire insurance with extended coverage on the Building and/or the Retail Unit or equipment or other property of Landlord shall be higher than it otherwise would be, Tenant shall reimburse Landlord, on demand, for that part of the premiums for fire insurance and extended coverage paid by Landlord because of such failure on the part of Tenant.

**11.05**  Landlord may, from time to time, require that the amount of the insurance to be provided and maintained by Tenant under Section 11.02 hereof be increased so that the amount thereof adequately protects Landlord's interest but in no event in excess of the amount that would be

F:\ASAHTORKIAN\Scotto LSE 17.doc

30

required by other tenants conducting similar business in first-class residential/commercial/office buildings in the borough of Manhattan.

11.06  If any dispute shall arise between Landlord and Tenant with respect to the incurrence or amount of any additional insurance premium referred to in Section 11.03 or the increase in amount of insurance referred to in Section 11.05, the dispute shall be determined by arbitration.

11.07  A schedule or make up of rates for the Building, the Retail Unit or the Demised Premises, as the case may be, issued by the New York Fire Insurance Rating Organization or other similar body making rates for fire insurance and extended coverage for the premises concerned, shall be conclusive evidence of the facts therein stated and of the several items and charges in the fire insurance rate with extended coverage then applicable to such premises.

11.08  Each policy evidencing the insurance to be carried by Tenant under this lease shall contain a clause that such policy and the coverage evidenced thereby shall be primary with respect to any policies carried by Landlord, and that any coverage carried by Landlord shall be excess insurance.

11.09  Tenant, at its own cost and expense, shall replace all damaged or broken plate glass or other glass in or about the Demised Premises. Tenant shall keep such glass insured for the benefit of Landlord as an additional insured and shall submit said insurance policy and evidence of payment of premiums therefor to Landlord. Such policy shall contain an endorsement that such insurance may not be cancelled except upon ten (10) days notice to Landlord. If Tenant shall default in its obligations as set forth in this provision, in addition to all other rights and remedies hereunder, Landlord may, but not shall be obligated to, procure such insurance and pay such premiums for the account of Tenant and add the cost thereof to the installment of rent next falling due.

## ARTICLE 12
### Rules And Regulations

12.01  Tenant and its employees and agents shall faithfully observe and comply with the Rules and Regulations annexed hereto as Exhibit C, and such reasonable changes therein (whether by modification, elimination or addition) as Landlord at any time or times hereafter may make and communicate in writing to Tenant, which do not unreasonably affect the conduct of Tenant's business in the Demised Premises except as required by any governmental law, rule, regulation, ordinance or similar decree and/or the Condominium; provided, however, that in case of any conflict or inconsistency between the provisions of this lease and any of the Rules and Regulations as originally promulgated or as changed, the provisions of this lease shall control.

F:\ASAFTORKIAN\Scotto LSE 17.doc

31

12.02   Nothing in this lease contained shall be construed to impose upon Landlord any duty or obligation to Tenant to enforce the Rules and Regulations or the terms, covenants or conditions in any other lease, as against any other tenant, and Landlord shall not be liable to Tenant for violation of the same by any other tenant or its employees, agents or visitors.  However, Landlord shall not enforce any of the Rules and Regulations in such manner as to discriminate against Tenant or anyone claiming under or through Tenant.

**ARTICLE 13**
**Tenant's Changes**

13.01   Tenant may from time to time during the term of this lease, at its expense, make such other alterations, additions, installations, substitutions, improvements and decorations (hereinafter collectively referred to as "changes" and, as applied to changes provided for in this Article, **"Tenant's Changes"**) in and to the Demised Premises, excluding structural changes, changes affecting Building systems and changes to the storefront, as Tenant may reasonably consider necessary for the conduct of its business in the Demised Premises, on the following conditions:

(a)   Tenant shall comply with the terms and provisions of the Condominium Documents.

(b)   the outside appearance or the strength of the Building or of any of its structural parts shall not be affected;

(c)   no part of the Building outside of the Demised Premises shall be physically affected;

(d)   the proper functioning of any of the mechanical, electrical, sanitary and other service systems of the Building shall not be adversely affected or changed and the usage of such systems by Tenant shall not be increased;

(e)   in performing the work involved in making such changes, Tenant shall be bound by and observe all of the conditions and covenants contained in the following Sections of this Article;

*F: ASM TORKIAN Scotto LSE 17 doc*

(f)    before proceeding with any Tenant's Changes, Tenant will advise Landlord thereof and shall submit to Landlord proof reasonably satisfactory of the cost thereof and shall submit the names of the contractors or subcontractors (who shall be licensed to the full extent required by applicable law and) who will be performing Tenant's Changes for Landlord's approval, which approval shall not be unreasonably withheld or delayed. Additionally, any Tenant's Changes (including, without limitation, Tenant's Work) except for any Tenant's Changes of a purely decorative nature, shall be performed under the supervision of a licensed architect (hereinafter referred to as "**Tenant's Architect**") approved by Landlord, in advance, which approval shall not be unreasonably withheld or delayed. Before proceeding with any Tenant's Changes, Tenant shall submit to Landlord for its approval, plans and specifications and all changes and revisions thereto prepared by Tenant's Architect, for the work to be done for Landlord's approval. Notwithstanding the forgoing or anything to the contrary, Landlord's approval shall not be required for Tenant's Changes which are cosmetic in nature and do not exceed the sum of $50,000.00 per year. Landlord agrees to deliver to Tenant its consent to or denial of a proposed Tenant Change, within ten (10) business days after Tenant's submission therefore, as aforesaid; and Landlord's consent shall be deemed denied if Landlord fails to respond within the aforesaid ten (10) business day period. Tenant shall, upon demand of Landlord, pay to Landlord the costs incurred by Landlord for the review of such plans and specifications and all changes and revisions thereto by its architect, engineer and other consultants as well as supervision of the Tenant Changes; except that Tenant shall not be required to pay Landlord's review costs in connection with the initial Tenant's Work. Without limiting the foregoing, Tenant agrees to pay the Commercial Board Fees provided for in the Condominium Documents. Tenant agrees that any review or approval by Landlord of any plans and specifications is solely for Landlord's benefit, and without any representation or warranty whatsoever to Tenant with respect to the adequacy, correctness or efficiency thereof or otherwise. The granting by Landlord of its approval to such plans and specifications shall in no manner constitute or be deemed to constitute a judgment or acknowledgment by Landlord as to their legality or compliance with laws and/or requirements of public authorities. Landlord may as a condition of its approval require Tenant to make revisions in and to the plans and specifications and to post bonds or other security satisfactory to Landlord to insure the completion of Tenant's Changes.

   13.02    Tenant, at its expense, shall obtain all necessary governmental permits and certificates for the commencement and prosecution of Tenant's Changes and for final approval thereof upon completion and shall furnish copies thereof to Landlord, and shall cause Tenant's Changes to be performed in compliance therewith and with all applicable laws and requirements of public authorities, and with all applicable requirements of insurance bodies, and in good and workmanlike manner, using first class materials and equipment. Tenant's Changes shall be performed in such manner as not to unreasonably interfere with or delay and (unless Tenant shall indemnify Landlord therefor to the latter's reasonable satisfaction) as not to impose any additional expense upon, Landlord in the renovation, maintenance or operation of the Retail Unit or any portion thereof. Tenant's Changes shall be performed diligently and expeditiously. Throughout the performance of Tenant's Changes, Tenant, at its expense, shall carry, or cause to be carried, worker's compensation insurance in statutory limits and general liability insurance for any occurrence in or about the

F: ASM TORKIAN Scotto LSE 17 doc

33

Building as set forth in Section 11.02 hereof as well as the insurance required pursuant to the Condominium Documents, in which Landlord and its designees and the Condominium and its designees shall be named as parties insured, in such limits as Landlord and the Condominium may prescribe, with insurers satisfactory to Landlord. Tenant shall furnish Landlord with satisfactory evidence that such insurance is in effect at or before the commencement of Tenant's Changes and, on request, at reasonable intervals thereafter during the continuance of Tenant's Changes. If any of Tenant's Changes shall involve the removal of any fixtures, equipment or other property in the Demised Premises which are not Tenant's Property (as defined in Article 14), such fixtures, equipment or other property shall be promptly replaced, at Tenant's expense, with new fixtures, equipment or other property (as the case may be) of like utility and at least equal value unless Landlord shall otherwise expressly consent in writing. All such fixtures, equipment or property so installed may not be removed without Landlord's prior written approval and shall be deemed Landlord's property upon the expiration or sooner termination of this lease. All electrical and plumbing work in connection with Tenant's changes shall be performed by contractors or subcontractors licensed therefore by all governmental agencies having or asserting jurisdiction. Upon the completion of Tenant's Changes, Tenant shall furnish to Landlord and its designees (a) a certificate from the architect or engineer who prepared the plans for the Tenant's Changes certifying that the work has been completed in accordance with all applicable laws and codes and the plans, (b) all required final governmental signoffs and approvals, and (c) a complete set of "as-built" plans and specifications. Tenant further agree as follows:

(i)     Tenant shall hold the Sponsor, the Condominium, the Commercial Board, the Condominium Board, the Residential Board, the respective Board's officers and managers, the managing agent, and the Landlord harmless from any costs or liability arising from any of Tenant's Changes. (Capitalized terms used herein shall have the meanings set forth in the Condominium Documents).

(ii)    There will be no adverse change in the operation of the Building's heating system or air-conditioning system to facilitate the functioning of any heating or air-conditioning units which Tenant may be installing other than stoppages required in order to facilitate and enable Tenant to hook-up to the Building's heating and air conditioning systems and or sprinkler system. Tenant shall submit to Landlord a plan and anticipated schedule of any required shut downs, drain downs, etc., of the Building's existing systems prior to the commencement of their work. Failure to submit this plan shall cause the Tenant to be accountable for all extra costs associated with delays to reschedule shut downs, drain downs, etc., should they occur. No utility interruption will be permitted without written approval from the Commercial Board and Landlord. Tenant is required to give the Landlord and the Commercial Board at least seventy-two (72) hours advance notice before any Building or utility service interruption which affects occupied and unoccupied areas. Each request for such interruption will indicate estimated downtime. Landlord shall request that Sponsor

and/or the Commercial Board schedule the appropriate personnel to perform all drain downs and recharging of building systems.

(iii)    Tenant shall take all precautions to prevent dirt and dust from permeating other parts of the Building during the progress of the work, and shall place all materials and rubbish in containers or bags before removing the same from the demised premises. All such containers and bags and all rubbish, rubble, discarded equipment, empty packing cartons and other materials shall be removed from the demised premises and taken out of the Building at Tenant's expense after 6:00 p.m. and removal of trash containers shall be scheduled during night time, unless otherwise directed by the Commercial Board, but in no event shall such removal interfere with regularly scheduled building operations. The placement of any dumpsters shall comply with all governmental regulations, including without limitation, obtaining any necessary permits.

(iv)    None of Landlord, Sponsor, the Commercial Board, the Condominium Board, the Residential Board, or managing agent or any of their principals, agents, employees, contractors or subcontractors, will be responsible for failure or inefficient performance of building services to the demised premises resulting from deficiencies in the work.

(v)    Tenant acknowledges that is has not relied upon any representations, warranties, architect's plans or statements of any nature whatsoever, whether written or oral, made by Landlord, Sponsor, Sponsor's selling agent, the managing agent, or otherwise, in connection with or relating to the cost, feasibility, safety or compliance with all legal requirements pertaining to the work.

(vi)    Tenant acknowledges and agrees that if the work or any portion thereof prevents the Condominium from obtaining a permanent Certificate of Occupancy, and the Commercial Board has provided Landlord with a written notice detailing the changes to the Work which will be required to be performed in order to enable the Condominium to obtain the permanent Certificate of Occupancy (the "**Corrective Work**") then Landlord shall notify Tenant of same. If Tenant fails to perform the Corrective Work within thirty (30) days after such written notice from the Commercial Board to Landlord, then the Landlord, Sponsor and/or the Commercial Board shall have the right to freely access the demised premises in order to perform the Corrective Work to completion, at Tenant's sole cost and expense. Tenant shall reimburse the Landlord, Sponsor and/or the Commercial Board for its costs and expenses in performing the Corrective Work within ten (10) days after its receipt of an invoice detailing such costs and expenses.

(vii)    In the event any of Tenant's proposed alterations, additions, improvements or repairs are structural in nature or adversely impact Building systems (and referred to in the Condominium Documents as Approval Work Items), then subject to Landlord's approval rights as to same) Tenant shall at its sole cost and expense comply with all of the requirements and conditions imposed upon Landlord under the Condominium Documents with respect to same.

13.03    Tenant, at its expense, and with diligence and dispatch, shall procure the cancellation or discharge of all notices of violation arising from or otherwise connected with Tenant's Changes which shall be issued by the Department of Buildings or any other public or quasi-public authority having or asserting jurisdiction. Tenant shall defend, indemnify and save harmless Landlord against any and all mechanic's and other liens filed in connection with Tenant's Changes, including the liens of any security interest in, conditional sales of, or chattel mortgages upon, any materials, fixtures or articles so installed in and constituting part of the Demised Premises and against all costs, expense and liabilities incurred in connection with any such lien, security interest, conditional sale or chattel mortgage or any action or proceeding brought thereon. Tenant, at its expense, shall procure the satisfaction or discharge of all such liens within thirty (30) days after the filing thereof. Nothing herein contained shall prevent Tenant from contesting, in good faith and at its own expense, any such notice of violation, provided that Tenant shall comply with the provisions of Section 10.02.

13.04    Tenant agrees that the exercise of its rights pursuant to the provisions of this Article 13 or any other provision of this lease shall not be done in a manner which would create any work stoppage, picketing, labor disruption or dispute or violate any union contracts affecting the Land, the Building and/or the Retail Unit nor cause interference with the business of Landlord or any Tenant or occupant of the Building, without the prior written consent of Landlord. In the event of the occurrence of any condition described above arising from the exercise by Tenant of its right pursuant to the provisions of this Article 13 or any other provision of this lease, Tenant shall, immediately upon notice from Landlord, cease the manner of exercise of such right giving rise to such condition. The parties agree that in such instance, Landlord will suffer irreparable harm for which money damages will be an insufficient remedy. For that reason, in the event Tenant fails to cease such manner of exercise of its rights as aforesaid, Landlord, in addition to any rights otherwise available to it under this Lease and pursuant to law and equity, shall have the right to a court order granting an injunction against Tenant's manner of exercise of its rights as aforesaid, application for such injunction to be made without notice. With respect to Tenant's Changes, Tenant shall make all arrangements for, and pay all expenses incurred in connection with, use of the freight elevators, if any, servicing the Demised Premises.

13.05    All of the provisions of this Article 13 shall be applicable to the performance of Tenant's Work.

**13.06**  The timely and lien free completion of Tenant's Work shall be performed in accordance with the terms and provisions of this Article 13 and shall be and are hereby unconditionally guaranteed by John Scotto.

**13.07**  All of Tenant's obligations under this Article 13 including the timely and lien free completion of Tenant's Changes are guaranteed by John Scotto.

**ARTICLE 14**
**Tenant's Property**

**14.01**  All fixtures, equipment, improvements, appurtenances, paneling, movable partitions, lighting fixtures, special cabinet work, other business and trade fixtures, machinery and equipment, communications equipment and office and restaurant and café equipment, whether or not attached to or built into the Demised Premises, which are installed in the Demised Premises by or for the account of Tenant, without expense to Landlord, and can be removed without structural damage to the Building, and all furniture, furnishings and other articles of movable personal property owned by Tenant and located in the Demised Premises, (all of which are sometimes referred to as **"Tenant's Property"**) shall be and shall remain the property of Tenant and may be removed by it at any time during the term of this lease; provided that (a) a complete list of said Tenant's Property is delivered to Landlord upon the installation thereof, (b) if any of Tenant's Property is removed, Tenant or any party or person entitled to remove same shall repair or pay the cost of repairing any damage to the Demised Premises or to the Building resulting from such removal and (c) Tenant shall prior to the Expiration Date replace such removed Tenant's Property with items of comparable value and/or quality.  Notwithstanding the foregoing or anything to the contrary, in the event of a default by Tenant under this Lease and the expiration of applicable notice and cure periods, at Landlord's option to be exercised by written notice to the Tenant any or all of the items referenced as Tenant's Property shall remain and become the property of Landlord and shall not be considered Tenant's Property.

**14.02**  At or before the Expiration Date, or the date of any earlier termination of this lease, or as promptly as practicable after such an earlier termination date, Tenant at its expense, shall remove from the Demised Premises all of Tenant's Property except such items thereof as Tenant shall have expressly agreed in writing with Landlord were to remain and to become the property of Landlord or as Landlord may have elected to retain pursuant to Section 14.01 above, and shall fully repair any damage to the Demised Premises or the Building resulting from such removal.  Tenant's obligation herein shall survive the termination of the lease.

14.03   Any other items of Tenant's Property (except money, securities and other like valuables) which shall remain in the Demised Premises after the Expiration Date or after a period of fifteen (15) days following an earlier termination date, may, at the option of the Landlord, be deemed to have been abandoned, and in such case either may be retained by Landlord as its property or may be disposed of, without accountability, at Tenant's expense in such manner as Landlord may see fit.

## ARTICLE 15
### Repairs And Maintenance

15.01   Tenant shall take good care of the Demised Premises. Tenant, at its expense, shall promptly make (x) all non-structural repairs in and about the Demised Premises, (y) all repairs to the heating, ventilating, electrical, plumbing and air-conditioning systems and equipment serving the Demised Premises, and (z) all repairs to the storefront. Tenant, at its expense, shall promptly make all repairs, ordinary or extraordinary, interior or exterior, structural or otherwise, in and about the Demised Premises, the Retail Unit and the Building as shall be required by reason of (i) the performance or existence of Tenant's Work or Tenant's Changes, (ii) the installation, use or operation of Tenant's Property in the Demised Premises, (iii) the moving of Tenant's Property in or out of the Building, or (iv) the misuse or neglect or a willful act of Tenant or any of its employees, invitees, tenants, agents or contractors; but Tenant shall not be responsible for any of such repairs as are required by reason of Landlord's willful acts. Tenant, at its expense, shall replace all scratched, damaged or broken doors or other glass in or about the Demised Premises and shall be responsible for all repairs, maintenance and replacement of wall and floor coverings in the Demised Premises and, for the repair and maintenance of all lighting fixtures therein. All repairs, except for emergency repairs, made by Tenant as provided herein shall be performed by contractors or subcontractors approved in writing by Landlord prior to commencement of such repairs, which approval shall not be unreasonably withheld or delayed.

15.02   Landlord, at its expense, shall keep and maintain the Retail Unit and its fixtures, appurtenances, systems (except as otherwise expressly set forth in this lease) and facilities serving the Demised Premises, in working order, condition and repair and shall make all structural repairs, except for those repairs for which Tenant is responsible pursuant to any other provisions of this lease and except for those repairs which are the responsibility of the Condominium.

15.03   Except as expressly otherwise provided in this lease, Landlord shall have no liability to Tenant by reason of any inconvenience, annoyance, interruption or injury to business arising from either (a) Landlord's making any repairs or changes which Landlord is required or permitted by this Lease, or required by law, to make in or to any portion of the Building or the Demised Premises, or in or to the fixtures, equipment or appurtenances of the Building or the Demised Premises or (b) the Condominium making or failing to make any repairs or changes to any portion of the Building or the Demised Premises or in or to the fixtures or appurtenances of the Building or the Demised Premises.

## ARTICLE 16
### Electricity

16.01    Tenant shall obtain and pay for Tenant's entire separate supply of electric current by direct application to and arrangement with the public utility company servicing the Building. Landlord will permit its electric feeders, risers and wiring serving the Demised Premises to be used by Tenant to the extent available and safely capable of being used for such purpose. Tenant shall, at its expense, install and repair meters within the Demised Premises to measure Tenant's electrical consumption.

16.02    Any additional risers, feeders or other equipment or service proper or necessary to supply Tenant's electrical requirements, will, upon written request of Tenant, be installed by Landlord, at the sole cost and expense of Tenant, if in Landlord's sole judgement, the same are necessary and will not cause damage or injury to the Building or the Demised Premises or cause or create a dangerous or hazardous condition or entail excessive or unreasonable alterations, repairs or expense or interfere with or disturb other tenants or occupants. Rigid conduit only will be allowed.

16.03    Landlord shall not in anyway be liable or responsible to Tenant for any loss or damage or expense which Tenant may sustain or incur if either the quantity or character of electric service is changed or is no longer available or suitable for Tenant's requirements.

16.04    Tenant agrees not to connect any additional electrical equipment of any type to the Building electric distribution system, without the Landlord's prior written consent, which consent shall not be unreasonably withheld or delayed. In no event shall Tenant use or install any fixtures, equipment or machines the use of which in conjunction with other fixtures, equipment and machines in the Demised Premises would result in an overload of the electrical circuits servicing the Demised Premises.

16.05    Tenant covenants and agrees that at all times its use of electric current shall never exceed the capacity of the then existing feeders to the Building or the risers or wiring installation. Tenant shall furnish, install and replace, as required, all lighting tubes, lamps, bulbs and ballasts required in the Demised Premises, at Tenant's sole cost and expense. All lighting tubes, lamps, bulbs and ballasts so installed shall become Landlord's property upon the expiration or sooner termination of this lease.

# ARTICLE 17
## Heat, Ventilating And Air-Conditioning, Gas, Steam and Water

**17.01**  Tenant shall obtain and pay for at Tenant's cost and expense all utilities and services required by Tenant including gas, water and sewer, ventilating, heating and air-conditioning. Tenant, at its sole cost and expense, shall install and maintain all equipment necessary for the furnishing of utilities and services. Landlord shall not be liable or responsible to Tenant for any loss, damage, or expense if the aforesaid utilities and/or services are not available or are changed.

**17.02**  Tenant shall be responsible for the installation, maintenance and repair of facilities, machinery and equipment for the supply and distribution within the Demised Premises of air-conditioning, ventilation and heating (hereinafter collectively referred to as "**HVAC Service**"). All facilities, equipment, machinery and ducts installed by Tenant in connection with HVAC Service shall (a) be subject to Landlord's prior written approval (b) comply with Landlord's reasonable requirements as to installation, maintenance and operation, and (c) comply with all other terms, covenants and conditions of this Lease applicable thereto. Such maintenance obligations shall be performed throughout the term of the Lease, on Tenant's behalf, by a reputable HVAC maintenance company engaged by Tenant at its expense. In the event Tenant shall fail to engage an a HVAC maintenance company as aforesaid, then, notwithstanding anything contained in the lease which may be deemed to the contrary, and in addition to all of Landlord's other rights and remedies, Landlord may (but shall not be obligated to) perform such maintenance and/or engage an air-conditioning service company at Tenant's expense to perform the aforesaid maintenance to the HVAC Service, and Tenant shall pay as additional rent hereunder, within ten (10) days after Landlord's demand therefor, all reasonable expenses incurred by Landlord in connection therewith, which demand shall be accompanied by reasonable substantiating evidence of such expenses. Tenant shall surrender the HVAC Service and all repairs, additions and replacements thereto and thereof to Landlord in good working order and condition on the expiration or sooner termination of the Lease. Tenant agrees at all times to cooperate fully with Landlord and to abide by all the regulations and requirements which Landlord may reasonably prescribe for the proper functioning and protection of said facilities. Notwithstanding anything to the contrary, Landlord shall cause up to fifteen (15) tons of condenser water per year to be made available to the demised premises for up to a 15 ton unit. Tenant shall pay to Landlord the sum of $300.00 per ton per annum (subject to increase as Landlord's cost for same increases) in equal monthly installments for the use of condenser water as additional rent.

**17.03**  To the extent not presently installed, meter and/or submeter systems will be furnished and installed by Landlord (or at Landlord's option, Tenant) at Tenant's expense to measure the amount of gas and/or water consumed by the Tenant.

17.04  Landlord shall, from time to time, but not more often than monthly, furnish Tenant with an invoice indicating the period during which the usage for each of the water and gas services was measured and the amount of the utility charges payable by Tenant to Landlord for each of the water and gas services for such period. Within twenty (20) days after receipt of each such invoice, Tenant shall pay the amount of the utility charges set forth thereon to Landlord as additional rent. In addition, if any tax is imposed upon Landlord by any municipal, state or federal agency or subdivision with respect to the purchase, sale or resale of any of the water and gas services supplied to Tenant hereunder, Tenant covenants and agrees that, where permitted by law, such taxes shall be passed on to, included in the bill to and paid by, Tenant to Landlord, as additional rent.

17.05  If the Tenant requires, uses or consumes water for any purpose in addition to ordinary drinking, cleaning or lavatory purposes, Landlord may install a water meter or submeter and thereby measure Tenant's water consumption for all purposes. In such event (a) Tenant shall pay Landlord for the cost of the meter and the cost of the installation therefor and through the duration of Tenant's occupancy Tenant shall keep said meter and installation equipment in good working order and repair at Tenant's own cost and expense in default of which Landlord may cause such meter and equipment to be replaced or repaired and collect the cost thereof from Tenant: (b) Tenant agrees to pay for water consumed, as shown on said meter as and when bills are rendered, and on default in making such payment Landlord may pay such charges and collect the same from Tenant; and (c) Tenant covenants and agrees to pay the sewer rent, charge or any other tax, rent, levy or charge which now or hereafter is assessed, imposed or shall become a lien upon.

17.06  Landlord, throughout the term, shall have free access to any and all mechanical installations of Landlord, including but not limited to, air-cooling, fan, ventilating and machine rooms and the electrical systems, (including, but not limited to, electrical closets) (hereinafter collectively referred to as "**Mechanical Rooms**"); and Tenant agrees that there shall be no construction of partitions of other obstructions which may interfere with Landlord's free access thereto, or interfere with the moving of Landlord's equipment to and from the enclosures containing said installations or electrical systems. Tenant further agrees that neither Tenant, nor its agents, employees or contractors shall at any time enter the said enclosures or tamper with, adjust or touch or otherwise in any manner affect said mechanical installation or electrical systems.

17.07  Landlord shall not in anywise be liable or responsible to Tenant for any loss or damage or expense which Tenant may sustain or incur if due to the actions or inaction of the utility supplier either the quantity or character of any or all of the utilities is changed or is no longer available or suitable for Tenant's requirements.

17.08  Tenant covenants and agrees that at all times its use of the utilities shall never exceed the capacity of the then facilities in the Retail Unit.

