UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

PASTA BAR BY SCOTTO II. LLC,

              Debtor.

Chapter 11

Case No.: 15-12766-mg

**BRIEF IN SUPPORT OF MOTION FOR AN ORDER
DISMISSING THE DEBTOR'S BANKRUPTCY PETITION**

COX PADMORE SKOLNIK &
SHAKARCHY LLP
Attorneys for 750 Food LLC
630 Third Avenue, 19th Floor
New York, NY  10017
Tel: (212) 953-6633
Fax: (212) 949-6943

*Of Counsel:*
Stefan B. Kalina, Esq.

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT**……………………………………………………….. 1

**ARGUMENT**

    **SCOTTO LACKED AUTHORITY TO FILE
    THE DEBTOR'S BANKRUPTCY PETITION**……………………………….. 2

**CONCLUSION**…………...…………..………………………………...…………... 5

# TABLE OF AUTHORITIES

**Cases**

*In re Avalon Hotel Partners, LLC*,
  302 B.R. 377 (Bankr. D. Oregon 2003)…………………………………………….. 2

*In re A-Z Electronics*,
  350 B.R. 886, 891 (Bankr. Idaho 2006)……………………………………………… 2

*In re East End Development*,
  491 B.R. 633, 638 (Bankr. E.D.N.Y. 2013)………………………………………….. 2

*In re H&W Food Mart, LLC*,
  461 B.R. 904, 906 (Bankr N.D. Ga. 2011)…...……………………………………. 2

*In re Quad-C Funding LLC*,
  496 B.R. 135, 141 (Bankr. S.D.N.Y. 2013)………………………………………….. 2

*Price v. Gurney*,
  324 U.S. 100, 106 (1945)………………………...…………………....………. 2

*In re Quarter Moon Livestock Co.*,
  116 B.R. 775, 778 (Bankr. D. Idaho 1990)………...………………………………. 2

*In re Sterling Mining Co.*,
  2009 WL 2475302 (Bankr. D. Idaho Aug. 11, 2009)………...…………………………. 2

**Statutes & Rules**

N.Y. Limited Liability Company Law § 417(a) ……...…………………….… 3

11 U.S.C. § 1112(b) ……...………………………………………………….… 1

**PRELIMINARY STATEMENT**

Pasta Bar by Scotto II, LLC (the "Debtor") is a New York limited liability company. Declaration of Hersel Torkian ("Torkian Dec.") ¶ 2 and Exh. A. The members of the Debtor are John Scotto ("Scotto") and 750 Food LLC ("750 Food"). Scotto and 750 Food have entered into an operating agreement for the Debtor (the "Operating Agreement"). Torkian Dec., Exh. B.

The Operating Agreement states that Scotto and 750 Food each have a 50% percentage ownership interest in the Debtor. Operating Agreement ¶ 3.1. Pursuant to the Operating Agreement, Scotto is the manager of the Debtor. Operating Agreement ¶ 4.2.

Scotto filed the Chapter 11 Petition for the Debtor (the "Petition") on October 12, 2015. Torkian Dec., Exh. C. Attached to the Petition is a Statement Regarding Authority to Sign and File Petition, which states that Scotto's filing of the Petition on behalf of the Debtor "was duly authorized, and is with the consent and knowledge of the Managing Member [Scotto] of this company [*i.e.,* the Debtor]."

750 Food, however, denies that Scotto's act of filing the Petition was authorized and has moved to dismiss the Petition on the ground that Scotto did not have the authority required by the Operating Agreement to file the Petition. Torkian Dec. ¶¶ 14-17.

As shown herein, the Debtor's Bankruptcy Petition pursuant to 11 U.S.C. §1112(b) must be dismissed because, pursuant to New York law and the Operating Agreement, Scotto was not authorized to sign or file it.

**ARGUMENT**

**SCOTTO LACKED AUTHORITY TO FILE THE DEBTOR'S BANKRUPTCY PETITION**

The Supreme Court has held that, in passing on petitions filed on behalf of corporations under the Bankruptcy Code, courts "must of course determine whether they are filed by those

who have authority so to act. In absence of federal incorporation, that authority finds its source in local law. If the District Court finds that those who purport to act on behalf of the corporation have not been granted authority by local law to institute the proceedings, it has no alternative but to dismiss the petition." *Price v. Gurney*, 324 U.S. 100, 106 (1945); *In re H&W Food Mart, LLC*, 461 B.R. 904, 906 (Bankr N.D. Ga. 2011); *In re A-Z Electronics*, 350 B.R. 886, 891 (Bankr. Idaho 2006). As the Court in *In re Sterling Mining Co.*, 2009 WL 2475302 (Bankr. D. Idaho Aug. 11, 2009) stated: "The Bankruptcy Code does not set forth specific requirements for a corporation to file bankruptcy, other than requiring the petition to be 'voluntary.' This Court therefore looks to 'the instruments of the corporation and applicable state law' to determine whether a corporate bankruptcy petition was authorized." *Id.* at *2 (citations omitted; quoting *In re Quarter Moon Livestock Co.*, 116 B.R. 775, 778 (Bankr. D. Idaho 1990)); *see also In re Quad-C Funding LLC*, 496 B.R. 135, 141 (Bankr. S.D.N.Y. 2013) (holding that courts look to state law to determine whether a person was authorized to file a petition of bankruptcy for the debtor); *In re East End Development*, 491 B.R. 633, 638 (Bankr. E.D.N.Y. 2013) ("Under New York Limited Liability Company Law, the LLC's operating agreement governs the parties' conduct. To the extent the agreement is silent, there are default provisions in the New York Limited Liability Company laws that apply.").

