UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| In re:                          |                       |
|---------------------------------|-----------------------|
| PASTA BAR BY SCOTTO II, LLC,    | NOT FOR PUBLICATION   |
|                                 | Case No. 15-12766 (MG)|
|                        Debtor.  |                       |

MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS
CHAPTER 11 CASE AND DENYING MOTION TO LIFT STAY

*A P P E A R A N C E S:*

COX PADMORE SKOLNICK & SHAKARCHY LLP
*Attorneys for 750 Food LLC*
630 Third Avenue, 19th Floor
New York, NY  10017
By:    Stefan B. Kalina, Esq.

BORAH, GOLDSTEIN, ALTSCHULER NAHINS & GOIDEL, P.C.
*Attorneys for the Landlord*
377 Broadway
New York, NY  10013
By:    Jeffrey C. Chancas, Esq.

SICHENZIA ROSS FRIEDMAN FERENCE LLP
*Attorneys for Debtor Pasta Bar by Scotto, LLC*
61 Broadway
New York, NY  10006
By:    Ralph E. Preite, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the *Motion for an Order Dismissing the Debtor's Bankruptcy Petition* (the "Dismissal Motion," ECF Doc. # 7-1), filed by 750 Food LLC ("750 Food"). The debtor, Pasta Bar by Scotto II, LLC (the "Debtor"), is a New York Limited Liability Company ("LLC"). It is undisputed that John Scotto "Scotto"), the managing member of the Debtor, and 750 Food each hold a 50% membership interest in the LLC. The chapter 11 petition was filed on

October 12, 2015, and was signed by Scotto.  750 Food moves to dismiss the chapter 11 case under section 1112(b) of the Bankruptcy Code, arguing that the case must be dismissed because the filing of the chapter 11 petition was a "Major Decision" under the express terms of the Debtor's Operating Agreement, which required a supermajority vote of 75% of the membership interests, which was never obtained.  The Dismissal Motion is supported by the declaration of Hersel Torkian ("Torkian" and the "Torkian Declaration," ECF Doc. # 7-2).  The Debtor filed an opposition to the Dismissal Motion.  *See Opposition by Debtor to Motion to Dismiss and Motion for Stay Relief* (the "Opposition," ECF Doc. # 14).

There is also a pending motion to lift the automatic stay, filed by the Debtor's landlord, an entity related to 750 Food, to permit the landlord to move forward with a state court summary nonpayment proceeding.  (*See Motion for an Order, inter alia, Pursuant to 11 U.S.C. Section 362 to Vacate Automatic Stay and for Payment of Use and Occupancy* ("Lift Stay Motion," ECF Doc. # 5).)  The landlord alleges prepetition rental arrears exceeding $380,000, as well as postpetition rental arrears exceeding $124,000.  The Debtor opposes the Lift Stay Motion as well.

As explained below, the filing of the chapter 11 petition in this case was not properly authorized.  Therefore, the Dismissal Motion is **GRANTED**.  Because the chapter 11 case is dismissed, the Lift Stay Motion is **DENIED** as moot.

## I.    BACKGROUND

The Debtor is a New York limited liability company.  (Dismissal Mot. at 1.)  The members of the Debtor are Scotto and 750 Food.  (*Id.*)  Scotto and 750 Food entered into an operating agreement governing the Debtor (the "Operating Agreement," ECF Doc. # 7-4).  (*Id.*)  Torkian is the managing member of 750 Food.  (Torkian Decl. ¶ 1.)

2

The Operating Agreement states that Scotto and 750 Food each have a 50% ownership interest in the Debtor.  (Dismissal Mot. at 1 (citing Operating Agreement ¶ 3.1).)  The Operating Agreement designates Scotto as the manager of the Debtor.  (*Id.* (citing Operating Agreement ¶ 4.2).)  Scotto filed the chapter 11 petition for the Debtor on October 12, 2015.  (*Id.* (citing Torkian Decl. Ex. C).)  Attached to the petition is the "Statement Regarding Authority to Sign and File Petition," which states that Scotto's filing of the petition of behalf of the Debtor "was duly authorized, and is with the consent and knowledge of the Managing Member [Scotto] of this company [*i.e.*, the Debtor]."  (*Id.*)

The Operating Agreement provides that "the Manager [Scotto] may not take any action constituting a Major Decision without the prior unanimous written consent of the Members holding at least seventy five (75%) percent of the Percentage Ownership Interest in the Company."  (*Id.* at 3 (citing Operating Agreement ¶ 4.1(b).[1])  A Major Decision includes any Material Action (as both are defined in the Operating Agreement).  (*Id.* (citing (Operating Agreement ¶ 4.1(e)(1)(iv)).)  Under the Operating Agreement, a Material Action means the following:

\* \* \*

    (B).    commencing any case, proceeding or other action on behalf of the Company under any existing or future law of any jurisdiction relating to bankruptcy, insolvency, reorganization, or relief of debtors;

    (C).    instituting proceedings to have the Company adjudicated as bankrupt or insolvent;

    (D).    filing a petition or consent to a petition seeking reorganization. . . or other relief on behalf of the Company of its debts under any federal or state law relating to bankruptcy;

---

[1]    Paragraph 6.1 of the Operating Agreement similarly provides "Except for decisions that may be made by the Managers as provided herein, all other decisions including Major Decisions shall require the vote of the Members holding at least seventy five (75%) percent of the Percentage Ownership Interests." (*Id.*)

3

 (E). filing a petition or consent to a petition seeking reorganization, arrangement, adjustment, winding-up, dissolution, composition, liquidation or other relief on behalf of the Company of its debts under any federal or state law relating to bankruptcy;

 (F). seeking or consenting to the appointment of a receiver, liquidator, assignee, trustee, sequestator, custodian or any similar official for the Company . . . .