## ARTICLE 18
### Other Services

**18.01** Landlord shall not be obligated to supply to the Demised Premises any utilities or building services of any kind. Tenant agrees to make its own arrangements with the public utility company servicing the Demised Premises for the furnishing of, and payment of all charges for, water, gas, telephone and all other utilities consumed by Tenant in the Demised Premises. In no event shall Landlord be responsible for charges for utilities. All meters at the Demised Premises for the purpose of measuring Tenant's consumption of the respective utilities shall be installed and thereafter maintained by Tenant or at Landlord's option by Landlord, at Tenant's sole cost and expense, in good working order and condition.

**18.02** The entire Demised Premises, including store fronts and any glass show windows, are to be kept clean by Tenant, at its sole cost and expense, in a manner satisfactory to Landlord.

**18.03** Tenant agrees that it shall independently contract, at its sole cost and expense, for the removal of all rubbish, refuse and waste from the Demised Premises, utilizing contractors and subcontractors approved (in writing, in advance) by Landlord which approval shall not be unreasonably withheld or delayed. The removal of such rubbish, refuse, garbage shall be subject to such rules and regulations as, in the reasonable judgment of Landlord, are necessary for the proper operation of the Building and/or the Retail Unit. Tenant shall comply with all applicable requirements, if any, of the Departments of Health and Sanitation of the City of New York and laws and/or requirements of other public authorities relating to the treatment of such rubbish prior to its placement for disposal including, without limitation, sorting and separating all of its rubbish, refuse and waste into such categories as provided by such laws and/or requirements. Tenant shall pay all costs, expenses, fines, penalties or damages which may be imposed on Landlord or Tenant by reason of Tenant's failure to comply with the provisions of this Section, and, at Tenant's sole cost and expense, shall indemnify, defend and hold Landlord harmless from and against any actions, claims, costs (including, without limitation, reasonable legal fees) and suits arising from such non-compliance, utilizing counsel reasonably satisfactory to Landlord. Tenant shall accumulate garbage only in sealed plastic bags, as hereinbefore provided, and, shall (i) retain such sealed bags inside the Demised Premises; and (ii) place such garbage in such sealed bags outside the Demised Premises only in the area designated by Landlord for garbage pick-up, and only during the hours designated by Landlord except in strike and emergency situations.

**18.04**  Tenant hereby agrees to promptly enter into (and keep in full force and effect throughout the term of this lease) a full-service preventive extermination contract with a licensed pest-control operator reasonably acceptable to Landlord to keep the Demised Premises at all times free from vermin. Without limiting the generality of the foregoing, if the Demised Premises (or any portion thereof) at any time become infested with vermin, Tenant shall, at Tenant's sole cost and expense, cause the same to be exterminated from time to time, to the reasonable satisfaction of Landlord. Tenant shall cause any such vermin to be exterminated immediately upon discovery of such vermin or immediately upon notice thereof from Landlord.

**18.05**  Except as otherwise provided herein, Tenant shall not encumber or obstruct, or permit to be encumbered or obstructed at any time, any portion of the sidewalk, entrances or common and public areas of the Building adjacent to or abutting upon the Demised Premises.

**18.06**  Tenant shall, at its sole cost and expense, install fire extinguishing devices as required by all rules, regulations, laws, ordinances, statutes and requirements of all governmental authorities having jurisdiction and as approved by the Fire Insurance Rating Organization and its successors and shall, at its sole cost and expense, keep such devices under service throughout the term of this lease as so required.

**18.07**  If gas is used in the Demised Premises, Tenant shall install gas cut-off devices (manual and automatic). Tenant shall not be permitted to install any exhausts except as approved by Landlord.

**18.08**  Tenant may install and connect all of its utility waste lines to those now existing in the Building, sidewalk or streets, but agrees not to use the plumbing for any purpose other than that for which it was constructed and agrees, further, not to permit any food, waste or other foreign substance to be thrown or drawn into the pipes. Tenant agrees to maintain the plumbing that it installs in good order, repair and condition and to repair any damage resulting from any violation of this Article. Tenant further agrees to install, at its sole cost and expense, to the extent not presently existing, and to utilize a grease trap in the Demised Premises in order to preclude the flow or leakage of grease into the waste lines and sewer.

**18.09**  Tenant agrees that Tenant's food and other deliveries to the Demised Premises shall not be through the Building lobby but shall be directly into the Demised Premises and shall be subject to Landlord's reasonable rules and regulations as shall be promulgated from time to time throughout the term. At no time shall deliveries interfere with the operation, maintenance and appearance of the Building nor shall any deliveries be left on the sidewalk in front of or adjacent to the Demised Premises or the Building.

**18.10**  Tenant shall, at its sole cost and expense, keep the sidewalks in front of the Demised Premises and the curbs adjacent thereto free from snow, ice, dirt and rubbish and make all necessary repairs and replacements thereto to the extent caused by Tenant and/or its invitees, customers, guests or parties performing services for or on account of Tenant.

**18.11**  Landlord reserves the right, without any liability to Tenant, except as otherwise expressly provided in this lease, to stop service of any of the Building systems serving the Demised Premises, or the rendition of any of the other services required of Landlord under this lease, whenever and for so long as may be necessary, by reason of accidents, emergencies, strikes or the making of repairs or changes which Landlord is required by this lease or by law to make or in good faith deems necessary, by reason of difficulty in securing proper supplies of fuel, steam, water, electricity, labor or supplies, or by reason of any other cause beyond Landlord's reasonable control.

**18.12**  Tenant shall not encumber or obstruct, or permit to be encumbered or obstructed, any entrances or common and public areas of the Building adjacent to or abutting upon the Demised Premises. Tenant shall not use, or permit to be used, any area or space outside the Demised Premises for the conduct of Tenant's business and shall not permit Tenant's employees, agents, contractors or invitees to linger, loiter or assemble outside the Demised Premises.

**18.13**  Tenant will not permit any unusual or obnoxious or cooking odors to emanate from the Demised Premises. Tenant will, within ten (10) business days after written notice from Landlord, install or commence to install, at its own cost and expense, control devices or procedures to eliminate such odors, and will complete such installations as expeditiously as possible thereafter. In the event such condition is not promptly remedied, Landlord may, at its discretion, either (a) cure such condition and thereafter add the cost and expense incurred by Landlord therefor to the next monthly rental to become due and Tenant shall pay said amount as additional rent or (b) treat such failure on the part of Tenant to eliminate such odors as a material default hereunder entitling Landlord to any of its remedies pursuant to the terms of this lease. Landlord shall have the right to enter the Demised Premises at any reasonable time upon reasonable prior notice to Tenant to inspect the same and ascertain whether it is clean and free of odors. In the event Landlord requires Tenant to install control devices or procedures to eliminate such odors, the material, size, and location of such installations shall be subject to Landlord's prior written approval. Such work shall be performed at Tenant's sole cost and expense and shall not be commenced until plans and specifications therefor have been submitted to and approved by Landlord.

**18.14**  Tenant agrees that it will perform all of its work required or permitted hereunder and conduct its business in the Demised Premises throughout the term of this lease in such a manner so as not to create any excessive noise or vibration, which disturbs any of the other tenants or occupants of the Building. Subject to the foregoing limitation, any work which will create any excessive noise or vibration which may be disturbing to other tenants or occupants, shall be performed only after regular business hours or on non-business days.

F. ASM TORKIAN Senate LSE V7.dbn.

## ARTICLE 19
### Access, Changes In Building Facilities, Name

**19.01**  All except the inside surfaces of all walls, windows and doors bounding the Demised Premises (including exterior Building walls, core corridor walls and doors and any core corridor entrance as well as all passages, hallways, corridors, entrance ways, exists, all mechanical space and all other areas or spaces designated as a common element or general common element) and any space in or adjacent to the Demised Premises used for shafts, stacks, pipes, conduits, fan rooms, ducts, electric or other utilities, sinks or other Building facilities, and the use thereof, as well as access thereto through the Demised Premises for the purpose of operation, maintenance, decoration and repair, are reserved to Landlord and/or the Condominium.

**19.02**  Tenant shall permit Landlord and/or the Condominium to install, use, replace and maintain pipes, ducts and conduits within the demising walls, bearing columns and ceilings of the Demised Premises.

**19.03**  Landlord or Landlord's agent shall have the right upon request (except in emergency under clause (ii) hereof) to enter and/or pass through the Demised Premises or any part thereof, at reasonable times during reasonable hours, (i) to examine the Demised Premises and to show them to the fee owners, lessors of superior leases, holders of superior mortgages, or prospective purchasers, mortgagees or lessees of the Retail Unit as an entirety, and (ii) for the purpose of making such repairs or changes in or to the Demised Premises or in or its facilities, as may be provided for by this lease or as may be mutually agreed upon by the parties or as Landlord may be required to make by law or in order to repair and maintain said structure or its fixtures or facilities. Landlord shall be allowed to take all materials into and upon the Demised Premises that may be required for such repairs, changes, repainting or maintenance, without liability to Tenant, but Landlord shall not unreasonably interfere with Tenant's use of the Demised Premises.  Landlord shall also have the right to enter on and/or pass through the Demised Premises, or any part thereof, at such times as such entry shall be required by circumstances of emergency affecting the Demised Premises or said structure.

**19.04**  During the period of nine (9) months prior to the Expiration Date Landlord may exhibit the Demised Premises to prospective tenants.

**19.05**  Landlord reserves the right, at any time, without incurring any liability to Tenant therefor, and without it constituting an actual or constructive eviction, to make such changes in or to the Building and/or the Retail Unit and the fixtures and equipment thereof, as well as in or to the size, composition, number, arrangement or location of the public entrances, doors, doorways, halls, passages, elevators, escalators and stairways and other public portions thereof, as it may deem necessary or desirable, provided that Tenant shall, at all times, have ingress and egress to and from the Demised Premises.

F: ASM TORKIAN Scotia LSE 17.doc

45

**19.06** Landlord may adopt any name for the Retail Unit. Landlord reserves the right to change the name or address of the Retail Unit at any time.

**19.07** For the purposes of Article 19, the term "Landlord" shall include lessors of leases and the holders of mortgages to which this lease is subject and subordinate as provided in Article 7.

**19.08** Any reservation in this lease of a right by Landlord to enter upon the Demised Premises and to make or perform any repairs, alterations or other work in, to or about the Demised Premises which, in the first instance, is the obligation of Tenant pursuant to this lease shall not be deemed to: (i) impose any obligation on Landlord to do so, (ii) render Landlord liable (to Tenant or any third party) for the failure to do so, or (iii) relieve Tenant from any obligations to indemnify Landlord as otherwise provided elsewhere in this lease.

## ARTICLE 20
### Notice of Accidents

**20.01** Tenant shall give notice to Landlord, promptly after Tenant learns thereof, of (i) any accident in or about the Demised Premises for which Landlord might be liable, (ii) all fires in the Demised Premises, (iii) all damages to or defects in the Demised Premises, including the fixtures, equipment and appurtenances thereof, for the repair of which Landlord might be responsible, and (iv) all damage to or defects in any parts or appurtenances of the Building's sanitary, electrical, heating, ventilating, air-conditioning, elevator and other systems located in or passing through the Demised Premises or any part thereof.

## ARTICLE 21
### Non-Liability And Indemnification

**21.01** Neither Landlord nor any agent or employee of Landlord shall be liable to Tenant for any injury or damage to Tenant or to any other person or for any damage to, or loss (by theft or otherwise) of, any property of Tenant or of any other person, irrespective of the cause of such injury, damage or loss, unless caused by or due to the negligence of Landlord, its agents or employees occurring within the scope of their respective employments without negligence on the part of Tenant, it being understood that no property, other than such as might normally be brought upon or kept in the Demised Premises as an incident to the reasonable use of the Demised Premises for the purpose herein permitted, will be brought upon or be kept in the Demised Premises.

F:\ASAFTORKIAN\Scotto LSE 17.doc

46

21.02  Tenant shall indemnify and save harmless Landlord, the Condominium, the Residential Board and their respective designees, directors, shareholders, officers, agents, consultants, partners, employees, architects, engineers, contractors, sub-contractors, guests, tenants, licensees, attorneys and employees (collectively, the **"Indemnitees"**) against and from (a) any and all losses, costs, claims, damages (including damages to persons or property) and expenses including without limitation, reasonable attorney's fees and disbursements incurred by the Indemnitees (i) arising from or related to (x) the use, conduct or management of the Demised Premises or of any business therein, or (y) any work or thing whatsoever done, or any condition created (other than by Landlord for Landlord's or Tenant's account) in or about the Demised Premises during the term of this lease or during the period of time, if any, prior to the Commencement Date that Tenant may have been given access to the Demised Premises, or (ii) arising from any act or omission of Tenant or any of its subtenants or licensees or its or their respective designees, directors, shareholders, offices, agents, consultants, partners, employees, architects, engineers, contractors, subcontractors, guests, tenants, licensees, attorneys and employees, and (b) all costs, expenses and liabilities incurred in or in connection with each such claim or action or proceeding brought thereon. In case any action or proceeding be brought against Landlord by reason of any such claim, Tenant, upon notice from Landlord, shall resist and defend such action or proceeding.

21.03  Except as otherwise expressly provided in this lease, this lease and the obligations of Tenant hereunder shall be in no wise affected, impaired or excused because Landlord is unable to fulfill, or is delayed in fulfilling, any of its obligations under this lease by reason of strike, other labor trouble, governmental pre-emption or priorities or other controls in connection with a national or other public emergency or shortages of fuel, supplies or labor resulting therefrom, acts of God or other like cause beyond Landlord's reasonable control.

### ARTICLE 22
### Destruction Or Damage

22.01  If the Building or the Demised Premises shall be partially damaged or partially destroyed by fire or other cause, the rents payable hereunder shall be abated to the extent that the Demised Premises shall have been rendered untenantable and for the period from the date of such damage or destruction to the date the damage shall be repaired or restored in accordance with the provisions of Section 22.03. If the Demised Premises or a major part thereof shall be totally (which shall be deemed to include substantially totally) damaged or destroyed or rendered completely (which shall be deemed to include substantially completely) untenantable on account of fire or other cause, the rents shall abate as of the date of the damage or destruction and until Landlord and/or the Condominium shall repair, restore and rebuild the Demised Premises, provided, however, that should Tenant reoccupy a portion of the Demised Premises during the period the restoration work is taking place and prior to the date that the same are made completely tenantable, rents allocable to such portion shall be payable by Tenant from the date of such occupancy.

F: ASM TORKIAN Santa LSE 17.doc

47

22.02   If the Building or the Demised Premises shall be totally damaged or destroyed by fire or other cause, or if the Retail Unit shall be so damaged or destroyed by fire or other cause (whether or not the Demised Premises are damaged or destroyed) as to require a reasonably estimated expenditure of more than 20% of the full insurable value of the Retail Unit immediately prior to the casualty, then in either such case Landlord may terminate this lease by giving Tenant notice to such effect within one hundred eighty (180) days after the date of the casualty. In case of any damage or destruction mentioned in this Article, Tenant may terminate this lease, by notice to Landlord, if Landlord and/or the Condominium has not completed the making of the required repairs and the restoration and rebuilding of the Retail Unit and the Demised Premises within eighteen (18) months from the date of such damage or destruction, or within such period after such date (not exceeding six months) as shall equal the aggregate period Landlord may have been delayed in doing so by adjustment of insurance, labor trouble, governmental controls, act of God, or any other cause beyond Landlord's reasonable control.

22.03   No damages, compensation or claim shall be payable by Landlord for inconvenience, loss of business or annoyance arising from any repair or restoration of any portion of the Demised Premises or of the Building pursuant to this Article.

22.04   Notwithstanding any of the foregoing provisions of this Article, if Landlord or the lessor of any superior lease or the holder of any superior mortgage shall be unable to collect all of the insurance proceeds (including rent insurance proceeds) applicable to damage or destruction of the Demised Premises or the Building by fire or other cause, by reason of some action or inaction on the part of Tenant or any of its employees, agents or contractors, then, without prejudice to any other remedies which may be available against Tenant, there shall be no abatement of Tenant's rents, but the total amount of such rents not abated (which would otherwise have been abated) shall not exceed the amount of the uncollected insurance proceeds.

22.05   Landlord will not carry insurance of any kind on Tenant's Property or Tenant's Work, and, except as provided by law or by reason of its fault or its breach of any of its obligations hereunder, shall not be obligated to repair any damage thereto or replace the same.

22.06   The provisions of this Article shall be considered an express agreement governing any case of damage or destruction of the Demised Premises by fire or other casualty, and Section 227 of the Real Property Law of the State of New York, providing for such a contingency in the absence of an express agreement, and any other law of like import, now or hereafter in force, shall have no application in such case.

## ARTICLE 23
### Eminent Domain

23.01  If the whole of the Building shall be lawfully taken by condemnation or in any other manner for any public or quasi-public use or purpose, this lease and the term and estate hereby granted shall forthwith terminate as of the date of vesting of title in such taking (which date is hereinafter also referred to as the **"date of the taking"**), and the rents shall be prorated and adjusted as of such date.

23.02  If only a part of the Building shall be so taken this lease shall be unaffected by such taking, except that Tenant may elect to terminate this lease in the event of a partial taking of the Demised Premises, if the remaining area of the Demised Premises shall not be reasonably sufficient for Tenant to continue feasible operation of its business.  Tenant shall give notice of such election to Landlord not later than thirty (30) days after (i) notice of such taking is given by Landlord to Tenant, or (ii) the date of such taking, whichever occurs sooner.  Upon the giving of such notice by Tenant this lease shall terminate on the date of such taking and the rents shall be prorated as of such termination date.  Upon such partial taking and this lease continuing in force as to any part of the Demised Premises, the rents apportioned to the part taken shall be prorated and adjusted as of the date of taking and from such date the fixed rent for the Demised Premises and additional rent shall be payable pursuant to Article 5 according to the rentable area remaining.

23.03  Landlord shall be entitled to receive the entire award in any proceeding with respect to any taking provided for in this Article without deduction therefrom for any estate vested in Tenant by this lease and Tenant shall receive no part of such award, except as hereinafter expressly provided in this Article.  Tenant hereby expressly assigns to Landlord all of its right, title and interest in or to every such award.  Notwithstanding anything herein to the contrary, Tenant may, at its sole cost and expense, make a claim with the condemning authority for Tenant's moving expenses, the value of Tenant's fixtures or Tenant's Changes which do not become part of the Building or property of the Landlord, provided however that Landlord's award is not thereby reduced or otherwise adversely affected.

23.04  If the temporary use or occupancy of all or any part of the Demised Premises shall be lawfully taken by condemnation or in any other manner for any public or quasi-public use or purpose during the term of this lease, Tenant shall be entitled, except as hereinafter set forth, to receive that portion of the award for such taking which represents compensation for the use and occupancy of the Demised Premises and, if so awarded, for the taking of Tenant's Property and for moving expenses, and Landlord shall be entitled to receive that portion which represents reimbursement for the cost of restoration of the Demised Premises.  This lease shall be and remain unaffected by such taking and Tenant shall continue responsible for all of its obligations hereunder insofar as such obligations are not affected by such taking and shall continue to pay in full the fixed rent and additional rent when due.  If the period of temporary use or occupancy shall extend beyond the Expiration Date, that part of the award which represents compensation for the use or occupancy of the Demised Premises (or a part thereof) shall be divided between Landlord and Tenant so that Tenant shall receive so much thereof as represents the period prior to the Expiration Date and Landlord shall receive so much thereof as represents the period subsequent to the Expiration Date.  All moneys received by Tenant as, or as part of, an award for temporary use and occupancy for a period beyond the date to which the rents hereunder have been paid by Tenant shall be received, held and applied by Tenant as a trust fund for payment of the rents falling due hereunder.

23.05  In the event of any taking of less than the whole of the Building which does not result in a termination of this lease, or in the event of a taking for a temporary use or occupancy of all or any part of the Demised Premises which does not extend beyond the Expiration Date, Landlord, at its expense, and to the extent any award or awards shall be sufficient for the purpose, shall proceed with reasonable diligence to repair, alter and restore the Demised Premises to substantially a building standard condition to the extent that the same may be feasible and so as to constitute a complete and tenantable Demised Premises.

23.06  Should any part of the Demised Premises be taken to effect compliance with any law or requirement of public authority other than in the manner hereinabove provided in this Article, then (i) if such compliance is the obligation of Tenant under this lease, Tenant shall not be entitled to any diminution or abatement of rent or other compensation from Landlord therefor, but (ii) if such compliance is the obligation of Landlord under this lease, the fixed rent hereunder shall be reduced and additional rents under Article 5 shall be adjusted in the same manner as is provided in Section 23.02 according to the reduction in rentable area of the Demised Premises resulting from such taking.

23.07  Any dispute which may arise between the parties with respect to the meaning or application of any of the provisions of this Article shall be determined by arbitration in the manner provided in Article 34.

## ARTICLE 24
### Surrender; Holdover

**24.01**   On the last day of the term of this lease, or upon any earlier termination of this lease, or upon any re-entry by Landlord upon the Demised Premises, Tenant shall quit and surrender the Demised Premises to Landlord in good order, condition and repair, except for ordinary wear and tear and Tenant shall remove all of Tenant's Property therefrom (and repair any and all damage caused thereby) except as otherwise expressly provided in this lease and shall restore the Demised Premises wherever such removal results in damage thereto.

**24.02   (a)**      In the event this lease is not renewed or extended or a new lease is not entered into between the parties, and if Tenant shall then hold over after the expiration of the term of this lease, and if Landlord shall then not proceed to remove Tenant from the Demised Premises in the manner permitted by law (or shall not have given written notice to Tenant that Tenant must vacate the Demised Premises) irrespective of whether or not Landlord accepts rent from Tenant for a period beyond the Expiration Date, the parties hereby agree that Tenant's occupancy of the Demised Premises after the expiration of the term shall be under a month-to-month tenancy commencing on the first day after the expiration of the term, which tenancy shall be upon all of the terms set forth in this lease except Tenant shall pay on the first day of each month of the holdover period as fixed rent, an amount equal to two times one-twelfth of the sum of the fixed rent and additional rent payable by Tenant during the last year of the term of this lease (i.e., the year immediately prior to the holdover period).  Landlord shall not be required to perform any work, furnish any materials or make any repairs within the Demised Premises during the holdover period.  It is further stipulated and agreed that if Landlord shall, at any time after the expiration of the original term or after the expiration of any term created thereafter, proceed to remove Tenant from the Demised Premises as a holdover, the fixed rent for the use and occupancy of the Demised Premises during any holdover period shall be calculated in the same manner as set forth above.  In addition to the foregoing, Landlord shall be entitled to recover from Tenant any losses or damages arising from such holdover.

**(b)**      Notwithstanding anything to the contrary contained in this lease, the acceptance of any rent paid by Tenant pursuant to subsection 24.02(a) above shall not preclude Landlord from commencing and prosecuting a holdover or summary eviction proceeding, and the preceding sentence shall be deemed to be an "agreement expressly providing otherwise,, within the meaning of Section 232-c of the Real Property Law of the State of New York.

**(c)**      All damages to Landlord by reason of holding over by Tenant may be of the subject of a separate action and need not be asserted by Landlord in any summary proceedings against Tenant.

## ARTICLE 25
### Conditions Of Limitation

25.01   To the extent permitted by applicable law this lease and the term and estate hereby granted are subject to the limitation that whenever Tenant shall make an assignment of the property of Tenant for the benefit of creditors, or shall file a voluntary petition under any bankruptcy or insolvency law, or an involuntary petition alleging an act of bankruptcy or insolvency shall be filed against Tenant under any bankruptcy or insolvency law, or whenever a petition shall be filed or against Tenant under the reorganization provisions of the United States Bankruptcy Act or under the provisions of any law of like import, or whenever a petition shall be filed by Tenant under the arrangement provisions of the United States Bankruptcy Act or under the provisions of any law of like import, or whenever a permanent receiver of Tenant or of or for the property of Tenant shall be appointed, then, Landlord, (a) at any time after receipt of notice of the occurrence of any such event, or (b) if such event occurs without the acquiescence of Tenant, at any time after the event continues for ninety (90) days, Landlord may give Tenant a notice of intention to end the term of this lease at the expiration of five (5) days from the date of service of such notice of intention, and upon the expiration of said five (5) day period this lease and the term and estate hereby granted, whether or not the term shall theretofore have commenced, shall terminate with the same effect as if that day were the Expiration Date, but Tenant shall remain liable for damages as provided in Article 27.

25.02   This lease and the term and estate hereby granted are subject to the further limitation that:

(a)   whenever Tenant shall default in the payment of any installment of fixed rent, or in the payment of any additional rent or any other charge payable by Tenant to Landlord, on any day upon which the same ought to be paid, and such default shall continue for three (3) business days; or

(b)   except as set forth in subparagraph (c) hereafter, whenever Tenant shall be in default of any of its non monetary obligations or Tenant shall do or permit anything to be done, whether by action or inaction, contrary to any of Tenant's obligations hereunder, and if such situation shall continue and shall not be remedied by Tenant within thirty (30) days after Landlord shall have given to Tenant a notice specifying the same, or, in the case of a happening or default which cannot with due diligence be cured within a period of thirty (30) days and the continuance of which for the period required for cure will not subject Landlord to the risk of criminal liability (as more particularly described in Section 10.02) or termination of any superior lease or foreclosure of any superior mortgage, if Tenant shall not, (i) within said thirty (30) day period advise Landlord of Tenant's intention to duly institute all steps necessary to remedy such situation, (ii) duly institute within said thirty (30) day period, and thereafter diligently prosecute to completion all steps necessary to remedy the same and (iii) complete such remedy within ninety (90) days after the expiration of the aforesaid thirty (30) day period; or

F:\ASA\TURKIAN Scotto LSE 17.doc

52

**(c)**     whenever Tenant shall be in default of any of its obligations under Section 2.02 (d) hereof and such default shall not be remedied within three (3) days after Landlord shall have given Tenant a notice specifying same with no additional cure period to remedy same.