In *In re Avalon Hotel Partners, LLC*, 302 B.R. 377 (Bankr. D. Oregon 2003), the debtor's manager had adopted a resolution authorizing the filing of a chapter 11 petition, without member approval. The debtor's operating agreement provided that "Major Decisions" required the approval of members holding "in excess of 75% of the Ownership Interests." The Court concluded that filing a bankruptcy petition constituted a Major Decision and dismissed the petition.

2

N.Y. Limited Liability Company Law § 417(a) provides that the members of a limited liability company must adopt an operating agreement "that contains any provisions not inconsistent with law or the articles of organization relating to (i) the business of the limited liability company, (ii) the conduct of its affairs and (iii) the rights, powers, preferences, limitations or responsibilities of its members, managers, employees or agents, as the case may be."

As in *Avalon*, the Operating Agreement provides that "the Manager [Scotto] may not take any action constituting a Major Decision without the prior unanimous written consent of the Members holding at least seventy five (75%) percent of the Percentage Ownership Interest in the Company." Operating Agreement ¶ 4.1(b).[1] A Major Decision includes any Material Action, as that term is defined in the Operating Agreement. Operating Agreement ¶ 4.1(e)(1)(iv). Under the Operating Agreement, a Material Action shall mean any of the following:

> \* \* \*
>
> (B) commencing any case, proceeding or other action on behalf of the Company under any existing or future law of any jurisdiction relating to bankruptcy, insolvency, reorganization or relief of debtors;
>
> (C) instituting proceedings to have the Company adjudicated as bankrupt of insolvent;
>
> (D) filing a petition or consent to a petition seeking reorganization…or other relief on behalf of the Company of its debts under any federal or state law relating to bankruptcy;
>
> (E) filing a petition or consent to a petition seeking reorganization, arrangement, adjustment, winding-up, dissolution, composition, liquidation or other relief on behalf of the Company of its debts under any federal or state law relating to bankruptcy;

---

[1] Paragraph 6.1 of the Operating Agreement similarly provides: "Except for decisions that may be made by the Managers as provided herein, all other decisions including Major Decisions shall require the vote of the Members holding at least seventy five (75%) percent of the Percentage Ownership Interests. "

> > (F) seeking or consenting to the appointment of a receiver, liquidator, assignee, trustee, sequester, custodian or any similar official for the Company or a substantial portion of the properties of the Company;
>
> * * *
>
> > (I) taking any action or causing the Company to take any action in furtherance of any of the foregoing.

Operating Agreement ¶ 4.1(e)(2)(B), (C), (D), (E), (F) and (I). These provisions of the Operating Agreement are not inconsistent with any provision of the Limited Liability Company Law (or any other law) or the Debtor's Articles of Organization. Hence, they control the actions of the members, and since they specifically require a 75% supermajority to file a bankruptcy petition, absent such a supermajority, no filing can be authorized.

Scotto does not own 75% of the Percentage Ownership Interests. Hence, he could not make a Major Decision or take a Material Action without the written consent of 750 Food. However, no such consent is attached to the Petition. The Statement Regarding Authority to Sign and File Petition states that "the filing of this petition on behalf of the company [the Debtor] was duly authorized, and is with the consent and knowledge of the Managing Member [Scotto] of this company." No mention is made of the requirements of the Operating Agreement or of any meeting or written consent signed by 750 Food. Indeed, the Unanimous Written Consent in Lieu of a Meeting of the Managing Member (attached to the Petition), while it is termed "unanimous," makes no reference to any consent given by 750 Food. 750 Food did not consent to the filing of the Petition. Torkian Dec. ¶¶ 14-17. Absent 750 Food's consent, Scotto was not authorized to file the Petition, and, in accordance with the law cited above, this Court has no choice but to dismiss the Petition.

## **CONCLUSION**

In that Scotto has not obtained written consent of 75% of the Percentage Ownership Interest of the Company, as required by the Operating Agreement of the Debtor, he was unauthorized to sign and file the Petition on the behalf of the Debtor. Hence, this Court must dismiss the Debtor's Bankruptcy Petition pursuant to 11 U.S.C. §1112(b) and afford such other and further relief as is just and equitable.

Dated: New York, NY
November 5, 2015

Respectfully submitted,

COX PADMORE SKOLNIK SHAKARCHY LLP

By: /s Stefan B. Kalina_____
Stefan B. Kalina, Esq. (SK-8535)
Attorneys for 750 Food LLC
630 Third Avenue, 19th Floor
New York, NY 10017
Tel: (212) 953-6633
Fax: (212) 949-6943