 * * *

 (I). taking any action or causing the Company to take any action in furtherance of any of the forgoing.

(*Id.* 3–4 (citing Operating Agreement ¶ 4.1(e)(2)(B), (C), (D), (E), (F), and (I)).)

 750 Food contends that the Operating Agreement controls the actions of the members, and since it specifically requires a 75% supermajority vote to approve the filing of a chapter 11 petition, absent a supermajority, no such filing is authorized under the Operating Agreement. (*Id.*) It is undisputed that Scotto does not own 75% of the Percentage Ownership Interests (as defined in the Operating Agreement). (*Id.*) Hence, 750 Food argues, Scotto could not make a Major Decision or take a Material Action without the written consent of 750 Food. (*Id.*) Tokian denies that 750 Food's consent was ever given. (*Id.*) That fact is undisputed.

 The Debtor's Opposition argues that Torkian is an "insider and interested party" because of the common ownership in both 750 Landlord and 750 Food. (Opposition ¶ 10–11.) The Debtor argues that Torkian's attempt to dismiss the case violates Torkian's fiduciary duty of loyalty to the Debtor. (*Id.* ¶ 10.) The Debtor argues that Torkian will receive a financial benefit if either the stay is lifted or the case is dismissed because such relief would result in the eviction of the Debtor and allow 750 Landlord to replace the Debtor with a higher-paying tenant. (*Id.* ¶ 17.) The Debtor also argues that Torkian may not assert the business judgment rule because Mr. Torkian has a conflicting interest. (*Id.* ¶ 15.)

In a twist of sorts, the Debtor also argues that "[m]oving to dismiss is a major decision requiring both 750 Food and Mr. Scotto to approve. Since Mr. Scotto hasn't approved of the dismissal motion transaction, it is made before this Court without authority." (*Id.* ¶ 18.) In addition, the Debtor argues that the movant has failed to show "cause" pursuant to section 1112(b) of the Bankruptcy Code because the Debtor failed to provide "any analysis" of whether "cause" exists. (*Id.* ¶¶ 20, 23.)

## II. DISCUSSION

"[T]he Bankruptcy Code does not establish express rules relating to authority to file a voluntary petition for relief. In order to determine authority to file, courts initially look to the state law governing the entity." *In re Quad-C Funding LLC*, 496 B.R. 135, 141 (Bankr. S.D.N.Y. 2013) (citations omitted). New York law is the applicable law with respect to the Debtor. Under New York law, the LLC's operating agreement governs the parties' conduct. *In re E. End Dev., LLC*, 491 B.R. 633, 638 (Bankr. E.D.N.Y. 2013). "[I]f the Managing Member did not have the authority to file the petition pursuant to applicable state law, then the Debtor's case is subject to dismissal." *Id.* (citation omitted).

N.Y. Limited Liability Company Law § 417(a) provides that the members of a limited liability company must adopt an operating agreement "that contains any provisions not inconsistent with law or the articles of organization relating to (i) the business of the limited liability company, (ii) the conduct of its affairs and (iii) the rights, powers, preferences, limitations or responsibilities of its members, managers, employees or agents, as the case may be." Here, the Operating Agreement leaves no open issues of fact or law whether the filing of a bankruptcy petition is a major decision requiring a supermajority vote to authorize the filing. The Debtor provides no authority that the requirement of a supermajority vote to authorize a chapter 11 filing is inconsistent with law. Similar provisions in operating agreements have been enforced in other states. *See In re*

5

*Avalon Hotel Partners, LLC*, 302 B.R. 377 (Bankr. D. Or. 2003) (considering an operating agreement that provided "Major Decisions," including the filing of a bankruptcy petition, required the approval of members holding "in excess of 75% of the Ownership Interests," and stating that "filing of a bankruptcy petition by [the debtor's] manager without member approval [was] not authorized either by [state] law or the Operating Agreement").

The Debtor's argument that Torkian breached his fiduciary duty by failing to authorize the bankruptcy filing cannot save the Debtor's bankruptcy petition from dismissal. As Judge Gropper stated in *Quad-C Funding LLC*, 496 B.R. at 142, "[t]he filing of a bankruptcy petition by a business enterprise is designed to be a short and simple process that allows debtors to protect creditors and/or start rehabilitation immediately. . . . In enacting chapter 11, Congress intended to avoid the costly and lengthy litigation that once surrounded the filing . . . ." Here, the Operating Agreement makes clear what is required before a bankruptcy petition may be filed. It is undisputed that the supermajority vote requirement was not satisfied. A bankruptcy court need not investigate the *bona fides* of each member's decision to vote or withhold a vote to authorize a bankruptcy filing. *Id.* at 144.

It is obvious that Scotto and Torkian have been engaged in a business dispute for some time. The bankruptcy court is not the proper venue for Scotto and Torkian to sort out their business affairs. Dismissing the bankruptcy case does not prevent the parties from attempting to reach a business solution to their business dispute.

### III. CONCLUSION

For the reasons explained above, the Dismissal Motion is **GRANTED**. The separate motion filed by the landlord to lift the automatic stay is **DENIED** because it is moot. The Clerk is directed to close the case.

**IT IS SO ORDERED.**

Dated:   November 19, 2015
         New York, New York

                                    ___*Martin Glenn*_____
                                        MARTIN GLENN
                                    United States Bankruptcy Judge