**(d)**     whenever any event shall occur or any contingency shall arise whereby this lease or the estate hereby granted or the unexpired balance of the term hereof would, by operation of law or otherwise, evolve upon or pass to any person, firm or corporation other than Tenant, except as expressly permitted by Article 9; or

**(e)**     whenever Tenant shall abandon the Demised Premises (unless as a result of a casualty), or

**(f)**     whenever Tenant shall cause Landlord to be in default of the Condominium Documents,

then in any of said cases set forth in the foregoing Subsections (a), (b), (c), (d), (e) and (f) in addition to any and all rights and remedies available at law or in equity Landlord may give to Tenant a notice of intention to end the term of this lease at the expiration of five (5) days from the date of the service of such notice of intention, and upon the expiration of said five (5) days this lease and the term and estate hereby granted, whether or not the term shall theretofore have commenced, shall terminate with the same effect as if that day were the Expiration Date, but Tenant shall remain liable for damages as provided in Article 27.

## ARTICLE 26
### Re-Entry By Landlord

**26.01**   f this lease shall expire as in Article 25 provided, Landlord or Landlord's agents and employees may immediately or at any time thereafter re-enter the Demised Premises, or any part thereof, in the name of the whole, either by summary dispossess proceedings or by any suitable action or proceeding at law, or by force or otherwise, without being liable to indictment, prosecution or damages therefor, and may repossess the same, and may remove any persons therefrom, to the end that Landlord may have, hold and enjoy the Demised Premises again as and of its first estate and interest therein. The word re-enter, as herein used, is not restricted to its technical legal meaning. In the event of any termination of this lease under the provisions of Article 25 or if Landlord shall re-enter the Demised Premises under the provisions of this Article or in the event of the termination of this lease, or of re-entry, by or under any summary dispossess or other proceeding or action or any provision of law by reason of default hereunder on the part of Tenant, Tenant shall thereupon pay to Landlord the fixed rent and additional rent payable by Tenant to Landlord up to the time of such termination of this lease, or of such recovery of possession of the Demised Premises by Landlord, as the case may be, and shall also pay to Landlord damages as provided in Article 27.

26.02    In the event of a breach or threatened breach by Tenant of any of its obligations under this lease, Landlord shall also have the right of injunction. The special remedies to which Landlord may resort hereunder are cumulative and are not intended to be exclusive of any other remedies or means of redress to which Landlord may lawfully be entitled at any time and Landlord may invoke any remedy allowed at law or in equity as if specific remedies were not provided for herein.

26.03    If this lease shall terminate under the provisions of Article 25, or if Landlord shall re-enter the Demised Premises under the provisions of this Article, or in the event of the termination of this lease, or of re-entry, by or under any summary dispossess or other proceeding or action or any provision of law by reason of default hereunder on the part of Tenant, Landlord shall be entitled to retain all moneys, if any, paid by Tenant to Landlord, whether as advance rent, security or otherwise, but such moneys shall be credited by Landlord against any fixed rent or additional rent due from Tenant at the time of such termination or re-entry or, at Landlord's option, against any damages payable by Tenant under Article 27 or pursuant to law.

### ARTICLE 27
### Damages

27.01    If this lease is terminated under the provisions of Article 25, or if Landlord shall re-enter the Demised Premises under the provisions of Article 26, or in the event of the termination of this lease, or of re-entry, by or under any summary dispossess or other proceeding or action or any provision of law by reason of default hereunder on the part of Tenant, Tenant shall pay to Landlord as damages, at the election of Landlord, either:

(a)    a sum which at the time of such termination of this lease or at the time of any such re-entry by Landlord, as the case may be, represents the then present value (using a discount rate equal to the J.P. Morgan Chase Bank prime rate) of the excess, if any, of:

(i)    the aggregate of the fixed rent and the additional rent payable hereunder which would have been payable by Tenant (conclusively presuming the additional rent to be the same as was payable for the year immediately preceding such termination) for the period commencing with such earlier termination of this lease or the date of any such re-entry, as the case may be, and ending with the Expiration Date, had this lease not so terminated or had Landlord not so re-entered the Demised Premises; over

(ii)    the aggregate rental value of the Demised Premises for the same period; or

(b)    sums equal to the fixed rent and the additional rent (as above presumed) payable hereunder which would have been payable by Tenant had this lease not so terminated, or had Landlord not so re-entered the Demised Premises, payable upon the due dates therefor specified herein following such termination or such re-entry and until the Expiration Date, provided, however, that if Landlord

F ASM TURKIAN Scotto LSE 17 doc

54

shall relet the Demised Premises during said period, Landlord shall credit Tenant with the net rents received by Landlord from such reletting, such net rents to be determined by first deducting from the gross rents as and when received by Landlord from such reletting the expenses incurred or paid by Landlord in terminating this lease or in re-entering the Demised Premises and in securing possession thereof, as well as the expenses of reletting, including altering and preparing the Demised Premises for new tenants, brokers' commissions, and all other expenses properly chargeable against the Demised Premises and the rental therefrom; it being understood that any such reletting may be for a period shorter or longer than the remaining term of this lease; but in no event shall Tenant be entitled to receive any excess of such net rents over the sums payable by Tenant to Landlord hereunder, nor shall Tenant be entitled in any suit for the collection of damages pursuant to this Subsection to a credit in respect of any net rents from a reletting, except to the extent that such net rents are actually received by Landlord. If the Demised Premises or any part thereof should be relet in combination with other space, then proper apportionment on a square foot basis (for equivalent space) shall be made of the rent received from such reletting and of the expenses of reletting.

If the Demised Premises or any part thereof be relet by Landlord for the unexpired portion of the term of this lease, or any part thereof, before presentation of proof of such damages to any court, commission or tribunal, the amount of rent reserved upon such reletting shall, prima facie, be the fair and reasonable rental value for the Demised Premises, or part thereof, so relet during the term of the reletting.

27.02    Suit or suits for the recovery of such damages, or any installments thereof, may be brought by Landlord from time to time at its election, and nothing contained herein shall be deemed to require Landlord to postpone suit until the date when the term of this lease would have expired if it had not been so terminated under the provisions of Article 25, or under any provision of law, or had Landlord not re-entered the Demised Premises. Nothing herein contained shall be construed to limit or preclude recovery by Landlord against Tenant of any sums or damages to which, in addition to the damages particularly provided above, Landlord may lawfully be entitled by reason of any default hereunder on the part of Tenant. Nothing herein contained shall be construed to limit or prejudice the right of Landlord to prove for and obtain as liquidated damages by reason of the termination of this lease or re-entry on the Demised Premises for the default of Tenant under this lease, an  amount equal to the maximum allowed by any statute or rule of law in effect at the time when, and governing the proceedings in which, such damages are to be proved whether or not such amount be greater, equal to, or less than any of the sums referred to in Section 27.01.

# ARTICLE 28
## Waiver

**28.01**  Tenant, for Tenant, and on behalf of any and all persons claiming through or under Tenant, including creditors of all kinds, does hereby waive and surrender all right and privilege which they or any of them might have under or by reason of any present or future law, to redeem the Demised Premises or to have a continuance of this lease for the term hereby demised after being dispossessed or ejected therefrom by process of law or under the terms of this lease or after the termination of this lease as herein provided.

**28.02**  In the event that Tenant is in arrears in payment of fixed rent or additional rent hereunder, Tenant waives Tenant's right, if any, to designate the items against which any payments made by Tenant are to be credited, and Tenant agrees that Landlord may apply any payments made by Tenant to any items it sees fit, irrespective of and notwithstanding any designation or request by Tenant as to the items against which any such payments shall be credited.

**28.03**  Landlord and Tenant hereby waive trial by jury in any action or proceeding brought by either against the other on any matter whatsoever arising out of or in any way connected with this lease, the relationship of Landlord and Tenant, Tenant's use or occupancy of the Demised Premises, including any claim of injury or damage, or any emergency or other statutory remedy with respect thereto.

**28.04**  The provisions of Articles 17 and 18 shall be considered expressed agreements governing the services to be furnished by Landlord, and Tenant agrees that any laws and/or requirements of public authorities, now or hereafter in force, shall have no application in connection with any enlargement of Landlord's obligations with respect to such services unless Tenant agrees, in writing, to pay to Landlord, as additional rent, Landlord's reasonable charges for any additional services provided.

**28.05**  If, at any time during the term of this lease, any requirement of public authority shall have the effect of limiting, for any period of time, the amount of the rents payable by Tenant, or receivable by Landlord, under this lease, and the maximum rents so permitted to be paid by Tenant, or received by Landlord, hereunder shall be less than the rents herein reserved, then:

**(a)**  throughout the period of limitation, Tenant shall remain liable for the maximum amount of rents that is lawfully payable; and

**(b)**  if and when the period of limitation ends, the requirement of public authority imposing such limitation is repealed, or such limitation is restrained or rendered unenforceable by any order or ruling of a court of appropriate jurisdiction:

(i) to the extent that the same is not prohibited by any requirement of public authority, Tenant shall pay to Landlord, on demand, all amounts that would have been due from Tenant to Landlord during the period of limitation, but that were not paid because of the requirements of public authorities; and

(ii) thereafter, Tenant shall pay to Landlord all of the rents reserved under this lease, all of which shall be calculated as if there had been no intervening period of limitation.

## ARTICLE 29
### No Other Waivers Or Modifications

29.01  The failure of either party to insist in any one or more instances upon the strict performance of any one or more of the obligations of this lease, or to exercise any election herein contained, shall not be construed as a waiver or relinquishment for the future of the performance of such one or more obligations of this lease or of the right to exercise such election, but the same shall continue and remain in full force and effect with respect to any subsequent breach, act or omission. No executory agreement hereafter made between Landlord and Tenant shall be effective to change, modify, waive, release, discharge, terminate or effect an abandonment of this lease, in whole or in part, unless such executory agreement is in writing, refers expressly to this lease and is signed by the party against whom enforcement of the change, modification, waiver, release, discharge or termination or effectuation of the abandonment is sought.

29.02  The following specific provisions of this Section shall not be deemed to limit the generality of any of the foregoing provisions of this Article:

(a)   no agreement to accept a surrender of all or any part of the Demised Premises shall be valid unless in writing and signed by Landlord. The delivery of keys to an employee of Landlord or of its agent shall not operate as a termination of this lease or a surrender of the Demised Premises. If Tenant shall at any time request Landlord to sublet the Demised Premises for Tenant's account, Landlord or its agent is authorized to receive said keys for such purposes without releasing Tenant from any of its obligations under this lease, and Tenant hereby releases Landlord from any liability for loss or damage to any of Tenant's property in connection with such subletting.

(b)   the receipt by Landlord of rent with knowledge of breach of any obligation of this lease shall not be deemed a waiver of such breach;

(c)   no payment by Tenant or receipt by Landlord of a lesser amount than the correct fixed rent or additional rent due hereunder shall be deemed to be other than a payment on account, nor shall any endorsement or statement on any check or any letter accompanying any check or payment be deemed an accord and satisfaction, and Landlord may accept such check or payment without prejudice to Landlord's right to recover the balance or pursue any other remedy in this lease or at law provided.

F ASM TORKIAN Santo LSE 17 doc

57

### ARTICLE 30
### Curing Tenant's Defaults, Additional Rent

**30.01   (a)**      if Tenant shall default in the performance of any of Tenant's obligations under this lease, Landlord, without thereby waiving such default, may (but shall not be obligated to) perform the same for the account and at the expense of Tenant, without notice, in a case of emergency, and in any other case, only if such default continues after the expiration of (i) three (3) business days from the date Landlord gives Tenant notice of intention so to do, or (ii) the applicable grace period provided in Section 25.02 or elsewhere in this lease for cure of such default, whichever occurs later;

**(b)**      Any payment made after the due date thereof shall be subject to a late charge of two (2%) percent of the amount so overdue. Such late charge shall be due with any such late payment.

In addition, if Tenant is late in making any payment due to Landlord from Landlord under this lease for five (5) or more business days, then interest shall become due and owing to Landlord on such payment from the date when it was due computed at the greater of (A) one and 25/100 (1.25%) percent per month or (B) five (5%) percent per annum over the prime rate of JP Morgan Chase Manhattan Bank, N.A. (or if unavailable, an index and/or source of information designated by Landlord), but in no event in excess of the maximum legal rate of interest chargeable to corporations in the State of New York.

**30.02**   Bills for any expenses incurred by Landlord in connection with any such performance by it for the account of Tenant, and bills for all costs, expenses and disbursements of every kind and nature whatsoever, including reasonable counsel fees, involved in collecting or endeavoring to collect the fixed rent or additional rent or any part thereof or enforcing or endeavoring to enforce any rights against Tenant, under or in connection with this lease, or pursuant to law, including any such cost, expense and disbursement involved in instituting and prosecuting summary proceedings, as well as bills for any property, material, labor or services provided, furnished, or rendered, by Landlord or at its instance to Tenant, may be sent by Landlord to Tenant monthly, or immediately, at Landlord's option, and, shall be due and payable in accordance with the terms of such bills.

## ARTICLE 31
### Broker

31.01   Landlord and Tenant covenant, warrant and represent to the other that each dealt with no broker or finder in connection with this lease and that no conversations or negotiations were had by it with any broker or finder concerning the renting of the Demised Premises other than Newmark Grubb Knight & Frank and ABH Realty (collectively, the "**Broker**"), and Landlord will pay said Broker a commission pursuant to the terms of a separate agreement. Landlord and Tenant each agree to indemnify and hold each other harmless from and against any actions, suits or claims (including, without limitation, legal fees, costs and expenses) for a brokerage, finder or other commission or fee which either may incur in the event the respective representation is untrue.

## ARTICLE 32
### Notices

32.01   xcept for rent bills and emergency repair notices (which may be hand-delivered or sent via facsimile machine and shall be deemed given upon receipt) any notice, statement, demand or other communication required or permitted to be given, rendered or made by either party to the other, pursuant to this lease or pursuant to any applicable law or requirement of public authority, shall be in writing (whether or not so stated elsewhere in this lease) and shall be deemed to have been properly given, rendered or made, if sent by registered or certified mail, return receipt requested, addressed to the other party at the address hereinabove set forth (except that after the Commencement Date, Tenant's address, unless Tenant shall give notice to the contrary, shall be the Demised Premises), or sent via nationally recognized overnight courier providing for receipted delivery and shall be deemed to have been given, rendered or made (a) if so mailed, three (3) days after the day so mailed, unless mailed outside of the State of New York, in which case it shall be deemed to have been given, rendered or made on the expiration of the normal period of time for delivery of mail from the post-office of origin to the post-office of destination and (b) if sent via nationally recognized overnight courier, on the date of receipt.   Copies of any notice to Landlord shall be sent to its counsel, Alter Mantel, LLP, 90 Park Avenue, New York, New York 10016, Attention: Arthur S. Mantel, Esq. Either party may, by notice as aforesaid, designate a different address or addresses for notices, statements, demands or other communications intended for it.

## ARTICLE 33
### Estoppel Certificate, Memorandum

33.01   Tenant agrees, at any time and from time to time, as requested by Landlord, upon not less than ten (10) business days' prior notice, to execute and deliver to Landlord and any other person and entity designated by Landlord a statement certifying (a) that this lease is unmodified and in full force and effect (or if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and whether any options granted to Tenant pursuant to the provisions of this lease have been exercised, (b) the dates to which the fixed rent and additional rent have been paid and the amounts thereof, and stating whether or not, to the best knowledge of Tenant, Landlord is in default in performance of any of its obligations under this lease, and, if so, specifying each such default and (c) such other matters as may be reasonably requested by Landlord, it being intended that any such statement delivered pursuant hereto may be relied upon by others with whom Landlord may be dealing.   Additionally, Tenant's Statement shall contain such other information concerning this lease as shall be required by the holder or proposed holder of any superior mortgage or the lessor or proposed lessor under any superior lease.

33.02   At the request of Landlord, Landlord and Tenant shall promptly execute, acknowledge and deliver a memorandum with respect to this lease sufficient for recording.  Such memorandum shall not in any circumstances be deemed to change or otherwise affect any of the obligations or provisions of this lease.

## ARTICLE 34
### Arbitration

34.01   Either party may request arbitration of any matter in dispute wherein arbitration is expressly provided in Sections 11.06, 23.05 and 24.02(a) of this lease as the appropriate remedy. The party requesting arbitration shall do so by giving notice to that effect to the other party, and both parties shall promptly thereafter jointly apply to the American Arbitration Association (or any organization successor thereto) in the City and County of New York for the appointment of a single arbitrator.

34.02   The arbitration shall be conducted in accordance with the then prevailing rules of the American Arbitration Association (or any organization successor thereto) in the City and County of New York.  In rendering such decision and award, the arbitrator shall not add to, subtract from or otherwise modify the provisions of this lease.

*F:\ASM\TORKIAN\Scutto LSE  17.doc*

34.03   If for any reason whatsoever a written decision and award of the arbitrator shall not be rendered within ninety (90) days after the appointment of such arbitrator, then at any time thereafter before such decision and award shall have been rendered either party may apply to the Supreme Court of the State of New York or to any other court having jurisdiction and exercising the functions similar to those now exercised by such court, by action, proceeding or otherwise (but not by a new arbitration proceeding) as may be proper to determine the question in dispute consistently with the provisions of this lease.

34.04   All the expenses of the arbitration shall be borne by the parties equally.

## ARTICLE 35
### No Other Representations, Construction,
### Governing Law, Consents

35.01   Tenant expressly acknowledges and agrees that Landlord has not made and is not making, and Tenant, in executing and delivering this lease, is not relying upon, any warranties, representations, promises or statements, except to the extent that the same are expressly set forth in this lease or in any other written agreement which may be made between the parties concurrently with the execution and delivery of this lease an shall expressly refer to this lease. This lease and said other written agreements) made concurrently herewith are hereinafter referred to as the "lease documents It is understood and agreed that all understandings and agreements heretofore had between the parties are merged in the lease documents, which alone fully and completely express their agreements and that the same are entered into after full investigation, neither party relying upon any statement or representation not embodied in the lease documents, made by the other.

35.02   If any of the provisions of this lease, or the application thereof to any person or circumstances, shall, to any extent, be invalid or unenforceable, the remainder of this lease, or the application of such provision or provisions to persons or circumstances other than those as to whom or which it is held invalid or unenforceable, shall not be affected thereby, and every provision of this lease shall be valid and enforceable to the fullest extent permitted by law.

35.03   This lease shall be governed in all respects by the laws of the State of New York.

35.04   Wherever in this lease Landlord's consent or approval is required, if Landlord shall refuse such consent or approval, Tenant in no event shall be entitled to make, nor shall Tenant make, any claim, and Tenant hereby waives any claim, for money damages (nor shall Tenant claim any money damages by way of set-off, counterclaim or defense) based upon any claim or assertion by Tenant that Landlord unreasonably withheld or unreasonably delayed its consent or approval. Tenant's sole remedy shall be an action or proceeding to enforce any such provision, for specific performance, injunction or declaratory judgment.

*F: ASA TORKIAN Sonto LSE 17 doc*

35.05  It is acknowledged and agreed that in the preparation of this lease, indistinguishable contributions were made by representatives of both Landlord and Tenant and that Landlord and Tenant each waives any and all rights, either in law or in equity, to have this lease or any part thereof interpreted in favor of one party over the other.

35.06  Whenever any default, request, action or inaction by Tenant causes Landlord to incur attorneys' fees and/or any other costs or expenses, Tenant agrees that it shall pay and/or reimburse Landlord for such reasonable fees, costs or expenses within thirty (30) days after being billed therefor. Tenant's obligations under this Paragraph shall survive the expiration of the term hereof or any other termination of this lease. This provision is intended to supplement (and not to limit) other provisions of this lease pertaining to indemnities and/or attorneys' fees.

## ARTICLE 36
### Parties Bound

36.01  The obligations of this lease shall bind and benefit the successors and assigns of the parties with the same effect as if mentioned in each instance where a party is named or referred to, except that no violation of the provisions of Article 9 shall operate to vest any rights in any successor or assignee of Tenant and that the provisions of this Article shall not be construed as modifying the conditions of limitation contained in Article 25. However, the obligations of Landlord under this lease shall not be binding upon Landlord herein named with respect to any period subsequent to the transfer of its interest in the Retail Unit as owner or lessee thereof and in event of such transfer said obligations shall thereafter be binding upon each transferee of the interest of Landlord herein named as such owner or lessee of the Retail Unit, but only with respect to the period ending with a subsequent transfer within the meaning of this Article.

36.02  If Landlord shall be an individual, joint venture, tenancy in common, co-partnership, unincorporated association, limited liability company or other unincorporated aggregate of individuals and/or entities or a corporation, Tenant shall look only to such Landlord's estate and property in the Retail Unit (or the proceeds thereof) and, where expressly so provided in this lease, to offset against the rents payable under this lease, for the satisfaction of Tenant's remedies for the collection of a judgment (or other judicial process) requiring the payment of money by Landlord in the event of any default by Landlord hereunder, and no other property or assets of such Landlord or any partner, member, officer or director thereof, disclosed or undisclosed shall be subject to levy, execution or other enforcement procedure for the satisfaction of Tenant's remedies under or with respect to this lease, the relationship of Landlord and Tenant hereunder or Tenant's use or occupancy of the Demised Premises.

## ARTICLE 37
### Certain Definitions And Construction

37.01   For the purposes of this lease and all agreements supplemental to this lease, unless the context otherwise requires the definitions set forth in Exhibit "D" annexed hereto shall be utilized.

37.02   The various terms which are italicized and defined in other Articles of this lease or are defined in Exhibits annexed hereto, shall have the meanings specified in such other Articles and such Exhibits for all purposes of this lease and all agreements supplemental thereto, unless the context shall otherwise require.

## ARTICLE 38
### Adjacent Excavation And Construction; Shoring; Vaults

38.01   If an excavation or other substructure work shall be made upon land adjacent to the Demised Premises, or shall be authorized to be made, Tenant shall afford to the person causing or authorized to cause such excavation, license to enter upon the Demised Premises for the purpose of doing such work as shall be necessary to preserve the wall of or the Building from injury or damage and to support the same by proper foundations without any claim for damages or indemnity against Landlord, or diminution or abatement or rent.

38.02   No vaults, vault space or area, whether or not enclosed or covered, not within the property line of the Building is leased hereunder, anything contained in or indicated on any sketch, blue print or plan or anything contained elsewhere in this lease to the contrary notwithstanding. Landlord makes no representation as to the location of the property line of the Building.

## ARTICLE 39
### Sprinklers

**39.01** Except to the extent same is included in Landlord's Work, Tenant, at its sole cost and expense, shall, to the extent required by applicable law, the Board of Fire Underwriters, the New York Fire Insurance Exchange or similar body or Tenant's or Landlord's insurance company, install a sprinkler system in the Demised Premises and thereafter maintain, repair and replace same, all in compliance with all of the rules, regulations, laws, orders or statements of the New York Board of Fire Underwriters or the New York Fire Insurance Exchange or any bureau, department, agency or official of the federal, state or city government. Anything elsewhere in this lease to the contrary notwithstanding, if the New York Board of Fire Underwriters or the New York Fire Insurance Exchange or any bureau, department or official of the federal, state or city government require or recommend that any changes, modifications, alterations, or additional sprinkler heads or other equipment be made or supplied in an existing sprinkler system by reason of Tenant's business, or the location of partitions, trade fixtures, or other contents of the Demised Premises, or for any other reason, or if any such sprinkler system installations, changes, modifications, alterations, additional sprinkler heads or other such equipment, become necessary to prevent the imposition of a penalty or charge against the full allowance for a sprinkler system in the fire insurance rate set by any said Exchange or by any fire insurance company, Tenant shall, at Tenant's expense, promptly make such sprinkler system installations, changes, modifications, alterations, and supply additional sprinkler heads or other equipment as required whether the work involved shall be structural or non-structural in nature in accordance with the provisions of Article 13.

## ARTICLE 40
### Signs

**40.01**    Landlord shall provide a signage band on the exterior of the Demised Premises in accordance with the signage plan attached hereto as Exhibit "E". Tenant shall not, without Landlord's prior consent, place or install any sign on any exterior portion of the Demised Premises (including, without limitation, both the interior and exterior surfaces of windows and doors) or in front of or outside of the Demised Premises except that Tenant may install and maintain, at its own cost and expense, subject to the prior written approval of Landlord as to dimensions, content, material, location and design, signage on the signage band. Tenant agrees that no sign shall be installed on the signage band until all approvals and permits are first obtained and copies thereof delivered to Landlord together with evidence of payment for any fees pertaining to Tenant's sign. Tenant acknowledges that up-lighting of any signage is prohibited.

**40.02**    Tenant shall not, after obtaining any such approval, change any sign in any respect whatsoever without first obtaining from Landlord a further such approval.

40.03      In the event that Tenant does not comply with the provisions of Sections 40.01 and 40.02 in connection with signs or their installation, Landlord reserves the right, upon one (1) day's prior written notice to Tenant and at Tenant's sole cost and expense, to remove any such sign. The rights of Landlord as set forth in this Section 40.03 shall not be deemed Landlord's exclusive remedy for Tenant's default or failure to comply with the provision of Sections 40.01 and 40.02 hereof.

40.04      As used in this Article 40, the word "sign" shall be construed to include any placard, light or other advertising symbol or object irrespective of whether same be temporary or permanent.

## ARTICLE 41
### Covenant Against Liens

41.01   Tenant shall not do any act which may create any lien or other encumbrance upon any interest of Landlord or any lessor under any superior lease in any portion of the Building. If, because of any act or omission (or alleged act or omission) of Tenant, any mechanic's or other lien, charge or order for the payment of money or other encumbrance shall be filed against Landlord and/or any lessor under any superior lease and/or any portion of the Building (whether or not such lien, charge order or encumbrance is valid or enforceable as such), Tenant shall, at its own cost and expense, cause same to be discharged of record or bonded within thirty (30) days after notice to Tenant of the filing thereof; Tenant shall indemnify and save harmless Landlord and all lessor(s) under any superior lease against and from all costs, liabilities, suits, penalties, claims and demands, including reasonable counsel fees resulting therefrom.  If Tenant fails to comply with the foregoing provisions, Landlord shall have the option of discharging or bonding any such lien, charge, order or encumbrance, and Tenant agrees to reimburse Landlord for all costs, expenses and other sums of money in connection therewith (as additional rental) within ten (10) days after demand.  All materialmen, contractors, artisans, mechanics, laborers and any other persons now or hereafter contracted with Tenant for the furnishing of any labor, services, materials, supplies, or equipment with respect to any portion of the Building, at any time from the date hereof until the end of the term, are hereby charged with notice that they must look exclusively to Tenant to obtain payment for same. Nothing in this lease contained shall be deemed or construed in any way as constituting the consent or request of Landlord, express or implied by inference or otherwise, to any contractor, subcontractor, laborer or materialman for the performance of any labor or the furnishing of any materials for any specific improvement, alteration to or repair of the Demised Premises, Building or any part thereof, nor as giving Tenant a right, power or authority to contract for or permit the rendering of any services or the furnishing of any materials that would give rise to the filing of any mechanic's liens against the Landlord's interest in the Demised Premises or Building.

F  ASM TORKIAN Scotto LSE  17 doc.

65

## ARTICLE 42
### Condominium

**42.01**  The Building in which the Demised Premises are located is subject to that certain (i) Declaration ("**Declaration**") establishing condominium ownership of the Land and the Building erected thereon, comprising the Platinum Condominium, made pursuant to Article 9B of the Real Property Law of the State of New York, and (ii) the By-Laws ("**By-Laws**") of such Condominium appended to said Declaration. The Demised Premises constitute a portion of the Retail Unit which is part of the Condominium. All terms and provisions of this lease shall be subject and subordinate to the Declaration and By-Laws and all amendments thereto made in accordance with the Declaration and By-Laws. The Declaration and By-Laws and all amendments thereto, including agreements between the Condominium and the Landlord with respect to the Retail Unit are hereafter collectively called the "Condominium Documents." Tenant agrees to faithfully observe and comply with the Condominium Documents, other than those provisions pertaining to the payment of Common Charges. Tenant shall not perform or suffer any action or other matter which if performed or suffered by Landlord would constitute a violation, breach or default under the Condominium Documents.

**42.02**  (A) Tenant acknowledges that certain matters may require the consent of the board of managers and/or mortgagee(s) pursuant to the Condominium Documents, and Tenant agrees that if any such party whose request is so required shall deny (or be deemed to have denied) its consent, then such denial (or deemed denial) of consent shall conclusively be deemed a reasonable basis for Landlord to deny its consent, without the necessity of Landlord bringing legal action against the party that has denied and/or whether such party was acting reasonably with respect to such denial. If any fee or other charge is required by the board of managers or any other party pursuant to the Condominium Documents in connection with any request for consent made by Landlord in connection with a request of Tenant, then Tenant shall pay all such amounts to Landlord upon demand therefore as a condition to Landlord's obligations to seek such consent.

(B) With regard to any items of repair, maintenance, restoration, services or other obligations of Landlord under this Lease that, under the Condominium Documents or by law, are the duty or responsibility of the Condominium, the board of managers, or the owner of any other unit in the Condominium (each of the foregoing being a "Responsible Party"), Landlord shall have no liability to Tenant for the performance (or the failure to perform) such work or obligations and Tenant shall look directly to the Responsible Party whose obligation is involved for such work or obligations therefore and for any damages therefrom. Without limiting the foregoing, the failure of any Responsible Party to perform any of its obligations shall not be the grounds for any termination of this lease by Tenant on the basis of a claim for constructive eviction against Landlord.

(C) Tenant acknowledges that Landlord retains the right, at any time during the term, and from time to time, to split the Retail Unit into two (2) or more separate condominium units. In any such event, Tenant agrees as follows: (i) Tenant will give such consents if any, as may be required

F: ASM TORKIAN Scotto LSE V7 doc

66

to effectuate any such further condominiumization within the Retain Unit; (ii) Tenant agrees that it will promptly cooperate and comply with all requests made by Landlord in furtherance of any such further condominiumization, which may include, without limitation, executing such documents as may necessary in connection with the further condominiumization and consenting to any modifications of this lease as may be requested by Landlord in connection therewith, provided the same do not materially increase the obligations of Tenant hereunder or have a material adverse impact upon the rights of Tenant hereunder and Tenant agrees that its failure to so cooperate on a timely basis shall, at Landlord's option, constitute a default by Tenant under this lease entitling Landlord to exercise all remedies hereunder; and (iii) Tenant agrees that from after any such conversion of the Retail Unit to two (2) or more condominium units, the word "Landlord" as used herein shall refer to the owner of the unit or units of the Condominium that comprise the Demised Premises and such other definitional charges as may be appropriate shall be made.

42.03    (A)  Commencing as of the Commencement Date, Tenant shall pay, in addition to fixed rent and as additional rent an amount ("Tenant's Maintenance Payment") equal to fifty (50%) percent of any and all maintenance fees, assessments and other charges (collectively, "Maintenance Fees") as may be payable by the Landlord to the Condominium and imposed upon the Retail Unit, as said Maintenance Fees shall be determined pursuant to the Condominium Documents.

(B)  The Tenant's Maintenance Payment shall be due and payable on a monthly basis as Additional rent, together with the monthly installment of fixed rent, in an amount equal to the aggregate of all Maintenance Fees payable by the Landlord to the Condominium for such month. If Maintenance Fees are not payable to the Condominium on a monthly basis, then Tenant's Maintenance Payment shall be due and payable to Landlord within twenty (20) days after demand therefore.

(C)  In the event this lease shall expire or terminate on a day other than the last day of a month, Tenant's Maintenance Payment shall be equitably prorated as of the date of such expiration or termination.

# ARTICLE 43
## Restaurant Transaction

43.01   Tenant acknowledges that an affiliate of Landlord is a member of the Tenant. Tenant expressly acknowledges and agrees that under no circumstances may Tenant assert as a defense to its obligations under this Lease any matter relating to the Landlord's affiliate being a member of Tenant.

**IN WITNESS WHEREOF,** Landlord and Tenant have duly executed this lease as of the day and year first above written.

LANDLORD:

750 8TH AVENUE LLC

By: _____

Name:    **Hersel Torkian**

Title:    **Manager**

TENANT:

PASTA BAR BY SCOTTO II, LLC

By: _____

Name:    **John Scotto**

Title:    **Manager**

GUARANTOR:
As to Sections 13.06
and 13.07 hereof:

_____

John Scotto

## EXHIBIT C
### Rules and Regulations

1.    The rights of tenants in the entrances, corridors and elevators of the Building are limited to ingress to and egress from the tenant's premises for the tenants and their employees, licensees and invitees, and no tenant shall use, or permit the use of, the entrances, corridors, or elevators for any other purpose. No tenant shall invite to the tenants premises, or permit the visit of, persons in such numbers or under such conditions as to interfere with the use and enjoyment of any of the entrances, corridors, elevators and other facilities of the Building by other tenants. Fire exits and stairways are for emergency use only, and they shall not be used for any other purpose by the tenants, their employees, licensees or invitees. No tenant shall encumber or obstruct, or permit the encumbrance or obstruction of any of the sidewalks, entrances, corridors, elevators, fire exits or stairways of the Building. The Landlord reserves the right to control and operate the public portions of the Building and the public facilities, as well as facilities furnished for the common use of the tenants, in such manner as it deems best for the benefit of the tenants generally.

2.    The Landlord may refuse admission to the Building outside of ordinary business hours to any person not known to the watchman in charge or not having a pass issued by the Landlord or the tenant whose premises are to be entered or not otherwise properly identified, and may require all persons admitted to or leaving the Building outside of ordinary business hours to register. Any person whose presence in the Building at any time shall, in the judgment of the Landlord, be prejudicial to the safety, character, reputation and interests of the Building or of its tenants may be denied access to the Building or may be ejected therefrom. In case of invasion, riot, public excitement or other commotion, the Landlord may prevent all access to the Building during the continuance of the same, by closing the doors or otherwise, for the safety of the tenants and protection of property in the Building. The Landlord may require any person leaving the Building with any package or other object to exhibit a pass from the tenant from whose premises the package or object is being removed, but the establishment and enforcement of such requirement shall not impose any responsibility on the Landlord for the protection of any tenant against the removal of property from the premises of the tenant. The Landlord shall, in no way, be liable to any tenant for damages or loss arising from the admission, exclusion or ejection of any person to or from the Tenant's premises or the Building under the provisions of this rule. Canvassing, soliciting or peddling in the Building is prohibited and every tenant shall cooperate to prevent the same.

3.    Deleted Prior to Execution

4.    Deleted Prior To Execution.

5.    No awnings or other projections over or around the windows shall be installed by any tenant, and only such window blinds as are supplied or permitted by the Landlord shall be used in a

F:\ASM\TORKIAN\Scotto LSE_V6.doc

72

tenant's premises without Landlord's prior written consent. Linoleum, tile or other floor covering shall be laid in a tenant's premises only in a manner approved by the Landlord.

6.  The Landlord shall have the right to prescribe the weight and position of safes and other objects of excessive weight, and no safe or other object whose weight exceeds the lawful load for the area upon which it would stand shall be brought into or kept upon a tenant's premises. If, in the judgment of the Landlord, it is necessary to distribute the concentrated weight of any heavy object, the work involved in such distribution shall be done at the expense of Tenant and in such manner as the Landlord shall determine. The moving of safes and other heavy objects shall take place only outside of ordinary business hours upon previous notice to the Landlord, and the persons employed to move the same in and out of the Building shall be reasonably acceptable to the Landlord and, if so required by law, shall hold a Master Rigger's license. Freight, furniture, business equipment, merchandise and bulky matter of any description shall be delivered to and removed from the premises only in the freight elevators and through the service entrances and corridors, and only during hours and in a manner approved by the Landlord. Arrangements will be made by the Landlord with any tenant for moving large quantities of furniture and equipment into or out of the building.

7.  No machines or mechanical equipment of any kind, may be installed or operated in any tenant's premises without Landlord's prior written consent, which consent shall not be unreasonably withheld or delayed, and in no case (even where the same are of a type so excepted or as so consented to by the Landlord) shall any machines or mechanical equipment be so placed or operated as to disturb other tenants but machines and mechanical equipment which may be permitted to be installed and used in a tenant's premises shall be so equipped, installed and maintained by such tenant as to prevent any disturbing noise, vibration or electrical or other interference from being transmitted from such premises to any other area of the Building.

8.  No noise, including the playing of any musical instruments, radio or television, which, in the judgment of the Landlord, disturbs other tenants in the Building, shall be made or permitted by any tenant, and no cooking shall be done in the tenant's premises, except as contemplated by this lease or as otherwise expressly approved by the Landlord. Nothing shall be done or permitted in any tenant's premises, and nothing shall be brought into or kept in any tenant's premises, which would impair or interfere with any of the Building services or the proper and economic heating, cleaning or other servicing of the Building or the premises, or the use or enjoyment by any other tenant of any other premises, nor shall there be installed by any tenant any ventilating, air conditioning, electrical or other equipment of any kind which, in the judgment of the Landlord, might cause any such impairment or interference. No dangerous, inflammable, combustible or explosive object or material shall be brought into the Building by any tenant or with the permission of any tenant. Any cuspidors or similar containers or receptacles used in any tenant's premises shall be cared for and cleaned by and at the expense of the tenant.

F:\S\NTORKIAN\Scotto LSE_V6.doc

73

9.    No acids, vapors or other materials shall be discharged or permitted to be discharged into the waste lines, vents or flues of the Building which may damage them. The water and wash closets and other plumbing fixtures in or serving any tenant's premises shall not be used for any purpose other than the purposes for which they were designed or constructed, and no sweepings, rubbish, rags, acids or other foreign substances shall be deposited therein.

10.    **Intentionally Deleted.**

11.    All entrance doors in each tenant's premises shall be left locked and all windows shall be left closed by the tenant when the tenant's premises are not in use. Entrance doors shall not be left open at any time.

12.    Hand trucks not equipped with rubber tires and side guards shall not be used within the Building.

13.    All windows in each tenant's premises shall be kept closed and all blinds therein, if any, above the ground floor shall be lowered when and as reasonably required because of the position of the sun, during the operation of the Building air-conditioning system to cool or ventilate the tenant's premises.

14.    The Landlord reserves the right to rescind, alter or waive any rule or regulation at any time prescribed for the Building when, in its judgment, it deems it necessary, desirable or proper for its best interest and for the best interests of the tenants, and no alteration or waiver of any rule or regulation in favor of one tenant shall operate as an alteration or waiver in favor of any other tenant. The Landlord shall not be responsible to any tenant for the non-observance or violation by any other tenant of any of the rules and regulations at any time prescribed for the Building.

15.    No sign, advertisement, notice or other lettering shall be exhibited, inscribed, painted or affixed by any tenant on any part of the outside of the Demised Premises or Building without the prior written consent of Landlord. With respect to signs, advertisements or notices, within the Demised Premises, Landlord's consent shall not be required, if they are done in professional manner and are in good taste.

16.    No showcases or other articles shall be put in front of or affixed to any part of the exterior of the Building, nor placed in the halls, corridors or vestibules, nor shall any article obstruct any air-conditioning supply or exhaust without the prior written consent of Landlord.

17.    No Tenant shall mark, paint, drill into, or in any way deface any part of the part of the Demised Premises or the Building, except with the prior written consent of Landlord. No

boring, cutting or stringing of wires shall be permitted, except with the prior written consent of Landlord, and as Landlord may direct.

18.    No bicycles, vehicles or animals of any kind shall be brought into or kept by Tenant in or about the Demised Premises or the Building.

19.    Tenant shall:

    (a)    At Tenant's sole cost and expense, make all replacements, as and when deemed necessary by Landlord, to all windows and plate and other glass in, on or about the Demised Premises, and obtain and maintain, throughout the term, plate glass insurance policies in such form, with such companies, for such periods and in such amounts as Landlord may require, naming Landlord and its agents as additional insureds (which policies shall be non-cancelable with respect to Landlord and such lessors without thirty (30) days written notice to Landlord by certified mail, return receipt requested), and not later than the Commencement Date, deliver the originals of such insurance policies to Landlord and, thereafter, deliver the originals of new or renewal policies, replacing any policies expiring during the Term, at least thirty (30) days before such date of expiration, together with proof satisfactory to Landlord that the full premiums have been paid;

    (b)    Provide and keep in force such other insurance in such amounts as may from time to time be required by Landlord against such other insurable hazards as at the time are commonly insured against in the case of premises similar to the Demised Premises;

    (c)    Not use or occupy, nor permit or suffer the Demised Premises or any part thereof to be used or occupied for any unlawful or illegal business, use or purpose, or for any business, use or purpose deemed by Landlord to be disreputable or extra hazardous, or in such manner as to constitute a nuisance of any kind (public or private) or that Landlord deems offensive by reason of odors, fumes, dust, smoke, noise or other pollution, or for any purpose or in any way in violation of the certificate of occupancy or of any present or future governmental laws, ordinances, requirements, orders, directions, rules or regulations;

    (d)    At Tenant's sole cost and expense (i) procure and thereafter maintain all governmental permits and license required for the proper and lawful conduct of Tenant's business in the Demised Premises and the use thereof, (ii) submit copies of all such permits and licenses to Landlord, for its inspection, not later than the Commencement Date, and (iii) submit copies of new or renewal permits and licenses, expiring during the term, at least thirty (30) days before such date of expiration; and

(e)     Give prompt notice to Landlord of any notice Tenant receives of the violation of any applicable permits and authorizations and building and zoning laws and of any other laws, ordinances, orders, rules, regulations and requirements of public authorities which shall, with respect to the Demised Premises or the use or occupancy thereof, or the abatement of any nuisance, impose any violation, order or duty on Landlord or Tenant, arising from Tenant's use of the Demised Premises.

# EXHIBIT D
## Definitions

1.  The term <u>mortgage</u> shall include an indenture of mortgage and deed of trust to a trustee to secure an issue of bonds, and the term <u>mortgagee</u> shall include such a trustee.

2.  The terms <u>include, including</u> and <u>such</u> as shall each be construed as if followed by the phrase "without being limited to.

3.  The term <u>obligations of this lease</u>, and words of like import, shall mean the covenants to pay rent and additional rent under this lease and all of the other covenants and conditions contained in this lease. Any provision in this lease that one party or the other or both shall do or not do or shall cause or permit or not cause or permit a particular act, condition, or circumstance shall be deemed to mean that such party so covenants or both parties so covenant, as the case may be.

4.  The term <u>Tenant's obligations hereunder</u>, and words of like import, and the term <u>Landlord's obligations hereunder</u>, and words of like import, shall mean the obligations of this lease which are to be performed or observed by Tenant, or by Landlord, as the case may be. Reference to <u>performance</u> of either party's obligations under this lease shall be construed as "performance and observance".

5.  Reference to Tenant being or not being <u>in default hereunder</u>, or words of like import, shall mean that Tenant is in default in the performance of one or more of Tenant's obligations hereunder, or that Tenant is not in default in the performance of any of Tenant's obligations hereunder, or that a condition of the character described in Section 25.01 has occurred and continues or has not occurred or does not continue, as the case may be.

6.  References to Landlord as having <u>no liability to Tenant</u> or being <u>without liability to Tenant</u>, shall mean that Tenant is not entitled to terminate this lease, or to claim actual or constructive eviction, partial or total, or to receive any abatement or diminution of rent, or to be relieved in any manner of any of its other obligations hereunder, or to be compensated for loss or injury suffered or to enforce any other kind of liability whatsoever against Landlord under or with respect to This lease or with respect to Tenant's use or occupancy of the Demised Premises.

7.  The term <u>laws and/or requirements of public authorities</u> and words of like import shall mean laws and ordinances of any or all of the Federal, state, city, county and borough governments and rules, regulations, orders and/or directives of any or all departments, subdivisions, bureaus, agencies or offices thereof, or of any other governmental, public or quasi-public authorities, having jurisdiction in the premises, and/or the direction of any public officer pursuant to law.

F:\ASM\TORK\AM\Scotto LSE_V6.doc

77

8.  The term <u>requirements of insurance bodies</u> and words of like import shall mean rules, regulations, orders and other requirements of the New York Board of Fire Underwriters and/or the New York Fire Insurance Rating Organization and/or any other similar body performing the same or similar functions and having jurisdiction or cognizance of the Building and/or the Demised Premises.

9.  The term <u>repair</u> shall be deemed to include restoration and replacement as may be necessary to achieve and/or maintain good working order and condition.

10. Reference to <u>termination of this lease</u> includes expiration or earlier termination of the term of this lease or cancellation of this lease pursuant to any of the provisions of this lease or to law. Upon a termination of this lease, the term and estate granted by this lease shall end at midnight of the date of termination as if such date were the date of expiration of the term of this lease and neither party shall have any further obligation or liability to the other after such termination (i) except as shall be expressly provided for in this lease, or (ii) except for such obligation as by its nature or under the circumstances can only be, or by the provisions of this lease, may be, performed after such termination, and, in any event, unless expressly otherwise provided in this lease, any liability for a payment which shall have accrued to or with respect to any period ending at the time of termination shall survive the termination of this lease.

11. The term <u>in full force and effect</u> when herein used in reference to this lease as a condition to the existence or exercise of a right on the part of Tenant shall be construed in each instance as including the further condition that at the time in Question no default on the part of Tenant exists, and no event has occurred which has continued to exist for such period of time (after the notice, if any, required by this lease), as would entitle Landlord to terminate this lease or to dispossess Tenant.

12. The term <u>Tenant</u> shall mean Tenant herein named or any assignee or other successor in interest (immediate or remote) of Tenant herein named, while such Tenant or such assignee or other successor in interest, as the case may be, is in possession of the Demised Premises as owner of the Tenant's estate and interest granted by this lease and also, if Tenant is not an individual or a corporation, all of the persons, firms and corporations then comprising Tenant.

13. Words and phrases used in the singular shall be deemed to include the plural and vice versa, and nouns and pronouns used in any particular gender shall be deemed to include any other gender.

14.    The rule of ejusdem generis shall not be applicable to limit a general statement following or referable to an enumeration of specific matters to matters similar to the matters specifically mentioned.

15.    All references in this lease to numbered Articles, numbered Sections and lettered Exhibits are references to Articles and Sections of this lease, and Exhibits annexed to (and thereby made part of) this lease, as the case may be, unless expressly otherwise designated in the context.

16.    The term <u>regular hours</u> shall mean the hours (between 8:00 a.m. and 6:00 p.m.) of business days (which term is used herein to mean all days except Saturdays, Sundays and days observed by the Federal or New York State government as legal holidays or the building service employees, union holidays) throughout the year.

17.    The term <u>control</u> shall mean ownership of more than fifty (50%) percent of all the voting stock of a corporation or more than fifty (50%) percent of all the legal and equitable interest in any other entity.

**EXHIBIT E**
**Signage Band**



**EXHIBIT F**
Menu

**Fresco On the Go**
40 E 52nd St
New York, NY 10022
Btwn Madison & Park Ave

**212 754-2700**
Fax: 212 754-1661

YOUR AD HERE
MenuPages *PRIME* Advertising
for more info: www.menupages.com

Page 1 of 3

## Lunch

### For The Table

*For 2 Or More*

Meat & Cheese Antipasto prosciutto di parma, parmigiano reggiano, mortadella, fresh mozzarella, sweet and spicy sausage, provolone and capicola........ 37.00

Vegetable Antipasto assortment of marinated and grilled vegetables................. 18.00

Fried Calamari Relish Remoulade........................ 17.00

Eggplant & Zucchini Pie eggplant and zucchini baked with ricotta, homemade mozzarella and tomato sauce........ 26.00

Grilled Pizza Margherita tomato sauce, basil, bell pesto and pecorino romano cheese....................... 20.00

Grilled Pizza Special today's selection..................... 22.00

Fresco Bread thin crusted grilled bread brushed with olive oil, garlic and herbs with bread sticks..................... 8.00

### Appetizers & Salads

Creamy Polenta With Sweet Water Prawns "Scampi Style" olive oil, garlic, shallots, roasted heirloom tomatoes, toasted brioche bread crumbs................... 16.00

Fresco Crab Cake "gnudi" served cold with preserved meyer lemon infused jumbo lump crab meat, wild arugula, flageolet bean and bell pepper salsa, crispy bacon "bread-crumb free".................. 16.00

Yellowfin Tuna & Avocado Tartare shaved raw seasonal vegetable salad, avocado, spicy wasabi aioli.............. 15.00

Whole Milk Burrata & Buffalo Milk Mozzarella apricots, fig marmallata, toasted hazelnuts, marinated oven roasted plum and cherry tomatoes, fresh basil, extra virgin olive oil and vin cotto.................. 18.00

Winter Salad baby greens, frisee and haricot verts, navel oranges, black mission figs, roasted red walnuts, crumbled gorgonzola cheese, citrus vinaigrette.................. 15.00

Shaved Raw Artichoke, Celery Heart & Crimini Mushroom Salad baby arugula, grana padano, cracked pepper, lemon and extra virgin olive oil.................. 16.00

Caesar Salad hearts or romaine with shaved parmigiano reggiano and garlic croutons.......... 13.00

*In The Main Dining Room, Appetizers and Salads Orders As A Main Course Will Be Priced And Served As An Entree.*

### Homemade Pastas

Spaghetti Alla Chitarra With Tomato Filets & Fresh Basil thin spaghetti with fresh tomato sauce, garlic and extra virgin olive oil............ 21.00

Pappardelle With Duck & Wild Mushroom Ragu long flat ribbons' duck and wild mushrooms braised in borolo wine, tomato, rosemary and thyme....................... 25.00

Cavatelli With Crumbled Fennel Sausage & Broccoli Rabe 'tiny boats' extra virgin olive oil, garlic, fennel, basil and parmesan.................... 24.00

Ravioli Fresco today's selection of homemade ravioli..........

### Fresco Originals

Vegetarian Penne (Gluten Free) 'tubular corn pasta' roasted butternut squash zucchini, heirloom cherry tomatoes, escarole, butternut squash puree, shaved aged goat cheese..................... 24.00

Penne Gratin prosciutto di parma julienned, peas, fontina provolone, parmigiano reggiano, heavy cream and cracked black pepper.............. 24.00

Ricotta Fresco today's selection of simmered arborio rice........

Penne With Chicken & Veal Bolognese slow cooked, hearty veal and chicken ragu with white wine, tomato and parmigiano reggiano cheese................... 25.00

Tagliolini With Shrimp "Fra Diavolo" 'thin linguine' slowly braised ragu of shrimp, tomato, white wine, fresh hot chili, basil, parsley, extra virgin olive oil 'lightly spiced'........ 27.00

Spaghetti Alla Vongole manila clams, olive oil, garlic, hot pepper flakes, basil and imported sun dried tomatoes........ 27.00

### Side Dishes $9

Scottish Salmon maine lobster and roasted baby artichoke hash, heirloom cherry tomatoes, and escarole, lemon caper reduction........... 38.00

Poached Branzino shaved asparagus, baby carrots and sweet peppers, sauteed bibb lettuce, carrot parsnip puree..................... 36.00

Spiced, Seared & Sliced Yellow Fin Tuna pancetta bean salad with heirloom tomatoes, cucumber, radish, string beans, baby greens, tahini bean puree, tomato soy citrus chili vinaigrette..................... 39.00

Black Angus Burger choice ground sirloin gorgonzola cheese, crispy pancetta, seasonal salad, tuscan fries. 20.00

Fresco Grilled Sausage sweet italian sausage filled with cheese and parsley, roasted peppers, onions and potatoes with sauteed with sauteed broccoli rabe............ 32.00

Sauteed Broccoli.............
Sauteed String Beans..........
Spicy Vinegar Peppers..........
Sauteed Broccoli Rabe..........
Sauteed Escarole.............
Pan Roasted Vegetable Medley
Creamy Polenta.............
Roasted Fingerling Potatoes......
Pancetta Braised Baby Brussel Sprouts...................
Gratin Of Gnocchi with gorgonzola...................
Rosemary Polenta Fries.........

### Dinner

### For The Table

*For 2 Or More.*

Meat & Cheese Antipasto prosciutto di parma, parmigiano reggiano, mortadella, fresh mozzarella, sweet and spicy sausage, provolone and capicola....................... 37.00

Vegetable Antipasto assortment of marinated and grilled vegetables................. 28.00

Baked Ricotta olive oil, garlic, shallots, red peppers flakes, capers, parmesan crostini..................... 17.00

Grilled Pizza Margherita tomato sauce, basil, bell pesto, pecorino romano cheese. 20.00

Grilled Pizza Special today's selection..................... 22.00

Fried Calamari relish remoulade................. 17.00

Potato & Zucchini Chips baked with crumbled gorgonzola cheese................... 16.00

Fresco Bread thin crusted grilled bread brushed with olive oil, garlic and herbs with bread sticks..................... 8.00

Eggplant & Zucchini Pie baked with ricotta, mozzarella and tomato sauce........ 26.00

### Entrees

Marinated Seafood Salad jumbo lump crabmeat with heirloom tomato and lemon herb dressing, baby calamari, clams and shrimp, saffron sicilian couscous............ 32.00

Herb Roasted Tuscan Chicken Salad 'fresco cobb salad', avocado, beef steak red & yellow tomatoes, haricot verts, roasted corn, crumbled gorgonzola, crispy bacon, red wine vinaigrette................... 29.00

'Open Face' Sliced Sirloin Steak Sandwich beef steak heirloom tomatoes, feta cheese, sliced hard boiled egg, crispy pancetta, baby mixed greens, red wine vinaigrette.................. 36.00

Fresco Chicken Caesar grilled breast of chicken, hearts of romaine, parmesan crostino..................... 26.00

Yellowfin Tuna & Avocado Tartare shaved raw seasonal vegetable salad, avocado, spicy horseradish and herb oil..................... 18.00

Whole Milk Burrata & Buffalo Milk Mozzarella apricots, fig marmallata, toasted hazelnuts, marinated oven roasted plum and cherry tomatoes, fresh basil, extra virgin olive oil and vin cotto.................. 18.00

Winter Salad baby greens, frisee and haricot verts, navel oranges, black mission figs, roasted red walnuts, crumbled gorgonzola cheese, citrus vinaigrette.................. 15.00

Shaved Raw Artichoke Celery, Heart & Crimini Mushroom Salad baby arugula, grana padano, cracked pepper, lemon and extra virgin olive oil......................

Caesar Salad hearts of romaine with shaved parmigiano reggiano and garlic croutons..... 13.00

*In The Main Dining Room, Appetizers And Salads Ordered As A Main Course Will Be Priced And Served As An Entree*

### Fresco Homemade Pastas

Spaghetti Alla Chitarra With Tomato Filets & Fresh Basil thin spaghetti with fresh tomato sauce, garlic and extra virgin olive oil............ 21.00

Pappardelle With Duck & Wild Mushroom Ragu long flat ribbons' duck and wild mushrooms braised in barolo wine, tomato, rosemary and thyme....................... 25.00

Cavatelli With Crumbled Fennel Sausage & Broccoli Rabe 'tiny boats' extra virgin olive oil, garlic, fennel, basil and parmesan.................... 24.00

Ravioli Fresco today's selection of homemade ravioli..........

### Fresco Originals

Vegetarian Penne (Gluten Free) 'tubular corn pasta' roasted butternut squash, zucchini, heirloom cherry tomatoes, escarole, butternut squash puree, shaved aged goat cheese..................... 24.00

### Appetizers & Salads

Duck Meatballs Alla Toscana duck meatballs filled with fontina, parmesan and provolone, porcini mushrooms, whipped ricotta and mascarpone, sun dried cherry port wine and veal reduction.. 17.00

Mini Calzones Di Emilia Romagna filled with ricotta, mozzarella, provolone and spinach with prosciutto di parma. 18.00

Fresco Crab Cake "Gnudi" served cold with preserved meyer lemon infused jumbo lump crab meat, wild arugula, flageolet bean and bell pepper salsa, crispy bacon "breadcrumb free"................. 16.00

Yellowfin Tuna & Avocado Tartare shaved raw seasonal vegetable salad, avocado, spicy horseradish and herb oil..................... 18.00

Whole Milk Burrata & Buffalo Milk Mozzarella apricots, fig marmallata, toasted hazelnuts, marinated oven roasted plum and cherry tomatoes, fresh basil, extra virgin olive oil and vin cotto.................. 18.00

Winter Salad baby greens, frisee and haricot verts, navel oranges, black mission figs, roasted red walnuts, crumbled gorgonzola cheese, citrus vinaigrette.................. 15.00

Shaved Raw Artichoke Celery, Heart & Crimini Mushroom Salad baby arugula, grana padano, cracked pepper, lemon and extra virgin olive oil......................

Caesar Salad heart of romaine with shaved parmigiano reggiano and garlic croutons..... 13.00

*In The Main Dining Room, Appetizers And Salads Ordered As A Main Course Will Be Priced And Served As An Entree*

### Fresco Homemade Pastas

Spaghetti Alla Chitarra With Tomato Filets & Fresh Basil thin spaghetti with fresh tomato sauce, garlic and extra virgin olive oil............ 21.00

Pappardelle With Duck & Wild Mushroom Ragu long flat ribbons' duck and wild mushrooms braised in barolo wine, tomato, rosemary and thyme....................... 25.00

Cavatelli With Crumbled Fennel Sausage & Broccoli Rabe 'tiny boats' extra virgin olive oil, garlic, fennel, basil and parmesan.................... 24.00

Ravioli Fresco today's selection of homemade ravioli..........

### Fresco Originals

Vegetarian Penne (Gluten Free) 'tubular corn pasta' roasted butternut squash, zucchini, heirloom cherry tomatoes, escarole, butternut squash puree, shaved aged goat cheese..................... 24.00

Penne Gratin prosciutto di parma julienned, peas, fontina, provolone, parmigiano reggiano, heavy cream and cracked black pepper.............. 24.00

Risotto Fresco today's selection of simmered arborio rice........

Rigatoni With Chicken & Veal Bolognese slow cooked, hearty veal and chicken ragu with white wine, tomato and parmigiano reggiano cheese..................... 25.00

Tagliolini With Shrimp "Fra Diavolo" 'thin linguine' slowly braised ragu of shrimp, tomato, white wine, fresh hot chili, basil, parsley, extra virgin olive oil 'lightly spiced'........ 27.00

Spaghetti Alla Vongole manila clams, olive oil, garlic, hot pepper flakes, basil and imported sun dried tomatoes... 27.00

### Entrees

Scottish Salmon maine lobster and roasted baby artichoke hash, heirloom cherry tomatoes, and escarole lemon caper reduction................. 38.00

Poached Branzino shaved asparagus, baby carrots and sweet peppers, sauteed bibb lettuce, carrot parsnip puree..................... 36.00

Sauteed Jumbo Prawns pancetta braised baby brussel sprouts, pomegranate jus and seeds..................... 36.00

Spiced, Seared & Sliced Yellow Fin Tuna pan roasted porcini mushrooms, sugar snap peas, baby turnips, crisp gnocchi, porcini mushroom broth..................... 39.00

Pan Roasted Breast Of Chicken 'Agra Dolce' sauteed broccolini, roasted peppers, cipollini onions, and golden potatoes, pulled dark meat, sweet and sour reductions........... 32.00

Fresco Grilled Sausage sweet italian sausage filled with cheese and parsley, ragu of sweet roasted peppers, cipollini onions, shell beans, broccoli rabe, garlic and rosemary, extra virgin olive oil and aged balsamic........... 32.00

Grilled Marinated Lamb Chops roasted eggplant caponata, grilled zucchini, polenta fries, rosemary, extra virgin olive oil. 41.00

Grilled Veal Chop pan roasted seasonal vegetables and mashed potatoes with garlic and basil..................... 45.00

Grilled Dry Aged Prime Rib Steak Florentina choice of aged, grilled rosemary, sea salt and extra virgin olive oil. 60.00

### Side Dishes $9

Sauteed Broccoli.............
Sauteed String Beans..........
Spicy Vinegar Peppers..........
Sauteed Broccoli Rabe..........
Sauteed Escarole.............

### Pan Roasted Vegetable Medley

Creamy Polenta.............
Roasted Fingerling Potatoes......
Pancetta Braised Baby Brussel Sprouts...................
Gratin Of Gnocchi with gorgonzola...................
Rosemary Polenta Fries.........

### Dessert

*Suggested Accompaniment*

Strawberry Shortcake layers of classic shortcake, strawberry gelato, marinated strawberries and whipped cream....... 10.00

Lemon folley...................
Warm Apple Cake honey glazed lady apples, vanilla gelato, caramel sauce.............. 10.00

graham's six grapes reserve...
Homemade Tiramisu lady fingers dipped in espresso coffee, vanilla mascarpone cream, dusted with powdered cocoa.................... 9.00

pogir williams..............
Panna Cotta tahitian vanila bean panna cotta with fresh berries and citrus coulis.. 10.00

amoretti..................
Cookies & Cream "Dip & Enjoy" bittersweet chocolate short-bread cookies, tahitian vanilla bean whipped cream... 12.00

tawny port...................
Brownie Fudge Sundae walnut brownie, malted milk ball vanilla ice cream, gooey fudge sauce, whipped cream.. 10.00

sandemen...................
Banana Pudding chocolate, banana cream, sliced bananas, vanilla wafers, chocolate shavings, whipped cream.... 10.00

grappa....................
Creamy Ricotta Cheese Cake light ricotta torte with fresh berries and whipped mascarpone cream............. 10.00

vin santo...................
Fresh Fruit assorted seasonal fruits and berries.......... 12.00

bouvier, gangi...............
Bombolini (vanilla dinner only) made to order sugar coated vanilla cream filled donuts with caramel dipping sauce... 12.00

cognac....................

### Fresco $5.25

*Per Pot. Loose Tea Selections*

Decaf Earl Grey, Sri Lanka this tea combines natural oil of bergamot with decaffeinated north indian black tea...

Ceylon English Breakfast, Sri Lanka a blend of high grown indian and ceylon teas, yielding a cup that is brisk and slightly coppery with a somewhat lemony quality.........

Chocolate Delight, Brooklyn, NY a blend of, black & green tea, cocoa bean, barley, apple, toasted rice, and yogurt.....

Honey Pistachio Biscotti (black Tea) flavorful black tea combined with pistachio, almonds, biscotti and coconut bits, honey





Menu items and Prices subject to change. Information related to this restaurant is provided solely for informational purposes only and is not an endorsement or guarantee by MenuPages.com or any Listed Restaurant.
© 2009 Stick City Media, Inc. www.MenuPages.com

# Fresco On the Go

40 E 52nd St
New York, NY 10022
Btwn Madison & Park Ave

**212 754-2700**
Fax: 212 754-1661

Page 2 of 3

YOUR AD HERE
MenuPages **PRIME** Advertising
for more info: www.menupages.com

Strawberry Ginger Peppercorn (Greek & White Tea) roasted rice, ginger, chili bits, peppercorns, and strawberry bits.......

Green Tea (Jasmine Pearls), China a very aromatic tea with a lingering sweetness, gently rolled pearls of green tea, scented with fresh jasmine blossom........

## Herbal Infusions $5.25

*Per Pot*

Lemongrass new york state........
Chamomile (Egypt) the flavor is light with notes of honey........
Peppermint (Northwestern United States) a luscious blend of peppermint with lemon grass and kaffir lime........
Chocolate Chai, South Africa wonderful relaxing herbal with flavors of rare Indian spices: coriander, fennel, cardamom and south African rooibos........

## Delivery & Take Out

## Breakfast

*Served Until 10:30am Daily.*

Two Eggs On Toast egg style: scrambled, over easy, over medium, over hard........ 3.00
  cheese choice: american cheese, swiss cheese, provolone........
  toast: white bread, whole wheat bread, rye bread........
Goat Cheese & Tomato Omelet W/ Roasted Potatoes........ 6.50
  omelette choices: muffin..... 2.25
  omelette choices: jam, with onion, mushroom, spinach, with tomato........ 0.25
  omelette choices: panini bread........ 2.00
  omelette choices: black bread, whole wheat bread, sourdough bread, pullman bread, mozzarella cheese, feta cheese........
  omelette choices: butter, with goat cheese, with provolone, with ham, swiss cheese,.. 0.50
  omelette choices: bagel, with turkey........ 1.00
  omelette choices: cream cheese........ 0.75
  omelette choices: american cheese, with bacon........ 0.75
Spinach & Mushroom Omelet W/ Roasted Potatoes........ 6.50
  omelette choices: muffin..... 2.25
  omelette choices: jam, with onion, mushroom, spinach, with tomato........ 0.25
  omelette choices: panini bread........ 2.00
  omelette choices: black bread, whole wheat bread, sourdough bread, pullman bread, mozzarella cheese, feta cheese........
  omelette choices: butter, with goat cheese, with provolone, with ham, swiss cheese,.. 0.50
  omelette choices: bagel, with turkey........ 1.00
  omelette choices: cream cheese........ 0.75

omelette choices: american cheese, with bacon........ 0.75
Egg White Omelet With Vegetables........ 6.50
  omelette choices: muffin... 2.25
  omelette choices: jam, with onion, mushroom, spinach, with tomato........ 0.25
  omelette choices: panini bread........ 2.00
  omelette choices: black bread, whole wheat bread, sourdough bread, pullman bread, mozzarella cheese, feta cheese........
  omelette choices: butter, with goat cheese, with provolone, with ham, swiss cheese... 0.50
  omelette choices: bagel, with turkey........
  omelette choices: cream cheese........ 0.75
  omelette choices: american cheese, with bacon........ 0.75
Smoked Salmon Omelet W/Roasted Potatoes........ 9.50
Buttermilk Pancakes With Maple Syrup........ 4.00
Crunchy French Toast With Maple Syrup........ 4.50
Homemade Oversized Muffin muffin choice: apple walnut, blueberry, non-fat blueberry, oat bran........ 2.25
Plain Croissant........ 1.75
Scone........ 2.50
Homemade Pastry........ 2.50
Danish........ 2.50
Bagel bagel choice: plain bagel, sesame, poppy, cinnamon raisin........ 1.00
  bagel toppings: with cream cheese........
  bagel toppings: with butter........ 0.50
  bagel toppings: with preserves........ 0.25
  bagel toppings: with vegetable cream cheese........ 1.25
  bagel toppings: with lox cream cheese........ 2.00
Homemade Granola........ 3.00
Fresh Fruit Salad........ 3.00
Side Of Bacon........ 2.50
Side Of Sausage........ 7.00

## Lunch Snacks

Fresco's Tuscan Fries........ 3.50
Potato & Zucchini Chips W/Gorgonzola Cheese.... 4.00
Crispy Fried Calamari........ 6.00
Homemade Potato Chips........ (2pcs) 2.50
Crispy Onion Rings........ 4.00

## Delicious Soups

*Our Homemade Soups Are Made With The Freshest Ingredients Of The Season*

Tuscan White Bean Soup With Escarole........ sm 3.50  lg 4.50
Chef's Special Chicken Soup........ sm 3.50  lg 4.50
Special Soup Of The Day........ sm 3.50  lg 4.50
Crisp Flatbreads........ 5.00
Homemade Foccacia Bread........ 1.50

## Lunch Hearty Salads

*Salad Dressing Is Served On The Side.*

Caesar Salad hearts of romaine with grilled garlic croutons and shaped parmigiano reggiano........ 6.25
Grilled Chicken Caesar Salad hearts of romaine with grilled garlic croutons and shaped parmigiano reggiano........
Field Green Salad mixed greens with balsamic vinaigrette..5.25
Oriental Chicken Salad teriyaki chicken with sprouts, snow peas and carrots over romaine with miso dressing...... 9.95
Chicken Cobb Salad grilled chicken breast, romaine, crispy bacon, red onions, avocado, romaine lettuce and gorgonzola dressing........ 9.95
Roast Turkey Salad freshly roasted turkey with lentils, goat cheese, beets, with romaine and balsamic vinaigrette dressing........ 8.95
Fresco's Chef Salad turkey, ham, swiss, american cheese, eggs and tomato over romaine with gorgonzola dressing..9.95
Mediterranean Salad feta cheese, tomato, cucumber, chick peas and olives over romaine greens with Italian oregano dressing........ 8.50
Tuna Nicoise Rice Salad albacore tuna tossed with rice, olives, capers, tomatoes over mixed greens with extra virgin olive oil and lemon dressing........ 8.95
The Italian Vegetable Salad portobello, peppers, olives, mozzarella cheese over mesclun greens with balsamic dressing........ 8.50
Chicken Milanese Salad with arugula, romaine, tomato and balsamic dressing........ 9.95
Mediterranean Salad With Chicken........ 9.95

## Lunch Side Salads

*Portioned Per 1/4 Lb*

Caprese Salad homemade mozzarella, fresh tomato, basil and extra virgin olive oil........ 5.00
Chef's Special Potato Salad........ 3.00
Lentils With Beets And Goat Cheese........ 4.50
Greek Salad........ 4.50
Cauliflower With Bread Crumbs And Parmesan.... 4.50
Chick Pea Salad........ 4.50
Penne W/ Fresh Tomato And Mozzarella served cold.... 3.00
Small Side Salad mixed greens with balsamic vinaigrette.. 3.00
Fresh Fruit Salad........ 3.00

## Traditional Sandwiches

Fresh Herb Roasted Turkey Sandwich lettuce, tomato, cucumbers and shallot mustard........ 8.50

add cheese choices: american cheese, swiss cheese, provolone, cheddar, mozzarella, parmigiano-reggio, goat cheese........ 0.95
Herbed Tuna Sandwich........ 6.50
  cheese sandwich add ons: add tomato........ 0.50
  cheese sandwich add ons: bacon, ham........ 0.95
Simply Smoked Salmon Sandwich tomato, cucumber and horseradish cream on black bread........ 9.50
Turkey, Bacon, Lettuce And Tomato Sandwich avocado and aioli on grilled pullman bread........ 8.50
  add cheese choices: american cheese, swiss cheese, provolone, cheddar, mozzarella, parmigiano-reggio, goat cheese........ 0.95
Lemon Herb Grilled Chicken Sandwich tomato and shallot mustard........ 8.25
  add cheese choices: american cheese, swiss cheese, provolone, cheddar, mozzarella, parmigiano-reggio, goat cheese........ 0.95
Ham And Brie Sandwich arugula and honey mustard on black bread........ 8.25
Italian Hero Sandwich prosciutto, soppressata, pepperoni, mozzarella, red onion, arugula, roasted peppers and oregano dressing on Italian bread.. 9.50
Roast Beef Sandwich balsamic onion, watercress, horseradish cream on Italian bread....8.50
  add cheese choices: american cheese, swiss cheese, provolone, cheddar, mozzarella, parmigiano-reggio, goat cheese........ 0.95
Turkey With Swiss Sandwich with swiss, lettuce, tomato and cranberry aioli........ 8.75
Quarto Fromage Sandwich with ricotta, parmesan, mozzarella and regionato on brioche.. 7.95
  cheese sandwich add ons: add tomato........ 0.50
  cheese sandwich add ons: bacon, ham........ 0.95
Grilled American On Country White Bread........ 6.95
  cheese sandwich add ons: add tomato........ 0.50
  cheese sandwich add ons: bacon, ham........ 0.95
Swiss With Country Mustard On Rye........ 6.95
  cheese sandwich add ons: add tomato........ 0.50
  cheese sandwich add ons: bacon, ham........ 0.95

## Special Selections

*Served Warm*

Mom's Meatball Open Face Sandwich fresh tomato and basil on sesame bun........ 6.95
  add cheese choices: american cheese, swiss cheese, provolone, cheddar, mozzarella, parmigiano-reggio, goat cheese........ 0.95

The Best Eggplant Open Face Sandwich ricotta, mozzarella and tomato on sesame bread........ 8.50
  add cheese choices: american cheese, swiss cheese, provolone, cheddar, mozzarella, parmigiano-reggio, goat cheese........ 0.95
Fresco's Sausage Sandwich grilled sausage and roasted peppers on a hero........ 10.50
  add cheese choices: american cheese, swiss cheese, provolone, cheddar, mozzarella, parmigiano-reggio, goat cheese........ 0.95
Chicken, Swiss, Tomato, Watercress Panini with sun-dried tomato pesto........ 10.50
  add cheese choices: american cheese, swiss cheese, provolone, cheddar, mozzarella, parmigiano-reggio, goat cheese........ 0.95
Chicken Milanese, Tomato, Arugula Onion Panini....10.50
  cheese sandwich add ons: add tomato........ 0.50
  cheese sandwich add ons: bacon, ham........ 0.95

## Lunch Hot Pressed Panini Sandwiches & Burgers

Roast Beef, American Cheese Panini with sauteed onions and gorgonzola aioli........ 9.95
Mozzarella, Roasted Peppers, Arugula Panini........ 8.95
Prosciutto, Mozzarella, Peppers, Arugula Panini roasted peppers........ 9.95
Chicken, Swiss, Tomato, Watercress Panini with sun-dried tomato pesto........ 10.50
  add cheese choices: american cheese, swiss cheese, provolone, cheddar, mozzarella, parmigiano-reggio, goat cheese........ 0.95
Chicken Milanese, Tomato, Arugula Onion Panini....10.50
  cheese sandwich add ons: add tomato........ 0.50
  cheese sandwich add ons: bacon, ham........ 0.95
Fresco's Hamburger served with lettuce, tomato and tuscan fries........ 9.95
  condiment choice: ketchup, mustard, mayonnaise........
  add cheese choices: american cheese, swiss cheese, provolone, cheddar, mozzarella, parmigiano-reggio, goat cheese........ 0.95

## Burrito & Roll Ups

Vegetable Roll Up grilled vegetables and fresh herb aioli rolled in our famous herbed grilled bread........ 8.25
Vegetable Roll up add cheese choices: american cheese, swiss cheese, provolone, cheddar, mozzarella, parmigiano-reggio, goat cheese........ 0.95

Chicken Parmesan Roll up chicken cutlet, mozzarella, and fresh tomato rolled in our famous herbed grilled bread... 9.95
Chicken Vegetable Roll up grilled chicken, vegetables and fresh herb aioli rolled in our famous herbed grilled bread........ 9.95
  add cheese choices: american cheese, swiss cheese, provolone, cheddar, mozzarella, parmigiano-reggio, goat cheese........ 0.95
Tuna Salad Roll up fresh albacore tuna, raisins, apples, dill and aioli........ 8.95
  add cheese choices: american cheese, swiss cheese, provolone, cheddar, mozzarella, parmigiano-reggio, goat cheese........ 0.95
Caesar Steak Roll up grilled steak, hearts of romaine, caesar dressing and shaved parmigiano-reggiano rolled in our famous thin crusted grilled bread........ 11.95
  add cheese choices: american cheese, swiss cheese, provolone, cheddar, mozzarella, parmigiano-reggio, goat cheese........ 0.95
Chicken Caesar Roll up grilled chicken, hearts of romaine, caesar dressing and shaved parmigiano-reggiano rolled in our famous thin crusted grilled bread........ 9.95

## Famous Grilled Pizza

*Made On A Grill*

Margherita
  Pizza........ sm 6.50  lg 9.50
  add cheese choices: american cheese, swiss cheese, provolone, cheddar, mozzarella, parmigiano-reggio, goat cheese........ 0.95
Vegetable
  Pizza........ sm 6.50  lg 9.50
  add cheese choices: american cheese, swiss cheese, provolone, cheddar, mozzarella, parmigiano-reggio, goat cheese........ 0.95
White Pizza........ 6.50
Week........ sm 6.95  lg 10.50
Fresco Bread olive oil, parmesan and herbs........ 4.00

## Lunch Fresco's Homemade Pasta

Mom's Meatball Lasagna with ricotta and fresh tomato sauce........ 10.95
Fusilli Bolognese with meat sauce........ 10.75
Penne with fresh tomato basil sauce........ 8.50
Side Of Sausage........ 5.50
Side Of Meatballs........ 5.50

## Our Famous Smoothies $5

Raspberry Smoothie........
Mango Banana Smoothie........



Menu items and Prices subject to change. Information related to this restaurant is provided solely for informational purposes only and is not an endorsement or guarantee by MenuPages.com or any Listed Restaurant.
© 2009 Slick City Media, Inc. www.MenuPages.com

MENUPAGES

## Fresco On the Go

40 E 52nd St
New York, NY 10022
Btwn Madison & Park Ave

**212 754-2700**
Fax: 212 754-1661

Page 3 of 3

*YOUR AD HERE*
MenuPages **PRIME** Advertising

*for more info: www.menupages.com*

### Daily Specials

Special Soup Of The
Day............sm 3.50  lg 4.50
Special Pizza Of The
Week.......sm 6.95  lg 10.50
Special Salad................. 9.95
dressing choice: balsamic
dressing, italian oregano dress-
ing, caesar dressing, gor-
gonzola dressing, balsamic vin-
egar, lemon dressing.
dressing choice: pico de
gallo.......................... 0.50
Special Sandwich........... 10.50
Special Pasta................ 10.75
Special Beef................. 12.50
Special Pork................. 11.50
Special Turkey............... 11.50
Daily Special Fish........... 13.00
Daily Special Choice........ 10.75
Daily Special Chicken........ 10.75

### Homemade Sweets

Pecan Square................. 2.00
Chocolate Brownies.......... 2.00
Oversized Homemade Cookies
oversized homemade cookie
choice: chocolate chip, oat-
meal raisin, biscotti, chocolate
chip w/ pecan, peanut butter,
toffee......................... 1.95

### Fruit $1

Green Apple
Banana.

### Beverages

Soda soda choices: coke, diet
coke, sprite, diet sprite, stew-
art cherry/cream, gingerale,
schweppes seltzer............ 1.25
soda choices: stewart's root
beer, stewart's black cherry,
stewart's root beer............ 1.25
Fiji Water..................... 2.25
Smart Water................... 2.75
Pellegrino..................... 2.00
Arandata..................... 2.00
Limonata..................... 2.00
Vitamin Water................ 2.50
Iced Tea...................... 2.25
Snapple snapple choice: iced
tea, diet lemon, peach, diet
peach......................... 2.00
Coffee.........sm 1.75  lg 2.25
milk and sugar selection: whole
milk, skim milk, cream, foam,
steamed, equal, splenda,
sweat & low, sugar, honey,
black, dark, lite..............
coffee choice: regular, decaf,
vanilla, hazelnut, irish cream,
almond, cinnamon...........
coffee choice: carmel......... 0.95
Cafe Au Lait...reg 2.00  lg 2.50
milk and sugar choices: whole
milk, skim milk, cream, foam,
steamed, equal, splenda,
sweat & low, sugar...........
Espresso........reg 2.00  lg 2.75
Cappuccino....reg 3.25  lg 4.00
milk and sugar choices: whole
milk, skim milk, cream, foam,
steamed, equal, splenda,
sweat & low, sugar...........
Cafe Latte.....reg 3.25  lg 4.00

milk and sugar choices: whole
milk, skim milk, cream, foam,
steamed, equal, splenda,
sweat & low, sugar...........
Tea.............reg 1.25  lg 1.50
milk and sugar choices: whole
milk, skim milk, cream, foam,
steamed, equal, splenda,
sweat & low, sugar...........
Herb Tea.......reg 1.25  lg 1.50
milk and sugar choices: whole
milk, skim milk, cream, foam,
steamed, equal, splenda,
sweat & low, sugar...........
Hot Chocolate.reg 1.50  lg 2.25
Iced Coffee................... 2.25
milk and sugar choices: whole
milk, skim milk, cream, foam,
steamed, equal, splenda,
sweat & low, sugar...........
Iced Espresso................. 3.00
Iced Cappuccino.............. 3.50
milk and sugar choices: whole
milk, skim milk, cream, foam,
steamed, equal, splenda,
sweet & low, sugar...........
Frozen Fresco-Cino........... 3.95
milk and sugar choices: whole
milk, skim milk, cream, foam,
steamed, equal, splenda,
sweet & low, sugar...........
Iced Latte.................... 4.00
milk and sugar choices: whole
milk, skim milk, cream, foam,
steamed, equal, splenda,
sweet & low, sugar...........
Zico.......................... 3.00

**Delivery & Take Out - Din-
ner**

### Appetizers & Snacks

Special Soup Of The
Day............sm 3.50  lg 4.50
Crisp Flatbreads.............. 5.00
Homemade Foccacia
Bread........................ 1.50
Tuscan Fries................. 5.00
Potato & Zucchini Chips
W/Gorgonzola Cheese....... 7.00
Onion Rings.................. 5.00
Fried Calamari............... 7.00
Mini Chicken Parmesan
Sliders....................... 7.00
Mini Meatballs
Sliders................(2pcs) 7.00
Homemade Potato
Chips.................(2pcs) 2.50

### Hearty Salads

Salad Dressing Is Served On The
Side.
Caesar Salad hearts of romaine
with grilled garlic croutons and
shaped parmigiano-
reggiano.................... 8.00
Field Green Salad mixed greens
with balsamic vinaigrette, 7.00
Chicken Caesar.............. 12.50
Oriental Chicken Salad teriyaki
chicken with sprouts, snow
peas and carrots over romaine
with miso dressing........... 12.50
Cobb Salad grilled chicken
breast, tomato, crispy bacon,
red onions, avocado, romaine
lettuce and gorgonzola dress-
ing.......................... 12.50

Fresco's Chef's Salad turkey,
ham, swiss, american cheese,
eggs and tomato over romaine
with gorgonzola
dressing..................... 12.50
Mediterranean Salad W/
Grilled Chicken feta cheese,
tomato, cucumber, chick peas
and olives over romaine greens
with italian oregano
dressing..................... 12.00
Tuna Nicoise Rice Salad alba-
core tuna tossed with rice,
olives, capers, tomatoes over
mixed greens with extra virgin
olive oil and lemon
dressing..................... 11.50

### Side Salads

Caprese Salad homemade moz-
zarella, fresh tomato, basil and
extra virgin olive oil........... 7.00
Cauliflower With Bread
Crumbs And Parmesan...... 5.00
Vegetable Of The Week...... 7.00
Chick Pea Salad.............. 5.00
Fruit Salad the season's freshest
assortment................... 6.00
Small Side Salad mixed greens
with balsamic vinaigrette. 6.00

### Hot Pressed Panini Sand-
wiches & Burgers

Add Cheese Choices $0.95 :
American Cheese, Swiss Cheese,
Provolone, Cheddar, Mozzarella,
Parmigiano-Reggio, Goat Cheese.
Sliced Steak Panini fried onion
rings, mashed potatoes, and
gorgonzola aioli.............. 16.95
Mozzarella, Roasted Peppers,
Arugula Panini............... 11.95
Chicken Parmesan Panini 13.95
Prosciutto, Mozzarella, Pep-
pers, Arugula Panini......... 13.95
Fresco Burger served w/gor-
gonzola cheese, bacon, lettuce,
tomato & onions, and tuscan
fries......................... 15.00
add cheese choices: american
cheese, swiss cheese, pro-
volone, cheddar, mozzarella,
parmigiano-reggia, goat
cheese....................... 0.95

### Fresco's Roll ups

Vegetable Roll up grilled veget-
ables and fresh herb aioli rolled
in our famous herbed grilled
bread......................... 9.50
Chicken Parmesan Roll Up
chicken cutlet, mozzarella, and
fresh tomato rolled in our fam-
ous herbed grilled bread. 13.95
Chicken Vegetable Roll Up
grilled chicken, vegetables and
fresh herb aioli rolled in our
famous herbed grilled
bread........................ 13.95
Tuna Salad Roll up fresh alba-
core tuna, raisins, apples, dill
and aioli..................... 10.95
Caesar Steak Roll up grilled
steak, hearts of romaine,
caesar dressing and shaved
parmigiano-reggiano rolled in
our famous thin crusted grilled
bread........................ 13.95

Chicken Caesar Roll up grilled
chicken, hearts of romaine,
caesar dressing and shaved
parmigiano-reggiano rolled in
our famous thin crusted grilled
bread........................ 13.95

### Fresco's Homemade
Pasta

Mom's Meatball Lasagna with
ricotta and fresh tomato
sauce........................ 16.00
Penne with fresh tomato and
basil......................... 12.00
Fusilli Bolognese with meat
sauce........................ 14.00
Penne Alla Vodka............ 12.00
Grilled Chicken Over Penne
Pasta........................ 16.00
Ultimate Baked Ziti with saus-
age, tomato and
eggplant..................... 15.00
Side Of Meatballs............ 7.00
Side Of Pasta................ 7.00

### Entrees

Herb Roasted Chicken Breast
Entree served with mashed
potatoes and the chef's spe-
cial vegetable of the
day.......................... 16.00
Eggplant And Zucchini Pie
ricotta, mozzarella and
tomato....................... 16.00
Lemon Grilled Salmon Entree
roasted peppers and
broccoli...................... 17.00
Chicken Milanese Entrée baby
arugula, tomato and onion
salad........................ 15.95
Chicken Parmigiana Entrée
roasted potatoes and sauteed
escarole..................... 15.95
New York Strip Steak Entrée
grilled mashed potatoes and
crispy onion rings........... 19.00
Fresco Burger served w/gor-
gonzola cheese, bacon, lettuce,
tomato & onions, and tuscan
fries.........................
add cheese choices: american
cheese, swiss cheese, pro-
volone, cheddar, mozzarella,
parmigiano-reggie, goat
cheese....................... 0.95

**Delivery & Take Out - Cre-
ate Your Own Salad**

### Choose Toss-Ins

(5 Toss-Ins) $8.25 /(12 Toss-Ins)
$9.95
Black Beans.
Broccoli.
Carrot.
Celery.
Chick Peas.
Chicken.
Corn.
Croutons.
Cucumber.
Egg.
Feta Cheese.
Guacamole.
Ham.
Jalapenos.
Mushroom.
Olives.

Onions.
Parmesan Cheese.
Peas.
Peppers.
Pico De Gallo.
Raisins.
Tomatoes.
Tuna.

### Dressing Choice

Balsamic Dressing.
Italian Oregano Dressing.
Caesar Dressing.
Gorgonzola Dressing.
Balsamic Vinegar.
Lemon Dressing.
Pico De Gallo................. 0.50

### Extra Toss-Ins $0.5

Black Beans.
Carrots.
Celery.
Cheddar Cheese.
Chick Peas.
Corn.
Croutons.
Cucumber.
Eggs.
Feta Cheese.
Guacamole.
Ham.
Jalapenos.
Mushrooms.
Olives.
Onions.
Parmesan Cheese.
Peas.
Peppers.
Pico De Gallo.
Raisins.
Steamed Broccoli.
Tomatoes.

**Delivery & Take Out - Cre-
ate Your Own Asian Bar**

### Sauce Choice

Teriyaki.
Sesame Oil.
Soy Sauce.

### Choice Of Veggie Or Meat

Steak........................ 9.95
Chicken...................... 9.95
Tofu......................... 9.95
Broccoli...................... 8.65
Snow Peas................... 8.65
Bean Sprouts................ 8.65
Carrots...................... 8.65
Mushrooms.................. 8.65
Scallions.................... 8.65

### Base Choice

Rice.
Noodles.

**Delivery & Take Out -
Make Your Own Burrito
Bar $8.95**

### Add In Choice

Guacamole.
Sour Cream.
Black Bean Salsa.
Cheddar.
Jalapeno.

Rice.

### Burrito Choice

Chili Beef.
Spicy Chicken............... 9.95

**Delivery & Take Out - Cre-
ate Your Own Vegetarian
Pasta $9.95**
With Meat Topping.

### Choose Your Protein And
Toppings

Broccoli.
Tomatoes.
Escarole.
Fresh Basil.
Red Pepper.
White Beans.
Roasted Tomato.
Bl. Olives.
Sautéed Mushrooms.
Breaded Chicken.
Grilled Chicken.
Italian Sausage.
Parm........................ 0.95
Mozzarella................... 0.95
Extra Protein................ 1.00

### Choose Your Sauce

Ala Vodka.
Alfredo.
Basil Pesto.
Bolognese.
Garlic And Oil.
Tomato Sauce.

### Choose Your Pasta

Cheese Tortellini.
Fusilli Pasta.
Penne.
Whole Wheat.

**Delivery & Take Out - Cre-
ate Your Own Vegetarian
Pasta $8.65**

### Choose Your Toppings

Bl. Olives.
Sautéed Mushrooms.
Broccoli.
Escarole.
White Beans.
Fresh Basil.
Red Pepper.
Roasted Tomato.
Mozzarella................... 0.95
Parm.........................
Salt & Pepper.

### Choose Your Sauce

Ala Vodka.
Alfredo.
Basil Pesto.
Bolognese.
Garlic And Oil.
Tomato Sauce.

### Choose Your Pasta

Cheese Tortellini.
Fusilli Pasta.
Penne.
Whole Wheat.



Menu Items and Prices subject to change. Information related to this restaurant is provided solely for informational
purposes only and is not an endorsement or guarantee by MenuPages.com or any Listed Restaurant.
© 2009 Slick City Media, Inc. www.MenuPages.com


MENUPAGES

B

Rental Arrears through January 31, 2015 as per stipulation:    $279,124.62
Starting 06/15/2015 through 11/15/2015 monthly installments of  $37,500.00
On or before December 5, 2015 final installment of $41,624.62

| Date | Type | Description | Amount |
|---|---|---|---|
| 01/30/2015 | RNT | Pymt. Batch 962 Check 201670 | -$12,500.00 |
| | | | |
| | | | |
| 02/01/2015 | RNT | Monthly Rent | $75,000.00 |
| 02/01/2015 | CAM | COMMON AREA MAINTENANCE | $588.04 |
| 03/01/2015 | RNT | Monthly Rent | $75,000.00 |
| 03/01/2015 | CAM | COMMON AREA MAINTENANCE | $588.04 |
| 04/01/2015 | RNT | Monthly Rent | $75,000.00 |
| 04/01/2015 | CAM | COMMON AREA MAINTENANCE | $588.04 |
| 05/01/2015 | RNT | Monthly Rent | $75,000.00 |
| 05/01/2015 | CAM | COMMON AREA MAINTENANCE | $588.04 |
| 06/01/2015 | RNT | Monthly Rent | $75,000.00 |
| 06/01/2015 | CAM | COMMON AREA MAINTENANCE | $588.04 |
| 7/1/2015 | RNT | Monthly Rent | $75,000.00 |
| 7/1/2015 | CAM | COMMON AREA MAINTENANCE | $588.04 |
| 7/1/2015 | RET | RET 07/01/15-12/31/15 | $10,401.50 |
| 7/1/2015 | BID | BID TAXES 07/01/15-12/31/2015 | $1,028.92 |
| 8/1/2015 | RNT | Monthly Rent | $75,000.00 |
| 8/1/2015 | CAM | COMMON AREA MAINTENANCE | $588.04 |
| 9/1/2015 | RNT | Monthly Rent | $75,000.00 |
| 9/1/2015 | CAM | COMMON AREA MAINTENANCE | $588.04 |
| 10/1/2015 | RNT | Monthly Rent | $75,000.00 |
| 10/1/2015 | CAM | COMMON AREA MAINTENANCE | $588.04 |
| 10/29/2015 | CAM | CAM INCREASE - JAN - OCT 2015 | $104.45 |
| 11/1/2015 | RNT | Monthly Rent | $75,000.00 |
| 11/1/2015 | CAM | COMMON AREA MAINTENANCE | $598.49 |
| | | | **$767,425.72** |
| | | | |
| | | | |
| 03/02/2015 | CAM | Pymt. Batch 088 Check 01279924 | -$75,589.00 |
| 05/19/2015 | CAM | Pymt. Batch 482 Check 201821 | -$75,588.04 |
| 06/10/2015 | CAM | Pymt. Batch 588 Check 201963 | -$103,000.00 |
| 06/10/2015 | RNT | Pymt. Batch 588 Check 93727860 | -$12,000.00 |
| 7/1/2015 | | 9893728321 | -$35,000.00 |
| 7/7/2015 | | 9893728388 | -$75,000.00 |
| 7/29/2015 | | | -$70,000.00 |
| 8/6/2015 | | 1650549 | -$5,000.00 |
| 9/10/2015 | | 229162 | -$9,300.00 |
| 9/10/2015 | | 9101668865 | -$13,200.00 |
| 9/10/2015 | | 9893729199 | -$53,000.00 |
| | | | **-$526,677.04** |

|  |  |
|---|---|
| Base Rent and Additional Rent Balance Due: | $240,748.68 |
| Installment of Rental Arrears due on or before June 15, 2015: | $37,500.00 |
| Installment of Rental Arrears due on or before July 15, 2015: | $37,500.00 |
| Installment of Rental Arrears due on or before August 15, 2015: | $37,500.00 |
| Installment of Rental Arrears due on or before September 15, 2015: | $37,500.00 |
| Installment of Rental Arrears due on or before October 15, 2015: | $37,500.00 |
| **Total Due:** | **$428,248.68** |
| | |
| **Total Owe:** | **$507,373.30** |

C

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK: Commercial Part 52

------------------------------------------------------------------X

750 8TH AVENUE LLC,

              Petitioner-Landlord,

    -against-

PASTA BAR BY SCOTTO II, LLC d/b/a VIA PRESTO
BY SCOTTO
750 Eighth Avenue a/k/a 247 West 46th Street
New York, New York 10036,

          Respondent-Tenant.

------------------------------------------------------------------X

Index No.: L&T 088221/14

**STIPULATION OF
SETTLEMENT**

2 Attorney

So ordered

JCC

2/11/15

WHEREAS, 750 8TH Avenue LLC, Petitioner-Landlord, previously served a Rent

Demand for rental arrears due and owing through December 2, 2014 upon Pasta Bar

by Scotto II, LLC d/b/a Via Presto by Scotto ("Respondent-Tenant") in the sum of

$232,589.12 with respect to the following premises: A portion of the ground floor and a

portion of the mezzanine space in the building known as 750 Eighth Avenue a/k/a 247

West 46th Street, New York, New York 10036 (the "Building") all as shown on the Floor

Plans annexed to the lease as Exhibit "A-1" which premises constitute a portion of the

condominium unit within the Condominium (the "Retail Unit"), a legal description of

said Retail Unit being shown on Exhibit "B" to the lease, all of which are annexed

hereto as Exhibit "A". Said premises together with all fixtures and equipment which at

2015 FEB -3 AM 10:54

LANDLORD/TENANT
NEW YORK COUNTY
CIVIL COURT

the commencement, or during the term of this lease are thereto attached constitute and are referred to as the "Demised Premises". Additionally, Tenant has the right to use the sidewalk area immediately in front of the Retail Unit on West 46th Street as more particularly shown by hatchmarks on Exhibit "A-2" attached to the lease (the "Sidewalk Area") attached hereto as Exhibit "B" as an outdoor seating area ancillary to Tenant's use of the Demised Premises; and

WHEREAS, Respondent-Tenant concedes proper and timely service of the predicate Rent Demand relating hereto and appears in this converted non-payment proceeding commenced in accordance with the provisions below and in the context of which this Stipulation is now being filed; and

WHEREAS, there is a current lease agreement dated March 25, 2014 ("Lease") in existence between the Petitioner-Landlord and Respondent-Tenant whereby Respondent-Tenant's occupancy shall expire by its term on March 31, 2024 ("Lease Expiration Date"); and

WHEREAS, Petitioner-Landlord will permit Respondent-Tenant to remain in occupancy through the Lease Expiration Date subject to the terms and conditions provided for hereinafter; and

WHEREAS, Respondent-Tenant will restore Petitioner-Landlord to possession of the Demised Premises on or before the Lease Expiration Date, unless otherwise extended by the parties; and

WHEREAS, both Petitioner-Landlord and Respondent-Tenant wish to ensure an amicable turnover of the Demised Premises without resort to protracted litigation and the attendant costs and fees thereof; and

2

WHEREAS, the parties wish to provide a mechanism which will permit Respondent-Tenant to remain in possession pursuant to the terms of the Lease Agreement through the Lease Expiration Date, but permit Petitioner-Landlord to enforce a Civil Court judgment of possession in the event that Respondent-Tenant fails to vacate the Demised Premises on or before the Lease Expiration Date, unless otherwise extended by the parties, and/or defaults in the payment of fixed annual rent or additional rent or escalations under the Lease;

WHEREAS, Respondent-Tenant appears by its attorney, Walter Edelstein, Esq. of Lefkowitz and Edelstein, with offices located at 444 Madison Avenue, Suite 1805, New York, New York 10022, and counsel is deemed to have interposed a "General Denial" to the Petition filed in said proceeding; and

WHEREAS, additional rent has accrued since service of the Rent Demand and will continue to accrue before the time provided herein for completion of payment of rental arrears by Respondent-Tenant, mandating amendment of the Petition; and

WHEREAS, the parties wish to resolve this matter without the further attendant expense and time necessary to be spent on litigation by executing this Stipulation of Settlement ("Agreement") to be filed with the Civil Court of the City of New York and to be "So Ordered";

NOW THEREFORE, in consideration of the mutual promises hereinafter set forth between the parties hereto, and on the basis of good and other valuable consideration, the reciprocal receipt of which is hereby acknowledged, it is stipulated and agreed as follows:

3

1.    Respondent-Tenant agrees that it shall voluntarily vacate from the Demised Premises on or before the Lease Expiration Date or any extension thereof, as applicable, **time being of the essence**, and provide vacant possession free of all other occupants.

2.    (a)    To effectuate such mutual interest, Respondent-Tenant hereby consents to the jurisdiction of the Civil Court, Commercial Part 52, and Respondent-Tenant further consents to the entry of a final judgment of possession in favor of Petitioner-Landlord with the warrant of eviction to issue only upon one of the following conditions, either: (a) default in payment of any rental arrears or base rents and escalations, after uncured notice of default, as set forth hereinafter; or (b) upon default in Tenant voluntarily vacating on or before the Lease Expiration Date, unless further extended by the parties.

(b)    Respondent-Tenant furthermore agrees and consents that service of the Petition and Notice of Petition, already filed with the Civil Court under Index Number 088221/14, may be served upon Respondent-Tenant's attorneys at their offices by overnight mail, which Petition and Notice of Petition shall request the entry of a judgment of possession in accordance with this Agreement.

(3)    (a)    Furthermore, and notwithstanding the assurances of Respondent-Tenant to voluntarily vacate as aforesaid in accordance with this Agreement, should it become necessary on or after the Lease Expiration Date to proceed upon the judgment of possession and warrant, then in such instance, Respondent-Tenant shall be responsible for (i) use and occupancy, per diem, after the Lease Expiration Date at the monthly rate of the fixed rent and escalations then

4

payable under the Lease or Fair Market Rent (ii) reasonable legal fees and (iii) marshal fees incurred by Petitioner-Landlord, all caused by reason of Respondent-Tenant's failure to voluntarily vacate the Demised Premises.

(b)     Nothing contained in paragraph 3(a) above shall be construed so as to constitute any consent on the part of Petitioner-Landlord to Respondent-Tenant remaining in possession of the Demised Premises beyond the Lease Expiration Date, unless further extended by the parties.

4.     Respondent-Tenant shall pay the sum of $279,124.62 representing all rent, additional rent and construction costs owing through January 31, 2015 ("Rental Arrears"), and legal fees through December 31, 2014 in the sum of Four Thousand Seven Hundred ($4,700.00) dollars in the following manner:

(a)     On or before December 24, 2014, Respondent-Tenant did pay the sum of Fifty Thousand and no/100 ($50,000.00) dollars by check to Petitioner-Landlord, which payment is already reflected as a credit in computing the Rental Arrears and which sum Petitioner-Landlord acknowledges as having been received, subject to collection.

(b) On or before January 4, 2015, Respondent-Tenant did pay the sum of Twelve Thousand Five Hundred ($12,500.00) dollars by check to Petitioner-Landlord, which payment is also already reflected as a credit in computing the Rental Arrears and which sum is subject to collection.

(c) Simultaneously with the execution of this Agreement, Respondent-Tenant shall pay the sum of Twelve Thousand Five Hundred and no/100 ($12,500.00) dollars against the Rental Arrears by bank money order or certified check to Petitioner-

5

Landlord in accordance with the address specified in paragraph 5(d) hereafter.

(d) On or before June 15, 2015 and monthly thereafter through November 15, 2015 (six (6) payments), Respondent-Tenant shall pay the further sum of Thirty Seven Thousand Five Hundred and no/100 ($37,500.00) dollars monthly against the Rental Arrears by hand delivery of bank money order or certified check to Petitioner-Landlord in accordance with the address specified in paragraph 5(d) hereinafter.

(e) On or before December 15, 2015, Respondent-Tenant shall pay the further sum of Forty One Thousand Six Hundred Twenty Four and 62/100 ($41,624.62) dollars against the Rental Arrears by hand delivery of bank money order or certified check to Petitioner-Landlord in accordance with the address specified in paragraph 5(d) hereinafter.

(f) In addition to the payments referenced herein, legal fees after January 1, 2015, as additional rent, shall be paid for by Respondent-Tenant as and when billed by Petitioner-Landlord.

5.    (a) On or before February 21, 2015, Respondent-Tenant shall pay the sum of Seventy Five Thousand Five Hundred Eighty Eight and 04/100 ($75,588.04) dollars as and for February base rent and additional rent by hand delivery of bank money order or certified check to Petitioner-Landlord in accordance with the address specified in paragraph 5(d) hereinafter.

(b)    Additionally, and monthly commencing March 1, 2015 through and including December 1, 2015 (ten (10) payments), Respondent-Tenant shall pay, on or before the first (1st) day of each month, the monthly base rental and additional rental

obligations then due to Landlord ($75,588.04 plus legal and any other  items of

additional rent).  Thus, if all the payments specified in paragraph four (4) and

paragraph five (5) are timely made, and if the monthly base rent and additional rent

obligations referred to in this paragraph are timely made, Respondent-Tenant shall

have paid by December 31, 2015 the entire amount of the Rental Arrears, as well as

all of its base and additional rents due and owing through December 31, 2015.

(c) Payments to Petitioner-Landlord referred to hereinabove are to be

hand delivered to Annie Xiao c/o Torkian Group located at 1650 Broadway, Suite 910,

New York, New York 10019.

(d)     Notwithstanding anything contained above to the contrary,

Respondent-Tenant may prepay the payment of rental arrears, without penalty

(e)   In the event any of the above referenced payments in paragraph 4

or 5 above are not made on a timely basis and in full, counsel for Petitioner-Landlord

shall by overnight courier forward a Notice of Default to Respondent-Tenant's counsel

at the address specified in paragraph 11(b) below giving Respondent-Tenant five (5)

business days within which to cure said default.  In the further event  that Respondent-

Tenant fails to cure the default by paying the amount due and owing so that it is

received by Petitioner-Landlord within said five (5) business day period, Petitioner-

Landlord may proceed to restore this proceeding on three (3) days notice to counsel

for Tenant for issuance of the warrant of eviction, which issuance, Tenant hereby

consents to.

6.     Furthermore, notwithstanding anything in this Agreement to the

contrary, in the event of a default, after Notice to Cure and failure to pay, any monies

7

previously received by Petitioner-Landlord from Respondent-Tenant referred to in paragraphs 4 and/or 5 of this Stipulation may, at Petitioner's option and notwithstanding how they may have been initially applied when received, be applied first to current rent/use and occupancy and then to the Rental Arrears referred to above.

7.    The Respondent-Tenant hereby consents that the non-payment proceeding filed on the basis of the predicate Rent Demand, is also converted to a holdover proceeding which will provide additionally for a judgment of possession with warrant to issue on or after February 28, 2024 so as to permit Landlord to evict Tenant if Tenant fails to voluntarily vacate by the Fixed Expiration Date (unless extended by the parties).

8.    Respondent-Tenant acknowledges that it has had the advice of its attorney, Walter Edelstein, Esq., of Lefkowitz and Edelstein, has had time to review this Agreement with its attorney and has executed this Agreement voluntarily. Respondent-Tenant  furthermore agrees to execute any and all other documents that may be reasonably necessary to effectuate the purposes expressed herein and shall cooperate to that end in a reasonable fashion.

9.    Landlord acknowledges that it has had the advice of its attorneys, Borah, Goldstein, Altschuler, Nahins & Goidel, P.C. by Myron I. Altschuler, Esq., has had time to review this Agreement with the assistance of said counsel and has executed this Agreement voluntarily. Landlord furthermore agrees to execute any and all other documents that may be reasonably necessary to effectuate the purposes intended herein, and shall cooperate to that end in a reasonable fashion.

10.    Respondent-Tenant understands that the judgment of possession being entered herein is absolute and final and shall not appeal from or collaterally attack such judgment in the Civil Court or any other forum.  Further, Respondent-Tenant shall not take any steps whatsoever in the Civil Court or any other forum to stay the execution of the warrant.

11.    Respondent-Tenant hereby agrees that any notice or other communication which is required shall be in writing and shall be sent by overnight delivery service, such as Federal Express, to the party sought to be notified and shall be deemed effective on the date delivered:

(a)    To Petitioner-Landlord:

(1)    Hersel Torkian
Torkian Group
1650 Broadway, Suite 910
New York, New York 10019

(2)    Annie Xiao
Torkian Group
1650 Broadway, Suite 910
New York, New York 10019; and

(3)    Myron I. Altschuler, Esq.,
Borah, Goldstein, Altschuler,
Nahins & Goidel, P.C.
377 Broadway
New York, New York 10013
(Tel. No.:  (212) 965-2660); and

(b)    To Respondent-Tenant:

(1)    Walter Edelstein, Esq.
Lefkowitz and Edelstein
444 Madison Avenue
Suite 1805
New York, New York 10022
Tel: (212) 759-1200

9

        (2)     Pasta Bar by Scotto II, LLC
d/b/a Via Presto by Scotto
750 Eighth Avenue a/k/a 247
West 46th Street
New York, New York 10036

     12.    Respondent-Tenant represents that there are presently no other entities or individuals in possession/occupancy of the Demised Premises or any portion thereof (or having any claim to possession/occupancy thereof. Respondent-Tenant further represents that hereafter it shall not permit any entities or individuals other than the aforesaid undertenants to possess/occupy the Demised Premises.

     13.    (a)    Respondent-Tenant hereby concedes that pursuant to the Bankruptcy Code (the "Code") §362(b)(10), the filing of a bankruptcy petition under Code §§301, 302 or 303, which petition names Tenant, or any other undertenant of the Demised Premises as the debtor therein, does not operate as a stay under Code §362(a) of any act by Petitioner-Landlord to obtain possession of the Demised Premises, including, but not limited to, execution of a warrant of eviction issued by the Civil Court of the City of New York in accordance with the terms hereunder.

     (b)    Nonetheless, in the event Petitioner-Landlord elects to obtain an Order of the Bankruptcy Court in the Bankruptcy Case to vacate the automatic stay and/or otherwise effectuate the terms of the Agreement, this Agreement may be submitted in support of any such order or application presented to the Bankruptcy Court for said relief, and Respondent-Tenant shall be deemed to consent to any relief sought therein that comports with the terms of this Agreement.

*10*

14.    It is specifically understood and agreed by Tenant that (i) in the event of an alleged failure by Petitioner-Landlord to provide services to Tenant at the Demised Premises which are required to be provided pursuant to the Lease, Tenant may not raise any of such alleged defaults or breaches in the context of the landlord and tenant proceeding instituted herein so as to delay, defer or detract from Petitioner-Landlord's entitlement to proceed with the execution of a warrant and eviction of Tenant, but only in the event that Respondent-Tenant either defaults in the payments reflected in paragraph 4 and paragraph 5 or fails to voluntarily vacate on or before the Lease Expiration Date.

15.    Respondent-Tenant shall not, and hereby waives the right to, make an application of any kind, whatsoever, for any reason whatsoever, to seek to modify, vacate, set aside or stay the judgment of possession herein or the issuance or execution of the warrant or to otherwise remain in possession of the Demised Premises in the event Respondent-Tenant fails to vacate the Demised Premises on or before the Lease Expiration Date, unless otherwise extended by the parties, or such other date as Petitioner-Landlord may execute on the warrant based upon an uncured default in payment under this Agreement, as the case may be, and specifically agrees to make no motion, application or order to show cause in the Civil Court of the City of New York or any other court or forum to stay the execution of the warrant of eviction. In the event Respondent-Tenant makes such an application, in contravention hereof, the same shall be deemed denied.

*11*

16.    TIME IS OF THE ESSENCE as to the dates of payment and the dates of performance of all of the obligations, terms and conditions of the Lease (as incorporated herein) and this Agreement.

17.    Upon timely payments provided for in paragraph four (4) and five (5) supra, the judgment and warrant shall only apply to Respondent-Tenant voluntarily vacating on or before the Lease Expiration Date (unless further extended by Petitioner-Landlord).

18.    This Agreement shall not be binding upon Landlord or Tenant unless and until Landlord shall have delivered a fully executed counterpart of this Agreement to Tenant's counsel.

19.    Tenant's liability for all amounts that are due and payable to Landlord hereunder shall survive the Expiration Date.

20.    John Scotto is signing this Agreement, individually, as Guarantor, to ratify that certain Guaranty dated March 25, 2014, made by John Scotto to induce Petitioner-Landlord to enter into this Agreement and to confirm the continued validity of such Guaranty and its applicability to the Lease (as incorporated herein) and this Agreement.

21.    This Agreement shall be governed and construed in accordance with the laws of the State of New York and be deemed to have been prepared jointly by the parties hereto. Any uncertainty or ambiguity existing herein shall be interpreted in accordance with the rules and interpretation of arms lengths agreements.

22.    This Agreement shall not be modified except by a subsequent writing executed by all of the parties hereto and in no other manner or form. No

*12*

representations, other than those contained in this Agreement have been made by the parties hereto, nor shall any other representations be deemed made, except by a further writing executed by all parties hereto.

23.  This Agreement may be executed in counterparts, each of which shall constitute an original, but all of which taken together, shall constitute one and the same document.  Furthermore, facsimile and/or electronic signatures shall be deemed original for any and all purposes except that the parties shall undertake to deliver original signatures as soon as it is practical.

24.  This Stipulation may be presented ex-parte in the Civil Court of the City of New York, County of New York to any Civil Court Judge or Judicial Hearing Officer, with the same force and effect as if presented to a Civil Court Judge presiding in Part 52 thereof for the purpose of having said Agreement "So Ordered".  Further, this Court shall retain continuing jurisdiction over this Summary Proceeding to ensure compliance with the terms thereof or to resolve any issues that may arise out of the implementation of this Agreement.

Dated:   New York, New York
         January ____, 2015


BORAH, GOLDSTEIN, ALTSCHULER,          LEFKOWITZ AND EDELSTEIN
NAHINS & GOIDEL, P.C.
Attorneys for Petitioner-Landlord       Attorneys for Respondent-Tenant


By:_____            By:_____
    MYRON I. ALTSCHULER, ESQ.               WALTER EDELSTEIN, ESQ.
    377 Broadway                            444 Madison Avenue
    New York, New York  10013               Suite 1805
    Tel. No. (212) 431-1300                 New York, New York 10022
    Fax No. (212) 965-2773                  Tel: (212) 759-1200



750 8TH AVENUE LLC                     PASTA BAR BY SCOTTO II, LLC d/b/a
                                       VIA PRESTO BY SCOTTO


By: _____           By: _____
    Name: Hersel Torkian                   Name:  John Scotto
    Title: Managing Member                 Title:  Managing Member




                                       GUARANTOR


                                       _____
                                       Name: John Scotto



                   SO ORDERED:


                   _____


Z:\myron_altschuler\Stipulations\750 8th Avenue LLC v  Pasta Bar by Scotto II LLC dba Via Presto by Scotto  12-29-14 - Final
Execution  1-21-15.doc

*14*

Dated:  New York, New York
        January 18, 2015

BORAH, GOLDSTEIN, ALTSCHULER,      LEFKOWITZ AND EDELSTEIN
NAHINS & GOIDEL, P.C.
Attorneys for Petitioner-Landlord         Attorneys for Respondent-Tenant


By:_____     By:_____
     MYRON I. ALTSCHULER, ESQ.           WALTER EDELSTEIN, ESQ.
     377 Broadway                        444 Madison Avenue
     New York, New York  10013         Suite 1805
     Tel. No. (212) 431-1300          New York, New York 10022
     Fax No. (212) 965-2773          Tel: (212) 759-1200


750 8TH AVENUE LLC                  PASTA BAR BY SCOTTO II, LLC d/b/a

                                        VIA PRESTO BY SCOTTO

By: _____    By: _____
     Name: Hersel Torkian             Name: John Scotto
     Title: Managing Member         Title: Managing Member


GUARANTOR

_____
Name: John Scotto

Dated:    New York, New York
          January _VV_, 2015

BORAH, GOLDSTEIN, ALTSCHULER,            LEFKOWITZ AND EDELSTEIN
NAHINS & GOIDEL, P.C.
Attorneys for Petitioner-Landlord         Attorneys for Respondent-Tenant

By: _____            By: _____
    MYRON I. ALTSCHULER, ESQ.                 WALTER EDELSTEIN, ESQ.
    377 Broadway                              444 Madison Avenue
    New York, New York 10013                  Suite 1805
    Tel. No. (212) 431-1300                   New York, New York 10022
    Fax No. (212) 965-2773                    Tel: (212) 759-1200


750 8TH AVENUE LLC                        PASTA BAR BY SCOTTO II, LLC d/b/a
                                          VIA PRESTO BY SCOTTO

By: _____            By: _____
    Name: Hersel Torkian                      Name:  John Scotto
    Title: Managing Member                    Title:  Managing Member



                        GUARANTOR


                        _____

                        Name: John Scotto



              SO ORDERED:

              _____

Z:\myron_altschuler\Stipulations\750 8th Avenue LLC v  Pasta Bar by Scotto II LLC dba Via Presto by Scotto  12-29-14 - Final
Execution  1-21-15.doc

*14*

BORAH, GOLDSTEIN, ALTSCHULER,        LEFKOWITZ AND EDELSTEIN
NAHINS & GOIDEL, P.C.
Attorneys for Petitioner-Landlord          Attorneys for Respondent-Tenant


By:_____          By:_____
     MYRON I. ALTSCHULER, ESQ.              WALTER EDELSTEIN, ESQ.
     377 Broadway                           444 Madison Avenue
     New York, New York  10013              Suite 1805
     Tel. No. (212) 431-1300                New York, New York 10022
     Fax No. (212) 965-2773                 Tel: (212) 759-1200



750 8TH AVENUE LLC                     PASTA BAR BY SCOTTO II, LLC d/b/a
                                       VIA PRESTO BY SCOTTO


By: _____          By:_____
     Name: Hersel Torkian                   Name: John Scotto
     Title: Managing Member                 Title: Managing Member




                       GUARANTOR

                       _____
                       Name: John Scotto


             SO ORDERED:


Z:\myron_altschuler\Stipulations\750 8th Avenue LLC v  Pasta Bar by Scotto II LLC dba Via Presto by Scotto  12-29-14 - Final
Execution 1-21-15.doc
14

# EXHIBIT

# A

**EXHIBIT A-I**
**Floor Plan**







**EXHIBIT B**
Description of Retail Unit

Title No.: (TNYM1) 639
Policy No.: 81306-5072

## SCHEDULE A
## DESCRIPTION

The condominium unit (the "Unit") known as Unit No. C001 in the building known as Platinum (the "Building") located at and known as and by the street address of 247 West 46th Street, New York, New York, said Unit being designated and described as Unit No. C001 in that certain declaration establishing a plan for condominium ownership of said Building and the land (the "Land") on which the Building is situate (which Land is more particularly described below) under Article 9-B of the Real Property Law of the State of New York, dated February 26, 2008, and recorded April 29, 2008, in the Office of the New York City Register, under CRFN 2008000172520, as amended by that certain First Amendment to the Declaration and By-Laws of Platinum dated as of March 22, 2011, and to be duly recorded in the Office of the New York City Register (collectively, the "Declaration"). Said Unit also being designated as Tax Lot 1101 in Block 1018, of Section 4 of the Borough of Manhattan on the Tax Map of the Real Property Assessment Department of the City of New York and on the Floor Plans of said Building, certified by Costas Kondylis & Partners, LLP on February 8, 2008, and filed in the Real Property Assessment Department of the City of New York on April 24, 2008, as Condominium Plan No. 1875, and also filed in the Office of the New York City Register on April 29, 2008, under CRFN 2008000172521.

TOGETHER WITH an undivided 2.4380% interest in the Common Elements (as such term is defined in the Declaration);

TOGETHER WITH the benefits of the easement with respect to a portion of the lobby level of the Building that is set forth, defined and limited in that certain Declaration and Grant of License and Easement Agreement dated as of December 21, 2010, made by and among the Residential Board of Managers of Platinum Condominium, 46th Street Development, LLC and 46th Street Retail Unit, L.L.C. and recorded in the Office of the New York City Register on February 2, 2011, under CRFN 2011000039776.

*The Land upon which the Building containing the Unit is situate is described as follows:*

All that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, City, County and State of New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the easterly side of 8th Avenue and the northerly side of West 46th Street;

RUNNING THENCE northerly along the easterly side of 8th Avenue, 120 feet 5 inches;

THENCE easterly parallel with West 46th Street, 100 feet;

THENCE southerly parallel with 8th Avenue, 20 feet;

THENCE easterly parallel with West 46th Street, 25 feet;

THENCE southerly parallel with 8th Avenue, 100 feet 5 inches to the northerly side of 46th Street; and

THENCE westerly along the northerly side of West 46th Street, 125 feet to the point or place of BEGINNING.

## END OF SCHEDULE A

# EXHIBIT
# B

**EXHIBIT A-2**
**Outdoor Seating Area**



**ATTORNEY'S CERTIFICATION**

STATE OF NEW YORK, COUNTY OF

The undersigned, an attorney admitted to practice in the State of New York, does hereby certify, pursuant to Section 2105 CPLR, that I have compared the within

with the original and have found it to be a true and complete copy thereof.

Dated: ................................ 20

...................................................
Type or Print Name Below Signature

**NOTICE OF ENTRY OR SETTLEMENT**
[check and complete appropriate box and section]

Sir(s) / Madam(s):

**PLEASE TAKE NOTICE** that a

☐ **NOTICE OF ENTRY**
of which the within is a (true) (certified) copy
was duly entered in the within named court on
....................................... 20

☐ **NOTICE OF SETTLEMENT**
will be presented for settlement to the Hon.

one of the judges of the within named court at the Courthouse at

on ...................................... 20
at .......... o'clock .......... M.

Dated: ...........................................

Yours, etc.,

BORAH, GOLDSTEIN, ALTSCHULER,
NAHINS & GOIDEL, P.C.
Attorney(s) for
Office and Post Office Address
377 BROADWAY
NEW YORK, NY 10013-3993
(212) 431-1300
FAX NUMBER: (212) 334-0960

To:
Attorney(s) for

---

Index No. L&T 08221/14    Year 20

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK: NON-HOUSING PART 52

750 8TH AVENUE LLC,

Petitioner-Landlord,

-against-

PASTA BAR BY SCOTTO II, LLC d/b/a VIA
PRESTO BY SCOTTO
750 Eighth Avenue a/k/a 247 West 46th Street
New York, New York 10036,

Respondent-Tenant.

**STIPULATION OF SETTLEMENT**

BORAH, GOLDSTEIN, ALTSCHULER,
NAHINS & GOIDEL, P.C.
Attorney(s) for
Office and Post Office Address
377 BROADWAY
NEW YORK, NY 10013-3993
(212) 431-1300
FAX NUMBER: (212) 334-0960

Please refer all correspondence to:
BORAH GOLDSTEIN ALTSCHULER

To: ......................................... Esq.
Ext. 600

or: ......................................... Esq.
Ext.

To:
Attorney(s) for

---

**ADMISSION OF SERVICE**

The undersigned acknowledges receipt of a copy
the within

on ...................................... 20
at .......... o'clock .......... M.

.................................................
Attorney(s) for

by: ................................................
Type or Print Name Below Signature

**AFFIDAVIT OF SERVICE BY MAIL**

STATE OF NEW YORK
COUNTY OF

being sworn, sa
I am not a party to this action; I am over 18 ye
of age; I reside at .

On ...................................... 20    I ser
the within

upon

the attorney(s) for
action, at

in t

the address designated by said attorney(s) for t
purpose by depositing a true copy of same encl
in a postpaid, properly addressed wrapper, in
official depository under the exclusive care a
custody of the United States Postal Service wit
the State of New York.

....................................................
Type or Print Name Below Signature

Sworn to before me
this .......... day of .......... 20

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK: Commercial Part 52
------------------------------------------------------------------X

750 8TH AVENUE LLC,                                              Index No.: L&T
                                                                088221/14
                        Petitioner-Landlord,

        -against-                                        **STIPULATION OF**
                                                         **SETTLEMENT**

PASTA BAR BY SCOTTO II, LLC d/b/a VIA PRESTO
BY SCOTTO
750 Eighth Avenue a/k/a 247 West 46th Street
New York, New York 10036,

                        Respondent-Tenant.
------------------------------------------------------------------X

        WHEREAS, 750 8th Avenue LLC, Petitioner-Landlord has a Motion pending

before this court; and

        WHEREAS, Respondent-Tenant concedes to the allegations set forth in the

motion; and

        WHEREAS, Petitioner-Landlord will permit Respondent-Tenant to remain in

occupancy subject to the terms and conditions provided for hereinafter; and

        WHEREAS, both Petitioner-Landlord and Respondent-Tenant wish to ensure an

amicable turnover of the Demised Premises without resort to protracted litigation and

the attendant costs and fees thereof; and

        WHEREAS, the parties wish to provide a mechanism which will permit

Respondent-Tenant to remain in possession pursuant to the terms of the Lease

Agreement through the Lease Expiration Date, but permit Petitioner-Landlord to enforce

a Civil Court judgment of possession in the event that Respondent-Tenant fails to

vacate the Demised Premises on or before the Lease Expiration Date, unless otherwise

extended by the parties, and/or defaults in the payment of fixed annual rent or additional rent or escalations under the Lease;

NOW THEREFORE, in consideration of the mutual promises hereinafter set forth between the parties hereto, and on the basis of good and other valuable consideration, the reciprocal receipt of which is hereby acknowledged, it is stipulated and agreed as follows:

1.      The proceeding shall be restored to the calendar of this court.

2.      Petitioner shall receive a judgment of possession and warrant of eviction stayed until June 1, 2015.

3.      Payments to Petitioner-Landlord referred to hereinabove are to be hand delivered to Annie Xiao c/o Torkian Group located at 1650 Broadway, Suite 910, New York, New York 10019.    Notwithstanding anything contained above to the contrary, Respondent-Tenant may prepay the payment of rental arrears, without penalty.

4.      Respondent-Tenant represents that there are presently no other entities or individuals in possession/occupancy of the Demised Premises or any portion thereof (or having any claim to possession/occupancy thereof. Respondent-Tenant further represents that hereafter it shall not permit any entities or individuals other than the aforesaid undertenants to possess/occupy the Demised Premises.

5.      Respondent-Tenant shall not, and hereby waives the right to, make an application of any kind, whatsoever, for any reason whatsoever, to seek to modify, vacate, set aside or stay the judgment of possession herein or the

2

issuance or execution of the warrant or to otherwise remain in possession of the Demised Premises in the event Respondent-Tenant fails to vacate the Demised Premises on or before the Lease Expiration Date, unless otherwise extended by the parties, or such other date as Petitioner-Landlord may execute on the warrant based upon an uncured default in payment under this Agreement, as the case may be, and specifically agrees to make no motion, application or order to show cause in the Civil Court of the City of New York or any other court or forum to stay the execution of the warrant of eviction. In the event Respondent-Tenant makes such an application, in contravention hereof, the same shall be deemed denied.

6.    Respondent-Tenant agrees that it shall voluntarily vacate from the Demised Premises on or before June 1, 2015, **time being of the essence**, and provide vacant possession free of all other occupants unless Respondent pays to the Landlord the monthly rent due for April and May of 2015. In the event that this payment is timely made, the warrant shall be further stayed for the time that future payment ("**Future Payments**") are required to be made under the So-Ordered Stipulation of Settlement, dated January 28, 2015 (the "**Stipulation**").

7.    Further, in the event that Respondent-Tenant fails to make on a timely basis and in full any subsequent Future Payments, counsel for Petitioner-Landlord shall by overnight courier forward a Notice of Default to Respondent's-Tenant's counsel at the address provided below giving

3

Respondent-Tenant five (5) business days within which to cure said default. In the event Respondent fails to cure the default by paying the amount due and owing so that it is received by Petitioner-Landlord within five (5) business day period, Petitioner-Landlord may, among other things, have the Marshall serve its predicate notice and thereafter execute upon the warrant of eviction.   In the event that the Respondent-Tenant makes all payments pursuant to the Stipulation (including all rent arrears and rent and additional rent as it comes due), the warrant of eviction shall be vacated.

8.      TIME IS OF THE ESSENCE as to the dates of payment and the dates of performance of all of the obligations, terms and conditions of the Lease (as incorporated herein), the Stipulation, and this Agreement.

9.      This Agreement shall be governed and construed in accordance with the laws of the State of New York and be deemed to have been prepared jointly by the parties hereto.  Any uncertainty or ambiguity existing herein shall be interpreted in accordance with the rules and interpretation of arms lengths agreements.

10.     This Agreement shall not be modified except by a subsequent writing executed by all of the parties hereto and in no other manner or form.  No representations, other than those contained in this Agreement have been made by the parties hereto, nor shall any other representations be deemed made, except by a further writing executed by all parties hereto.

4

11.   This Agreement may be executed in counterparts, each of which shall constitute an original, but all of which taken together, shall constitute one and the same document.   Furthermore, facsimile and/or electronic signatures shall be deemed original for any and all purposes except that the parties shall undertake to deliver original signatures as soon as it is practical.

12.   This Stipulation may be presented ex-parte in the Civil Court of the City of New York, County of New York to any Civil Court Judge or Judicial Hearing Officer, with the same force and effect as if presented to a Civil Court Judge presiding in Part 52 thereof for the purpose of having said Agreement "So Ordered".   Further, this Court shall retain continuing jurisdiction over this Summary Proceeding to ensure compliance with the terms thereof or to resolve any issues that may arise out of the implementation of this Agreement.

13.   The attorneys executing this agreement represent that they are authorized to execute same on behalf of their clients.

Dated:   New York, New York
May ___, 2015


BORAH, GOLDSTEIN, ALTSCHULER,
NAHINS & GOIDEL, P.C.
Attorneys for Petitioner-Landlord

By: _____
       MYRON I. ALTSCHULER, ESQ.
       377 Broadway
       New York, New York 10013
       Tel. No. (212) 431-1300
       Fax No. (212) 965-2773


LEFKOWITZ AND EDELSTEIN

Attorneys for Respondent-Tenant

By: _____
       Jonathan Fisher, ESQ.
       1350 Avenue Americas
       2nd floor
       New York, New York 10022
       Tel: (212) 759-1200


5

SO ORDERED:

_____

HON. ALEXANDER M. TISCH    5-12-15

BORAH, GOLDSTEIN, ALTSCHULER, NAHINS & GOIDEL, P.C.

**ATTORNEY'S CERTIFICATION**

The undersigned, an attorney admitted to practice in the State of New York, does hereby certify, pursuant to Section 2105 CPLR, that I have compared the within

with the original and have found it to be a true and complete copy thereof.

Dated: .................................... 200

.......................................................
Type or Print Name Below Signature

**NOTICE OF ENTRY OR SETTLEMENT**
[Check and complete appropriate box and section]

Sir(s) / Madam(s):

**PLEASE TAKE NOTICE** that a

☐ **NOTICE OF ENTRY**

of which the within is a (true) (certified) copy was duly entered in the within named court on ........................................ 200

☐ **NOTICE OF SETTLEMENT**

will be presented for settlement to the Hon.

one of the judges of the within named court at the Courthouse at ..................................

on ............................ 200

at .................. o'clock .......... M.

Dated: ..................................... 200

Yours, etc.,

BORAH, GOLDSTEIN, ALTSCHULER, NAHINS & GOIDEL, P.C.
*Attorney(s) for*
*Office and Post Office Address*
377 BROADWAY
NEW YORK, NY 10013-3993
(212) 431-1300
FAX NUMBER: (212) 334-0960

To:
Attorney(s) for

---

Index No.    088221/2014 Year 200

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL PART 52

750 8TH AVENUE LLC.,
                                    Petitioner-Landlord

-against-

PASTA BAR BY SCOTTO II, LLC d/b/a VIA PRESTO BY SCOTTO
750 EIGHTH AVENUE AKA
247 WEST 46TH STREET
NEW YORK, NEW YORK 10036
                                    Respondent-Tenant

**STIPULATION OF SETTLEMENT**

BORAH, GOLDSTEIN, ALTSCHULER, NAHINS & GOIDEL, P.C.
*Attorney(s) for* Petitioner-Landlord
*Office and Post Office Address*
377 BROADWAY
NEW YORK, NY 10013-3993
(212) 431-1300
Fax Number: (212) 334-0960
*Please refer all communications to*
MYRON I. ALTSCHULER, Esq.

To:                                          Ext.
                                                600
or:                                           Ext.

To:
Attorney(s) for

---

**ADMISSION OF SERVICE**

The undersigned acknowledges receipt of a copy of the within

on ......................................... 200
at .................. o'clock .......... M.

Attorney(s) for
by: ...............................................

.......................................................
Type or Print Name Below Signature

**AFFIDAVIT OF SERVICE BY MAIL**

STATE OF NEW YORK
COUNTY OF ....................

I am not a party to this action; I am over 18 years of age; I reside at ..................

being sworn, says:

On ....................................... 200
the within
upon

the attorney(s) for
action, at

I served in this

the address designated by said attorney(s) for that purpose by depositing a true copy of same enclosed in a postpaid, properly addressed wrapper, in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York.

.......................................................
Type or Print Name Below Signature

Sworn to before me
this ............... day of ............... 200

AFFIDAVIT OF SERVICE

STATE OF NEW YORK          )
                                              ss:
COUNTY OF NEW YORK     )

      NADEEM VEERAPEN , being duly sworn, deposes and says:

      I am not a party to this action; I am over 18 years of age and I am employed by Borah, Goldstein, Altschuler, Nahins & Goidel, P.C., 377 Broadway, New York, New York 10013.

      On June 23, 2015, I served the within Five (5) Business Days Notice of Default upon:

> WALTER EDELSTEIN, ESQ.
> Lefkowitz and Edelstein
> 1350 Avenue of the Americas
> 2nd Floor
> New York, New York 10019
> (212) 759-1200
>
> PASTA BAR BY SCOTTO II, LLC
> d/b/a Via Presto by Scotto
> 750 Eighth Avenue a/k/a 247 West 46th Street
> New York, New York 10036

at the address designated for that purpose, by depositing a true copy of same enclosed in a pre-paid, properly addressed wrapper, with an overnight delivery service, within the meaning of CPLR 2103 (b)(6), namely Federal Express, by depositing it in a drop box facility service at 401 Broadway, New York, New York.  Said deposit was made prior to the latest time designated by the overnight delivery service for overnight delivery.

*Nadeem Veerapen*
NADEEM VEERAPEN

Sworn to before me this
23rd day of June, 2015

*Maria Sarcona*
Notary Public

MARIA SARCONA
Commissioner of Deeds
City of New York - No. 2-13490
Certificate Filed in New York County
Commission Expires May 1, 2016

**Michele Wallach**

| | |
|---|---|
| **From:** | trackingupdates@fedex.com |
| **Sent:** | Wednesday, June 24, 2015 2:37 PM |
| **To:** | Michele Wallach |
| **Subject:** | FedEx Shipment 773895918654 Delivered |



fedex.com | Ship | Track | Manage | Learn | Office/Print Services



## Your package has been delivered

Tracking # 773895918654

Ship (P/U) date:
**Tuesday, 6/23/15**

Delivery date:
**Wednesday, 6/24/15 2:33 PM**

Michele Wallach
Borah Goldstein
New York, NY 10013
US

**Delivered**

Walter Edelstein, Esq.
Lefkowitz and Edelstein
1350 Avenue of the Americas 2nd Floor
NEW YORK, NY 10022
US

### Shipment Facts

Our records indicate that the following package has been delivered.

| | |
|---|---|
| Tracking number: | 773895918654 |
| Status: | Delivered: 06/24/2015 2:33 PM |
| | Signed for By: LITTLE |
| Reference: | MIA/ON3710/N69827 |
| Signed for by: | .LITTLE |
| Delivery location: | NEW YORK, NY |
| Delivered to: | Receptionist/Front Desk |
| Service type: | FedEx Priority Overnight |
| Packaging type: | FedEx Envelope |
| Number of pieces: | 1 |
| Weight: | 0.50 lb |
| Special handling/Services: | No Signature Required |
| | Deliver Weekday |

Please do not respond to this message. This email was sent from an unattended mailbox. This report was generated at approximately 1:37 PM CDT on 06/24/2015.

To learn more about FedEx Express, please go to fedex.com.

All weights are estimated.

To track the latest status of your shipment, click on the tracking number above, or go to fedex.com.

This tracking update has been sent to you by FedEx at your request. FedEx does not validate the authenticity of the requestor and does not validate, guarantee or warrant the authenticity of the request, the requestor's message, or the accuracy of this tracking update. For tracking results and terms of use, go to fedex.com

Thank you for your business.

6/24/2015

**Michele Wallach**

**From:** trackingupdates@fedex.com
**Sent:** Wednesday, June 24, 2015 10:19 AM
**To:** Michele Wallach
**Subject:** FedEx Shipment 773876377732 Delivered



fedex.com | Ship | Track | Manage | Learn | Office/Print Services

## Your package has been delivered

Tracking # 773876377732

Ship (P/U) date:
Friday, 6/19/15

Michele Wallach
Borah Goldstein
New York, NY 10013
US


Delivered

Delivery date:
Wednesday, 6/24/15 10:17
AM

Walter Edelstein, Esq.
Lefkowitz and Edelstein
444 Madison Avenue Suite 1805
NEW YORK, NY 10022
US

### Shipment Facts

Our records indicate that the following package has been delivered.

| | |
|---|---|
| Tracking number: | 773876377732 |
| Status: | Delivered: 06/24/2015 10:17 AM<br>Signed for By: S.LITTLE |
| Reference: | MIA/ON3710/N69827 |
| Signed for by: | S.LITTLE |
| Delivery location: | NEW YORK, NY |
| Delivered to: | Receptionist/Front Desk |
| Service type: | FedEx Priority Overnight |
| Packaging type: | FedEx Envelope |
| Number of pieces: | 1 |
| Weight: | 0.50 lb. |
| Special handling/Services: | No Signature Required |
| | Deliver Weekday |

Please do not respond to this message. This email was sent from an unattended mailbox. This report was generated at approximately 9:19 AM CDT on 06/24/2015.

To learn more about FedEx Express, please go to fedex.com.

All weights are estimated.

To track the latest status of your shipment, click on the tracking number above, or go to fedex.com.

This tracking update has been sent to you by FedEx at your request. FedEx does not validate the authenticity of the requestor and does not validate, guarantee or warrant the authenticity of the request, the requestor's message, or the accuracy of this tracking update. For tracking results and terms of use, go to fedex.com.

Thank you for your business.

6/24/2015

**Michele Wallach**

**From:**      trackingupdates@fedex.com
**Sent:**      Wednesday, June 24, 2015 9:21 AM
**To:**        Michele Wallach
**Subject:**   FedEx Shipment 773895950565 Delivered



fedex.com | Ship | Track | Manage | Learn | Office/Print Services

## Your package has been delivered

Tracking # 773895950565

Ship (P/U) date:
**Tuesday, 6/23/15**

Michele Wallach
Borah Goldstein
New York, NY 10013
US


Delivered

Delivery date:
**Wednesday, 6/24/15 9:18 AM**

d/b/a Via Presto by Scotto
Pasta Bar by Scotto II, LLC
750 Eighth Avenue a/k/a 247 West 46th
Street
NEW YORK, NY 10036
US

## Shipment Facts

Our records indicate that the following package has been delivered.

| | |
|---|---|
| Tracking number: | <u>773895950565</u> |
| Status: | Delivered: 06/24/2015 09:18 AM<br>Signed for By: T.MICHEL |
| Reference: | MIA/ON3710/N69827 |
| Signed for by: | T.MICHEL |
| Delivery location: | NEW YORK, NY |
| Delivered to: | Receptionist/Front Desk |
| Service type: | FedEx Priority Overnight |
| Packaging type: | FedEx Envelope |
| Number of pieces: | 1 |
| Weight: | 0.50 lb. |
| Special handling/Services: | No Signature Required |
| | Deliver Weekday |

Please do not respond to this message. This email was sent from an unattended mailbox. This report was generated at approximately 8:20 AM CDT on 06/24/2015.

To learn more about FedEx Express, please go to fedex.com.

All weights are estimated.

To track the latest status of your shipment, click on the tracking number above, or go to fedex.com.

This tracking update has been sent to you by FedEx at your request. FedEx does not validate the authenticity of the requestor and does not validate, guarantee or warrant the authenticity of the request, the requestor's message, or the accuracy of this tracking update. For tracking results and terms of use, go to fedex.com.

Thank you for your business.

6/24/2015

From: (212) 431-1300
Michele Wallach
Borah Goldstein
377 Broadway

New York, NY 10013

Origin ID: AYZA



Ship Date: 23JUN15
ActWgt: 1.0 LB
CAD: 4687213/NET3610

BILL SENDER

Delivery Address Bar Code

SHIP TO: (212) 755-1200
**Walter Edelstein, Esq.**
**Lefkowitz and Edelstein**
**1350 Avenue of the Americas**
**2nd Floor**
**NEW YORK, NY 10022**

Ref #  MIA/ON3710N69827
Invoice #
PO #
Dept #

RELEASE#: 3785346

**WED - 24 JUN 10:30A**
**PRIORITY OVERNIGHT**

TRK#
6201   7738 9591 8654

10022
NY-US
EWR

# E3 JRBA

**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning:** Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

**FedEx**    Shipment Receipt

**Address Information**

| Ship to: | Ship from: |
| --- | --- |
| Walter Edelstein, Esq. | Michele Wallach |
| Lefkowitz and Edelstein | Borah Goldstein |
| 1350 Avenue of the Americas | 377 Broadway |
| 2nd Floor | |
| NEW YORK, NY | New York, NY |
| 10022 | 10013 |
| US | US |
| (212) 759-1200 | 2124311300 |

**Shipment Information:**
Tracking no.: 773895918654
Ship date: 06/23/2015
Estimated shipping charges:

**Package Information**
Pricing option: FedEx Standard Rate
Service type: Priority Overnight
Package type: FedEx Envelope
Number of packages: 1
Total weight: 1  LBS
Declared Value: 0.00  USD
Special Services:
Pickup/Drop-off: Use an already scheduled pickup at my location

**Billing Information:**
Bill transportation to: Borah Goldstein-429
Your reference:  MIA/ON3710/N69827
P.O. no.:
Invoice no.:
Department no.:

**Thank you for shipping online with FedEx ShipManager at fedex.com.**

**Please Note**

FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $1000, e.g., jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits; Consult the applicable FedEx Service Guide for details.
The estimated shipping charge may be different than the actual charges for your shipment. Differences may occur based on actual weight, dimensions, and other factors. Consult the applicable FedEx Service Guide or the FedEx Rate Sheets for details on how shipping charges are calculated.

From: (212) 431-1300
Michele Wallach
Borah Goldstein
377 Broadway

New York, NY 10013

Origin ID: AYZA

**FedEx**
Express

E

Ship Date: 23JUN15
ActWgt: 1.0 LB
CAD: 4587213/INET3610

Delivery Address Bar Code

Ref #     MIA/ON3710/N69827
Invoice #
PO #
Dept #

SHIP TO: (212) 431-1300          BILL SENDER

**d/b/a Via Presto by Scotto**
**Pasta Bar by Scotto II, LLC**
**750 Eighth Avenue**
**a/k/a 247 West 46th Street**
**NEW YORK, NY 10036**

RELEASE#: 3785346

**WED - 24 JUN 10:30A**
PRIORITY OVERNIGHT

TRK#  7738 9595 0565
6281

# E3 NYCA

10036
NY-US

EWR

**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

**FedEx.**    Shipment Receipt

**Address Information**

| Ship to: | Ship from: |
|---|---|
| d/b/a Via Presto by Scotto | Michele Wallach |
| Pasta Bar by Scotto II, LLC | Borah Goldstein |
| 750 Eighth Avenue | 377 Broadway |
| a/k/a 247 West 46th Street | |
| NEW YORK, NY | New York, NY |
| 10036 | 10013 |
| US | US |
| 212-431-1300 | 2124311300 |

**Shipment Information:**
Tracking no.: 773895950565
Ship date: 06/23/2015
Estimated shipping charges:

**Package Information**
Pricing option: FedEx Standard Rate
Service type: Priority Overnight
Package type: FedEx Envelope
Number of packages: 1
Total weight: 1  LBS
Declared Value: 0.00  USD
Special Services:
Pickup/Drop-off: Use an already scheduled pickup at my location

**Billing Information:**
Bill transportation to: Borah Goldstein-429
Your reference:  MIA/ON3710/N69827
P.O. no.:
Invoice no.:
Department no.:

Thank you for shipping online with FedEx ShipManager at fedex.com.

**Please Note**

FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $1000, e.g., jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits; Consult the applicable FedEx Service Guide for details.
The estimated shipping charge may be different than the actual charges for your shipment. Differences may occur based on actual weight, dimensions, and other factors. Consult the applicable FedEx Service Guide or the FedEx Rate Sheets for details on how shipping charges are calculated.



New York County Civil Court
**LANDLORD TENANT**

*BORAH*

2098711

750 8TH AVENUE LLC
vs.
PASTA BAR BY SCOTTO II,LLC D/B/A VIA PRESTO BY
SCOTTO

**Index Number: LT-088221-14/NY**

Original Issuance
**WARRANT OF EVICTION**

### TO THE SHERIFF OF THE CITY OF NEW YORK OR ANY MARSHAL, GREETINGS:

Final decision in favor of the petitioner(s) has been granted based on the judgment of possession entered in the New York County Civil Court on 05/14/2015, which awarded the petitioner(s) the delivery of the premises:
(1) 750 8TH AVENUE LLC

Therefore, you are commanded to remove the respondent(s) listed below:
(1) PASTA BAR BY SCOTTO II,LLC D/B/A VIA PRESTO BY SCOTTO

And all other persons from the following described premises, located in the County of New York and to put said petitioner(s) in full possession thereof:
(1) 750 EIGHTH AVENUE GRNDFL, NEW YORK, NY 10036
Said premise is further described as: A PORTION OF THE GRUND FLOOR AND A PORTION OF THE MEZZANINE SPACE AKA 247 WEST 46TH ST AS ON FLR PLNS ANNXD LEASE XIBIT A-1 PLUS RIGHT TO USE SIDEWALK AREA IMMEDIATELY IN FRONT OF PREMISES XIBIT A-2 & B

Witness,   Honorable Alexander M. Tisch
Civil Court Judge (NYC)

Dated: 06/18/2015

_____
*Carol Alt*
Carol Alt, Chief Clerk

Sequence 2A

**Execution of the Warrant is Stayed to and including 06/01/2015**

RETURN: Pursuant to the command of this warrant I have this day put the petitioner(s) above named into full possession of the premises by
Legal Possession _____    Eviction _____

Signature _____

Enforcement Officer Docket Number: 298711
Adult Protective Services Number: _____

Villanueva, John (#36)
29 E 233rd Street
Bronx, NY 10470-2215
(718) 654-3000

(To be signed in case of Legal Possession)
Possession of the premises with the contents intact is hereby acknowledged. The petitioner accepts responsibility for all property on the premises, releases the marshal from any liability, and agrees to hold the marshal harmless from any action resulting from the execution of this warrant.

_____
Petitioner, Agent, Attorney for Landlord

JUN 2 9 REC'D

New York County Civil Court
**LANDLORD TENANT**

750 8TH AVENUE LLC
vs.
PASTA BAR BY SCOTTO II,LLC D/B/A VIA PRESTO BY
SCOTTO

**Index Number: LT-088221-14/NY**

Original Issuance
**WARRANT OF EVICTION**

TO THE SHERIFF OF THE CITY OF NEW YORK OR ANY MARSHAL, GREETINGS:

Final decision in favor of the petitioner(s) has been granted based on the judgment of possession entered in the New York
County Civil Court on 05/14/2015, which awarded the petitioner(s) the delivery of the premises:
(1) 750 8TH AVENUE LLC

Therefore, you are commanded to remove the respondent(s) listed below:
(1) PASTA BAR BY SCOTTO II,LLC D/B/A VIA PRESTO BY SCOTTO

And all other persons from the following described premises, located in the County of New York and to put said petitioner(s)
in full possession thereof:
(1) 750 EIGHTH AVENUE GRNDFL, NEW YORK, NY 10036
Said property is further described as: A PORTION OF THE GRUND FLOOR AND A PORTION OF THE MEZZANINE
SPACE AKA 247 WEST 46TH ST AS ON FLR PLNS ANNXD LEASE XIBIT A-1 PLUS RIGHT TO USE SIDEWALK
AREA IMMEDIATELY IN FRONT OF PREMISES XIBIT A-2 & B

**Witness,   Honorable Alexander M. Tisch**
          **Civil Court Judge (NYC)**

Dated: 06/18/2015

_Carol Alt_
Carol Alt, Chief Clerk

Sequence 2A

**Execution of the Warrant is Stayed to and including 06/01/2015**

RETURN: Pursuant to the command of this warrant I have this day put the petitioner(s) above named into full possession
          of the premises by

Legal Possession _____    Eviction _____

                                  Signature _____

Enforcement Officer Docket Number: 298711           Villanueva, John (#36)
Adult Protective Services Number: _____     29 E 233rd Street
                                                    Bronx, NY 10470-2215
                                                    (718) 654-3000

(To be signed in case of Legal Possession)
Possession of the premises with the contents intact is hereby acknowledged. The petitioner accepts responsibility for all
property on the premises, releases the marshal from any liability, and agrees to hold the marshal harmless from any
action resulting from the execution of this warrant.

_____
Petitioner, Agent, Attorney for Landlord

Generated 06/18/2015 at 04:02 PM          Page 1 of 1



CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL PART
-------------------------------------------------------------X

750 8TH AVENUE LLC,

              Petitioner-Landlord,

   -against

PASTA BAR BY SCOTTO II, LLC d/b/a VIA
PRESTO BY SCOTTO
750 Eighth Avenue a/k/a 247 West 46th Street
New York, New York 10036,

              Respondent-Tenant,

-------------------------------------------------------------X

Index No. L&T 088221/2014

**FIVE (5) BUSINESS DAYS**
**NOTICE OF DEFAULT**

WHEREAS, in a Stipulation of Settlement dated the 28th day of January 2015 and "So Ordered" on February 11, 2015 ("Original Stipulation"), attached hereto as Exhibit "A", the parties agreed as follows: . . .

        ""1.    Respondent-Tenant agrees that it shall voluntarily vacate from the Demised Premises on or before the Lease Expiration Date or any extension thereof, as applicable, **time being of the essence**, and provide vacant possession free of all other occupants.

        2.    (a)    To effectuate such mutual interest, Respondent-Tenant hereby consents to the jurisdiction of the Civil Court, Commercial Part 52, and Respondent-Tenant further consents to the entry of a final judgment of possession in favor of Petitioner-Landlord with the warrant of eviction to issue only upon one of the following conditions, either: (a) default in payment of any rental arrears or base rents and escalations, after uncured notice of default, as set forth hereinafter; or (b) upon default in Tenant voluntarily vacating on or before the Lease Expiration Date, unless further extended by the parties. …

        4.    (d)    On or before June 15, 2015 and monthly thereafter through November 15, 2015 (six (6) payments), Respondent-Tenant shall pay the further sum of Thirty Seven Thousand Five Hundred and no/100 ($37,500.00) dollars monthly against the Rental Arrears by hand delivery

of bank money order or certified check to Petitioner-Landlord in accordance with the address specified in paragraph 5(d) hereinafter.

5.    (a)  On or before February 21, 2015, Respondent-Tenant shall pay the sum of Seventy Five Thousand Five Hundred Eighty Eight and 04/100 ($75,588.04) dollars as and for February base rent and additional rent by hand delivery of bank money order or certified check to Petitioner-Landlord in accordance with the address specified in paragraph 5(d) hereinafter.

    (b)    Additionally, and monthly commencing March 1, 2015 through and including December 1, 2015 (ten (10) payments), Respondent-Tenant shall pay, on or before the first (1st) day of each month, the monthly base rental and additional rental obligations then due to Landlord ($75,588.04 plus legal and any other  items of additional rent).  Thus, if all the payments specified in paragraph four (4) and paragraph five (5) are timely made, and if the monthly base rent and additional rent obligations referred to in this paragraph are timely made, Respondent-Tenant shall have paid by December 31, 2015 the entire amount of the Rental Arrears, as well as all of its base and additional rents due and owing through December 31, 2015.

    (c) Payments to Petitioner-Landlord referred to hereinabove are to be hand delivered to Annie Xiao c/o Torkian Group located at 1650 Broadway, Suite 910, New York, New York 10019.

    (d)  Notwithstanding anything contained above to the contrary, Respondent-Tenant may prepay the payment of rental arrears, without penalty

    (e)   In the event any of the above referenced payments in paragraph 4 or 5 above are not made on a timely basis and in full, counsel for Petitioner-Landlord shall by overnight courier forward a Notice of Default to Respondent-Tenant's counsel at the address specified in paragraph 11(b) below giving Respondent-Tenant five (5) business days within which to cure said default.  In the further event  that Respondent-Tenant fails to cure the default by paying the amount due and owing so that it is received by Petitioner-Landlord within said five (5) business day period, Petitioner-Landlord may proceed to restore this proceeding on three (3) days notice to counsel for Tenant for

2

issuance of the warrant of eviction, which issuance, Tenant hereby consents to.

6.    Furthermore, notwithstanding anything in this Agreement to the contrary, in the event of a default, after Notice to Cure and failure to pay, any monies previously received by Petitioner-Landlord from Respondent-Tenant referred to in paragraphs 4 and/or 5 of this Stipulation may, at Petitioner's option and notwithstanding how they may have been initially applied when received, be applied first to current rent/use and occupancy and then to the Rental Arrears referred to above. …

8.    Respondent-Tenant acknowledges that it has had the advice of its attorney, Walter Edelstein, Esq., of Lefkowitz and Edelstein, has had time to review this Agreement with its attorney and has executed this Agreement voluntarily. Respondent-Tenant  furthermore agrees to execute any and all other documents that may be reasonably necessary to effectuate the purposes expressed herein and shall cooperate to that end in a reasonable fashion", and

WHEREAS, a Notice of Default was served on the Respondent-Tenant and its counsel dated April 7, 2015 for unpaid rentals in the sum of $151,176.08; and

WHEREAS, Respondent-Tenant did not cure; and

WHEREAS, this proceeding was restored to the Court calendar for May 12, 2015 and settled with a further Stipulation dated May 12, 2015 providing for entry of a judgment and warrant and a further opportunity for Respondent-Tenant to cure its default ("Supplemental Stipulation") attached hereto as Exhibit "B"; and

WHEREAS, Respondent-Tenant is now in default of the Original and Supplemental Stipulation to the extent that it has failed to pay the sum of $190,527.28 consisting of the payments required by paragraphs 4(d) and 5(b) as per attached Schedule "C";

NOW, THEREFORE, notice is hereby given that pursuant to said paragraph 5(e) of the Original Stipulation and paragraph 7 of the Supplemental

3

Stipulation, unless such payment of $190,527.28 is made on or before September 22, 2015, a date which is at least five (5) business days from the date of this notice, that Landlord shall proceed with the judgment of possession entered by the Civil Court to be restored to possession.

Dated:    New York, New York
          September 10, 2015

                                        750 8TH AVENUE LLC
                                        (Landlord)

                                        By:_____
                                            Myron J. Altschuler, Esq.
                                            Borah, Goldstein, Altschuler,
                                            Nahins & Goidel, P.C.
                                            Attorneys for Petitioner-Landlord
                                            377 Broadway
                                            New York, New York  10013
                                            (212) 431-1300
                                            maltschuler@borahgoldstein.com


BY OVERNIGHT COURIER:

(1)    WALTER EDELSTEIN, ESQ.
       Lefkowitz and Edelstein
       1350 Avenue of the Americas
       2nd Floor
       New York, New York 10022
       (212) 759-1200

(2)    PASTA BAR BY SCOTTO II, LLC
       d/b/a Via Presto by Scotto
       750 Eighth Avenue a/k/a 247 West 46th Street
       New York, New York 10036


Z:\myron_altschuler\Notice of Default\750 8th Avenue LLC v. Pasta Bar by Scotto II, LLC dba Via Presto by Scotto  9-10-15.doc

4

G

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK (MANHATTAN)
--------------------------------------------------------------------X

In Re:                                                        Chapter - 11
                                                              Case No. 15-12766 (MG)

      PASTA BAR BY SCOTTO II, LLC
      d/b/a VA PRESTO,

                                Debtor.

--------------------------------------------------------------------X

## ORDER PURSUANT TO 11 U.S.C. § 362(d) MODIFYING
## THE AUTOMATIC STAY IMPOSED BY 11 U.S.C. § 362(a)

Upon the motion, dated November 4, 2015, of 750 8th Avenue LLC, the

owner and landlord ("Landlord") of real property known as and by 750 Eighth Avenue

a/k/a 247 West 46th Street (a portion of the ground floor and a portion of the mezzanine

space plus right to use sidewalk area immediately in front of the premises), New York,

New York 10036 (the "Premises"), by its attorneys, Borah, Goldstein, Altschuler,

Nahins, & Goidel, P.C., for an Order, *inter alia*, pursuant to 11 U.S.C. § 362(d)(1) & (2)

of Title 11 of the United States Code (the "Bankruptcy Code"), vacating the automatic

stay imposed in the above-captioned case by Section 362(a) of the Bankruptcy Code as

to the Landlord's possessory interests in the Premises, thereby permitting the Landlord

to enforce its rights in, and remedies in and to, the Premises, and for an Order pursuant

to Federal Rule of Bankruptcy Procedure ("FRBP") 4001(a)(3) waiving the fourteen (14)

day stay of an Order granting a motion for relief from an automatic stay made in

accordance with FRBP 4001(a)(1) (the "Motion"); and due and proper notice of the

Motion having been made on all necessary parties; and the Court having held a hearing

on the Motion on November 19, 2015; and Borah, Goldstein, Altschuler, Nahins &

Goidel, P.C., by Jeffrey C. Chancas, Esq., having appeared on behalf of Landlord, and

Sichenzia Ross Friedman Ference LLC, by Ralph E. Preite, Esq., having appeared for

the Debtor, and the United States Trustee's Counsel having appeared, and upon all of

the proceedings had before the Court; and after due deliberation and sufficient cause

appearing, it is hereby

ORDERED, that the Motion is granted as provided herein, and it is further

ORDERED, that the automatic stay imposed in this case by Section 362(a) of the

Bankruptcy Code is vacated under Section 362(d) of the Bankruptcy Code as to the

Landlord's possessory interests in the Premises, and Landlord may enforce its rights in

and to the Premises, including, but not limited to, executing on any warrant of eviction

issued by the New York State Courts, and it is further

ORDERED, that the fourteen (14) day stay of an Order granting a motion for

relief from an automatic stay made in accordance with FRBP 4001(a)(1), which stay of

the Order is imposed by FRBP 4001(a)(3), is waived.

Dated: New York, New York

_____, 2015

_____

UNITED STATES BANKRUPTCY JUDGE

2

## ATTORNEY'S CERTIFICATION

STATE OF NEW YORK, COUNTY OF

The undersigned, an attorney admitted to practice in the State of New York, does hereby certify, pursuant to Section 2105 CPLR, that I have compared the within

with the original and have found it to be a true and complete copy thereof.
Dated:

Type or Print Name Below Signature

## NOTICE OF ENTRY OR SETTLEMENT
(Check and complete appropriate box and section)

Sir(s) / Madam(s):

PLEASE TAKE NOTICE that a

of which the within is a (true) (certified) copy

☐ NOTICE OF ENTRY
was duly entered in the within named court on

☐ NOTICE OF SETTLEMENT
will be presented for settlement to the Hon.

one of the judges of the within named court at the Courthouse at

on                    20
at            o'clock        M.
Dated:                    20

Yours, etc.,

BORAH, GOLDSTEIN, ALTSCHULER,
NAHINS & GOIDEL, P.C.
Attorney(s) for

Office and Post Office Address
377 BROADWAY
NEW YORK, NY 10013-3993
(212) 431-1300
FAX NUMBER (212) 334-0960

To:
Attorney(s) for

---

In Re:

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
(MANHATTAN)

Index No.    Case No. 15-12766 (May 20)

PASTA BAR BY SCOTTO II, LLC
d/b/a VA PRESTO,

Debtor.

## MOTION TO VACATE
## AUTOMATIC STAY

BORAH, GOLDSTEIN, ALTSCHULER,
NAHINS & GOIDEL, P.C.
Attorney(s) for

750 8th Avenue LLC
Office and Post Office Address
377 BROADWAY
NEW YORK, NY 10013-3993
(212) 431-1300
FAX NUMBER (212) 334-0960

Please refer all communications

To:    JEFFREY C. CHANGAS    Esq.
Ext.    611

or:    Ext.    Esq.

To:

Attorney(s) for

---

## ADMISSION OF SERVICE

The undersigned acknowledges receipt of a copy of the within

on

at            o'clock        M.
20

by:
Attorney(s) for

Type or Print Name Below Signature

## AFFIDAVIT OF SERVICE BY MAIL

STATE OF NEW YORK
COUNTY OF

I am not a party to this action; I am over 18 years of age; I reside at

being sworn, says:

On                    20    I served
the within
upon

the attorney(s) for                    in this
action, at

the address designated by said attorney(s) for that purpose by depositing a true copy of same enclosed in a postpaid, properly addressed wrapper, in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York.

Sworn to before me
this

day of                    20

Type or Print Name Below Signature